**TYCKO & ZAVAREEI LLP**
KRISTEN LAW SAGAFI, California Bar No. 222249
ksagafi@tzlegal.com
MARTIN D. QUIÑONES, California Bar No. 238293
mquinones@tzlegal.com
483 Ninth Street, Suite 200
Oakland, CA 94607
Telephone (510) 254-6808
Facsimile (202) 973-0950

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**AMY EVANS**, individually and on behalf of all others similarly situated,

Plaintiff,

v.

**DSW, INC.**,

Defendant.

Case No.

**CLASS ACTION COMPLAINT**
**JURY TRIAL DEMANDED**

1. Violation of the "Unfair" Prong of the UCL
2. Violation of the "Fraudulent" Prong of the UCL;
3. Violation of the "Unlawful" Prong of the UCL;
4. Violation of the California False Advertising Law, California Business & Professions Code Section 17500, *et seq.*;
5. Violation of the Consumers Legal Remedies Act, Cal. Civil Code Section 1750, *et seq.*;
6. Unjust Enrichment

## CLASS ACTION COMPLAINT

Plaintiff, AMY EVANS ("Plaintiff" or "Evans"), on behalf of herself and all others similarly situated, alleges the following based upon personal knowledge and the investigation of her counsel:

## INTRODUCTION

1. This is a civil class action on behalf of a class of consumers (defined below) seeking restitution and injunctive and declaratory relief from Defendant, DSW, Inc., ("DSW"), arising from its deceptive and misleading labeling and marketing of exclusive merchandise sold only at DSW stores.

2. During the Class Period (defined below), DSW intentionally misrepresented product prices, on products manufactured by DSW and exclusively sold at DSW, by advertising phantom reductions from "Compare At" prices and highlighting a "YOU SAVE" amount. To illustrate, below is an example of the type of in-store price tags Plaintiff and Class members relied on:

3. Plaintiff understood the "Compare At" price to represent an original price or a price at which the products formerly sold.

4. Plaintiff's understanding of "Compare At" was reasonable given DSW's former internal definition of "Compare At." On its website, and for a majority of the relevant time period, DSW defined the "Compare At" price as a manufacturer's suggested retail price:



**What do "Compare At" and "You Save" mean?** Back to top

At DSW, we're passionate about shoes–and how we sell them.

The "COMPARE AT" price refers to the manufacturer's suggested retail price (MSRP).

The "YOU SAVED" price is the money you save by shopping at DSW. It's the difference between what DSW customers pay and the "COMPARE AT" price that is recommended by the manufacturer.




*See* http://www.dsw.com/dsw_shoes/customer_service/index.jsp?content=cs_faq (visited December 1, 2015).

5. As the FTC has made clear, "[m]any members of the purchasing public believe that a manufacturer's list price, or suggested retail price, is the price at which an article is generally sold. Therefore, if a reduction from this price is advertised, many people will believe that they are being offered a genuine bargain." 16 C.F.R. § 233.3(a).

6. Very recently, DSW changed its website definition of the term "Compare At" to state that some advertised "Compare At" prices are **not** actually MSRPs, but might be "estimates" of prices for non-identical goods: "Our COMPARE AT price typically refers to the manufacturer's suggested retail price (MSRP), *but when an MSRP is not available, the COMPARE AT price is our estimate of other retailers' ticketed prices for the same or similar items*." *See* http://www.dsw.com/dsw_shoes/customer_service/index.jsp?content=cs_faq (visited May 26, 2016) (recently added language italicized).

**DSW'S BUSINESS MODEL DURING THE CLASS PERIOD**

7. DSW's business model is simple and well documented. As DSW explains in its Form 10-K for the period ending January 30, 2016, "from the day

[they] arrive in store," all products sold at DSW are advertised at a "discount" from higher "Compare At" reference prices:

> We have historically employed a consistent pricing strategy that provides customers with the same price on our merchandise from the day it arrives in store until it enters our planned clearance rotation. Our pricing strategy differentiates us from our competitors who usually price and promote merchandise at discounts available only for limited time periods. We find that customers appreciate shopping for value when it is most convenient for them, rather than waiting for a sale event.

*See, e.g.*, DSW Form 10-K for the period ending January 30, 2016 ("DSW 10-K"), attached as Exhibit A, p. 9.

8. In short, every DSW product is always offered at a supposed "discount." That discount is off the supposed "Compare At" price.

9. However, the Compare At prices are not prices at which the DSW Exclusive Products, which are manufactured exclusively for DSW and sold exclusively at DSW, have ever been offered for sale or sold. They are instead deceptive reference prices designed and intended to increase DSW's sales at the expense of reasonable consumers.

## <u>BRANDS MANUFACTURED AND SOLD EXCLUSIVELY BY DSW</u>

10. As part of its business model, DSW creates and trademarks brand names and then produces, markets, and exclusively sells products under those private brand names in DSW stores ("DSW Exclusive Products"):

> Through sourcing and product development, our buying team <u>produces</u> a differentiated, on-trend assortment with exclusive merchandise and <u>private brands</u> that effectively distorts our assortment to the most relevant categories. We strive to provide compelling everyday values to the customer by sourcing opportunistic buys and using our buying leverage and vendor relationships to secure product at favorable cost.

*See* DSW 10-K, p. 37 (emphasis added).

11. DSW Exclusive Products include all products sold under the following brand names, among many others, trademarked by DSW: Kelly & Katie, Lulu

Townsend, Poppie Jones, Audrey Brooke, and One Wink. *See* Composite Exhibit B, US Patent and Trademark Office trademark registries for Kelly & Katie, Audrey Brooke, and One Wink.

12. The price tags for DSW Exclusive Products include Compare At reference prices. However, the DSW Exclusive Products are *never sold anywhere* at the higher Compare At prices. In fact, DSW Exclusive Products are manufactured *exclusively for DSW* at DSW's direction. Those products are then marketed and sold *exclusively by DSW* and always sold at a supposed discount off of the Compare At prices. Thus, the "Compare At" prices are not and could not be, as DSW suggests, and Plaintiff believed, prices at which the items previously sold.

13. DSW Exclusive Products were never sold or intended to be sold at the "Compare At" prices. Indeed, DSW itself sets the prices for its DSW Exclusive Products knowing full well that the products will never be sold anywhere at the Compare At price; the only purpose of the Compare At price is to provide an artificially high price from which a phantom discount can be taken.

14. Evans reasonably believed that the Compare At prices she viewed, such as $75.00 and $55.00, were true former, original, or regular prices of the DSW Exclusive Products she purchased. Had she known that items she purchased were never sold or intended to be sold at the Compare At price (and that therefore the You Save amount was false), she would not have purchased the products or she would not have been willing to pay the amount she did.

## **DSW'S DECEPTIVE SCHEME**

15. DSW intentionally led Plaintiff, and reasonable consumers like her, to believe that the "Compare At" price advertisements on DSW Exclusive Products represented authentic price information for the products she purchased. In reality, DSW Exclusive Products are manufactured exclusively for DSW, sold *exclusively* at DSW and are always sold for less than the advertised "Compare At" price.

16. Accordingly, DSW's "Compare At" prices are deceptive advertisements designed by DSW to represent a false reference price, facilitate sham markdowns, and increase sales.

17. DSW further advertises false price information and phantom markdowns by prominently representing a "YOU SAVED" amount on receipts consumers are given at the point of sale. The "YOU SAVED" amount is the difference between the advertised Compare At prices and the actual prices for consumers' product purchases:


DSW®
Designer shoes. Warehouse prices.

Sherman Oaks Galleria
15301 VENTURA BLVD STE U1
SHERMAN OAKS, CA 91403-5852

818-981-2377

T-00004582 C-0051
00029200/0003 SALE

888128084528 WOMENS DRESS
$ OFF TRANS DISC 203 0.00
YOUR PRICE 29.95

SUBTOTAL 29.95
CA TAX 9.000% 2.70
DSW Rewards # 400316110040
TOTAL 32.65
MASTERCARD 32.65
XXXXXXXXXXXX7191/XXXX/781916 1
EVANS/AMY
CHANGE DUE 0.00
****************************************
* COMPARE AT SAVINGS 29.05 *
* *
* YOU SAVED 29.05 *
* *
****************************************

4582292000030311201600051
03/11/16 03:33 PM

THANKS FOR SHOPPING AT DSW. NOW SHOP 24/7
AT DSW.COM. QUESTIONS? CALL 866.DSW.SHOES

18. The "YOU SAVED" representation furthered Plaintiff's reasonable belief that the Compare At price portrayed true and accurate former price information.

19. In reality, consumers like Plaintiff do not "save" any money since the Compare At price is a sham. Indeed, "savings" on a product must be based on the actual amount it would cost to purchase the exact same product elsewhere, either currently or in the past.

20. For example, when Plaintiff bought a pair of Kelly & Katie sandals for $39.95, she did not "save" $35.05 as the price tag and receipt told her. The Kelly & Katie sandal she purchased is a DSW Exclusive Product that has never been sold anywhere else at any price, and has only ever been offered for sale at DSW at a price far lower than the "Compare At" price of $75.00.

21. DSW knows consumers are bargain-hunters, and it knows that consumers are excited by the prospect of a bargain. The juxtaposition of an artificial "Compare At" price and a lower actual price, and in some instances also a "You Save" price, on DSW Product price tags is intentionally designed to convey to the consumer that he or she is receiving a bargain or a "deal" on the product—on sales terms more preferential or more optimal to the consumer than those offered outside the context of the outlet store. But there is no bargain to be had. DSW includes the "Compare At" price on its DSW Products only to create the illusion of a bargain.

22. Because the products at issue here were never sold anywhere at the Compare At price, the advertised "Compare At" prices were *never the* prevailing market retail prices, and they most certainly were not the prevailing market retail prices within three months immediately preceding the publication of the advertised prices, as required by California law. *Business & Professions Code* § 17501, entitled "*Value determinations; Former price advertisements*," states:

> For the purpose of this article the worth or value of anything advertised is the prevailing market price, wholesale if the offer is at wholesale, retail if the offer at retail, at the time of publication of such advertisement in the locality wherein the advertisement is published.

> *No price shall be advertised as a former price of any advertised thing, unless the alleged former price was the prevailing market price as above defined within three months next immediately preceding the publication of the advertisement* or unless the date when the alleged former price did prevail is clearly, exactly and conspicuously stated in the advertisement.

(emphasis added).

23. The Federal Trade Commission ("FTC") explicitly describes this fictitious pricing scheme employed at DSW Outlets as deceptive:

> (a) Many members of the purchasing public believe that a manufacturer's list price, or suggested retail price, is the price at which an article is generally sold. Therefore, if a reduction from this price is advertised, many people will believe that they are being offered a genuine bargain. To the extent that list or suggested retail prices do not in fact correspond to prices at which a substantial number of sales of the article in question are made, the advertisement of a reduction may mislead the consumer. A former price is not necessarily fictitious merely because no sales at the advertised price were made. The advertiser should be especially careful, however, in such a case, that the price is one at which the product was openly and actively offered for sale, for a reasonably substantial period of time, in the recent, regular course of her business, honestly and in good faith – and, of course, not for the purpose of establishing a fictitious higher price on which a deceptive comparison might be based.
>
> (i) It bears repeating that the manufacturer, distributor or retailer must in every case act honestly and in good faith in advertising a list price, and not with the intention of establishing a basis, or creating an instrumentality, for a deceptive comparison in any local or other trade area. For instance, a manufacturer may not affix price tickets containing inflated prices as an accommodation to particular retailers who intend to use such prices as the basis for advertising fictitious price reductions.

16 C.F.R. § 233.3.

24. Further, to the extent DSW attempted to advertise comparable prices to similar, but not identical products they failed. In fact, DSW's only mention that

their "Compare At" pricing *may* be an "estimate of other retailers' ticketed prices for the same or similar items" is found buried in their online Frequently Asked Questions, which was only recently updated in light of ongoing litigation.

25. The FTC also describes the proper way to perform comparable price advertising and explicitly states that DSW's pricing scheme serves no legitimate purpose:

> (a) Another commonly used form of bargain advertising is to offer goods at prices lower than those being charged by others for the same merchandise in the advertiser's trade area (the area in which he does business). This may be done either on a temporary or a permanent basis, but in either case the advertised higher price must be based upon fact, and not be fictitious or misleading. Whenever an advertiser represents that he is selling below the prices being charged in his area for a particular article, he should be reasonably certain that the higher price he advertises does not appreciably exceed the price at which substantial sales of the article are being made in the area—that is, a sufficient number of sales so that a consumer would consider a reduction from the price to represent a genuine bargain or saving. Expressed another way, if a number of the principal retail outlets in the area are regularly selling Brand X fountain pens at $10, it is not dishonest for retailer Doe to advertise: "Brand X Pens, Price Elsewhere $10, Our Price $7.50".
>
> (c) A closely related form of bargain advertising is to offer a reduction from the prices being charged either by the advertiser or by others in the advertiser's trade area for other merchandise of like grade and quality—in other words, comparable or competing merchandise—to that being advertised. Such advertising can serve a useful and legitimate purpose when it is made clear to the consumer that a comparison is being made with other merchandise and the other merchandise is, in fact, of essentially similar quality and obtainable in the area. The advertiser should, however, be reasonably certain, just as in the case of comparisons involving the same merchandise that the price advertised as being the price of comparable merchandise does not exceed the price at which such merchandise is being offered by representative retail outlets in the area. For example, retailer Doe advertises Brand X pen as having "Comparable

> Value $15.00". Unless a reasonable number of the principal outlets in the area are offering Brand Y, an essentially similar pen, for that price, this advertisement would be deceptive.

16 C.F.R. § 233.2 (emphasis added).

26. The DSW pricing scheme was prominently advertised on the price tags of all products available for sale at DSW stores in California. To illustrate, below is an example of the merchandise price tags that Plaintiff relied on:




27. Upon information and belief, thousands of California consumers were victims of DSW's deceptive, misleading and unlawful false pricing scheme and thousands more, including Plaintiff, will be deceived if the practices continue.

28. DSW fraudulently concealed from, and intentionally failed to disclose to, Plaintiff and others similarly situated, the truth about its "Compare At" prices and advertised price discounts from those supposedly higher comparable prices.

29. DSW's false representations of "Compare At" prices and false representations of savings, discounts and bargains are objectively material to a reasonable consumer.

30. Plaintiff relied upon such false representations of "Compare At" prices and discounts when purchasing shoes from DSW stores in California. Plaintiff would not have made her purchases, or would not have paid the amount she did, but for DSW's false representations of the "Compare At" price of the items they purchased, especially when juxtaposed with the supposedly discounted "OUR PRICE" at which DSW offered the items for sale.

31. Plaintiff and other consumers like her reasonably believed that the Compare At prices associated with the products she purchased from DSW referred to a price at which the products were formerly sold. Based on this reasonable belief about the meaning of the Compare At prices, Plaintiff reasonably believed she was getting a terrific bargain on her purchases. In reality, she was not getting a bargain at all.

32. Through its false and deceptive marketing, advertising and pricing scheme, DSW violated (and continues to violate) California law. Specifically, DSW violated (and continues to violate) California's *Business & Professions Code* § 17200, *et seq*. (the "UCL"), California's *Business and Professions Code* § 17500, *et seq*. (the "FAL"), the California Consumers' Legal Remedies Act, *Civil Code* § 1750, *et seq*. (the "CLRA"), and the Federal Trade Commission Act ("FTCA"), which prohibits "unfair or deceptive acts or practices in or affecting commerce" and specifically prohibits false advertisements. 15 U.S.C. §§ 52(a) and 15 U.S.C. § 45(a)(1).

33. Plaintiff, individually and on behalf of all others similarly situated, seeks injunctive and declaratory relief, restitution, reasonable costs and attorneys' fees, and other equitable remedies under the UCL, FAL and CLRA.

## PARTIES

34. Plaintiff Amy Evans is an individual who is a citizen of Sherman Oaks, California. In reliance on Defendant's false and deceptive advertising, marketing and pricing schemes, Ms. Evans purchased five DSW Exclusive Products in March and April 2016. These purchases were made at the DSW store located in Sherman Oaks, California and online through DSW's website, wwww.dsw.com. As detailed herein, Plaintiff was induced to make these purchases in reliance on DSW's deceptive reference pricing scheme and was damaged as a result thereof.

35. Defendant DSW is a corporation duly organized and existing under the laws of the state of Ohio, with its principal place at 810 DSW Drive, Columbus, Ohio, 43219. Defendant operates 45 DSW locations in California.

## JURISDICTION AND VENUE

36. This Court has original jurisdiction of this action under the Class Action Fairness Act of 2005. Pursuant to 28 U.S.C. §§ 1332(d)(2) and (6), this Court has original jurisdiction because the aggregate claims of the members of the putative Class exceed $5 million, exclusive of costs, and at least one of the members of the proposed Class is a citizen of a different state than DSW.

37. The Central District of California has personal jurisdiction over DSW because DSW is licensed and doing business in the State of California, authorized to do business in California and registered with the California Secretary of State, and has sufficient minimum contacts with California, having intentionally availed itself of the California market so as to render the exercise of jurisdiction over it by this District Court consistent with traditional notions of fair play and substantial justice.

38. Venue is proper in the United States District Court, Central District of California pursuant to 28 U.S.C. § 1391, because Plaintiff is a resident of Los Angeles County, California; Defendant operates stores in Sherman Oaks, California and because the events giving rise to the claims occurred in Sherman Oaks, California.

## FACTUAL ALLEGATIONS

39. Traditionally, retail outlet stores were located in remote areas and typically maintained an inventory of defective and excess merchandise. Customers often flocked to these outlets in hopes of finding steep discounts and bargains. *See http://www.forbes.com/sites/investopedia/2012/12/29/7-tips-for-outlet-mall-shopping/* (last visited May 27, 2016).

40. However, in an effort to increase profits, major retailers such as DSW have, without notice to consumers, begun using outlet or warehouse stores to sell made-for-outlet goods that are never intended to be sold at non-outlet stores.

41. In California, such "outlet" stores are located in purpose-built malls touted as "outlets," or "premium outlets." The very term "outlet" conveys to reasonable consumers that at least some products are merchandise formerly offered for sale at full-price retail locations.

42. Instead, retailers like DSW create the illusion of traditional outlet and warehouse discounts and bargains by offering the made-for-outlet goods at prices reduced from fabricated, arbitrary, and false "Compare At" prices.

43. Media reports indicate that outlet stores such as DSW Outlets are using false and fraudulent price comparison tactics. *See http://www.buzzfeed.com/sapna/customers-finally-aware-that-most-outlet-merchandise-is-now* (last visited May 27, 2015).

44. The intentional use of false and fraudulent price comparison tactics is increasingly deceiving consumers in the market. To illustrate, on January 30, 2014, four Members of Congress demanded an FTC investigation of misleading marketing practices by outlet stores across the United States. The four Members of Congress described a pricing scheme similar to the one implemented at DSW stores and stated, "[i]t is a common practice at outlet stores to advertise a retail price alongside the outlet store price—even on made-for-outlet merchandise that does not sell at regular retail locations. Since the item was never sold in the regular retail store or at the retail price, the retail price is impossible to substantiate. We believe this practice may be a violation of the FTC's Guides Against Deceptive Pricing (16 CFR 233)." *See http://www.whitehouse.senate.gov/news/release/sens-and-rep-to-ftc-outlet-stores-may-be-misleading-consumers* (last visited May 27, 2016).

45. This is precisely the practice used by DSW in its DSW stores.

## PLAINTIFF'S PURCHASES

46. On March 11, 2016, Plaintiff entered the DSW store located in Sherman Oaks, California. She observed that merchandise was advertised with price tags that represented "Compare At" prices next to significantly reduced actual prices. Ms. Evans believed that the "Compare At" price listed on the tags represented original prices or a price at which the products were formerly sold. As a result of this reasonable belief, she thought the selling price reflected a significant savings over the price available for the same item outside the context of the outlet store. Plaintiff relied on the represented discount in deciding to purchase one pair of Kelly & Katie Chris Textured Sandals with a "Compare At" price of $59.00 and a lower actual price of $29.95. While at the store, Ms. Evans also tried on the Katie & Kelly Louise Wedge Pump, but the color she wished to purchase was not available in her size. At the register, Plaintiff placed an order for a pair of the Kelly & Katie Louise Wedge Pumps to be shipped to her in the color and size she wanted; the shoes were advertised with a "Compare At" price of $60.00 and a lower actual price of $39.95.

47. On March 27, 2016. Ms. Evans purchased online a pair of black Kelly & Katie Nadia Sandals and a pair of blush Kelly & Katie Talia Flat Sandals. The Nadia Sandals had a Compare At Price of $75.00 and a lower actual price of $39.95. The Talia Flat Sandals had a Compare At price of $55.00 and a lower actual price of $39.95.

48. On April 6, 2016, Ms. Evans purchased another pair of Kelly & Katie Talia Flat Sandals online, this time in black. Once again, the sandals had a Compare At price of $55.00 and a lower actual price of $39.95.

49. DSW never sold or intended to sell the items Ms. Evans purchased at the represented "Compare At" price. In fact, because the items were DSW Exclusive Products, they were never sold or intended to be sold anywhere at the Compare At price.

50. Plaintiff would not have purchased the products, or would not have paid the price she did, if she had known that the represented discounts were false. She will not purchase DSW Exclusive Products in the future unless or until DSW discontinues the use of false and misleading reference prices.

51. Plaintiff and class members' reliance on Defendant's false price comparison advertising was reasonable. In fact, empirical marketing studies provide an incentive for retailers to engage in this false and fraudulent behavior:

> [c]omparative price advertising offers consumers a basis for comparing the relative value of the product offering by suggesting a monetary worth of the product and any potential savings…[A] comparative price advertisement can be construed as deceptive if it makes any representation,… or involves any practice that may materially mislead a reasonable consumer.

*Comparative Price Advertising: Informative or Deceptive?*, Dhruv Grewal and Larry D. Compeau, *Journal of Public Policy & Marketing* , Vol. 11, No. 1, at 52 (Spring 1992). In short:

> [b]y creating an impression of savings, the presence of a higher reference price enhances subjects' perceived value and willingness to buy the product…Thus, if the reference price is not truthful, a consumer may be encouraged to purchase as a result of a false sense of value.

*Id*. at 55, 56.

52. Despite the "Compare At" scheme used at DSW stores, Plaintiff would purchase DSW Products in the future from DSW stores and/or other retail establishments, if product labels accurately reflect discounts and bargains. If the Court were to issue an injunction ordering DSW to comply with California's comparative price advertising laws, and prohibiting DSW's use of the deceptive practices discussed herein, Plaintiff would likely shop for DSW Exclusive Products again in the near future at DSW stores.

## CLASS ALLEGATIONS

53. Plaintiff incorporates and realleges by reference each and every allegation contained in the preceding paragraphs as if set forth herein in full.

54. Plaintiff brings this action on behalf of herself and the members of the proposed Class. The proposed Class consists of:

> All California residents who, within the applicable statute of limitations preceding the filing of this action and going forward from the date of the Complaint, purchased a DSW Exclusive Product advertised with a Compare At price and a lower actual selling price from a DSW store.

55. Excluded from the Classes are DSW, its parents, subsidiaries, affiliates, officers and directors, any entity in which DSW has a controlling interest, all customers who make a timely election to be excluded, governmental entities, and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

56. Plaintiff reserves the right to expand, limit, modify, or amend this class definition, including the addition of one or more subclasses, in connection with their motion for class certification, or any other time, based upon, *inter alia*, changing circumstances and/or new facts obtained during discovery.

57. The members of the Classes are so numerous that joinder is impractical. The Classes consists of thousands of members, the precise number which is within the knowledge of and can be ascertained only by resort to DSW's records.

58. There are numerous questions of law and fact common to the Classes which predominate over any questions affecting only individual members of the Class. Among the questions of law and fact common to the Class are:

(a) Whether, during the Class Period, DSW used false price representations and falsely advertised price discounts on its merchandise sold at DSW stores;

(b) Whether, during the Class Period, the Compare At prices advertised by DSW were the prevailing market prices for the DSW Exclusive

Products sold at DSW Outlets during the three month periods preceding the dissemination and/or publication of the advertised Compare At prices;

(c) Whether DSW's use of false or deceptive price advertising constituted false advertising under California Law;

(d) Whether DSW engaged in unfair, unlawful and/or fraudulent business practices under California law;

(e) Whether DSW misrepresented and/or failed to disclose material facts about its product pricing and discounts.

(f) Whether DSW has made false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions;

(g) Whether DSW's conduct, as alleged herein, was intentional and knowing;

(h) Whether members of the Class are entitled to damages and/or restitution, and in what amount;

(i) Whether DSW is likely to continue using false, misleading or illegal price comparisons such that an injunction is necessary; and

(j) Whether Plaintiff and Class members are entitled to an award of reasonable attorneys' fees, pre-judgment interest, and costs of suit.

59. Plaintiff's claims are typical of the claims of the members of the Classes and, like all members of the Classes, purchased DSW Exclusive Products from a DSW store that falsely conveyed a "Compare At" representation and a fictitious discount. Accordingly, Plaintiff has no interests antagonistic to the interests of any other member of the Class.

60. Plaintiff is a representative who will fully and adequately assert and protect the interests of the Class, and has retained counsel that are experienced in prosecuting class actions. Accordingly, Plaintiff is an adequate representative and will fairly and adequately protect the interests of the Class.

61. A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit, because individual litigation of the claims of all members of the Class is economically unfeasible and procedurally impracticable. While the aggregate damages sustained by the Class are in the millions of dollars, the individual damages incurred by each member of the Class resulting from DSW's wrongful conduct are too small to warrant the expense of individual lawsuits. The likelihood of individual Class members prosecuting their own separate claims is remote, and, even if every member of the Class could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.

62. The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for DSW. For example, one court might enjoin DSW from performing the challenged acts, whereas another might not. Additionally, individual actions may be dispositive of the interests of the Class, although certain class members are not parties to such actions.

63. The conduct of DSW is generally applicable to the Class as a whole and Plaintiff seeks, *inter alia*, equitable remedies with respect to the Class as a whole. As such, the systematic policies and practices of DSW make declaratory relief appropriate.

## COUNT I

### (Violation of the "Unfair" Prong of the UCL)

64. Plaintiff incorporate and realleges by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

65. The UCL defines unfair business competition to include any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising. Cal. Bus. & Pro. Code § 17200.

66. A business act or practice is "unfair" under the UCL if the reasons, justifications and motives of the alleged wrongdoer are outweighed by the gravity of the harm to the alleged victims.

67. DSW has violated the "unfair" prong of the UCL by representing a false and misleading "Compare At" and corresponding lower actual price representation for goods exclusively manufactured for sale at DSW stores. As a result, the inflated "Compare At" and corresponding selling price was nothing more than a false, misleading and deceptive illusion of a discount.

68. These acts and practices are unfair because they caused Plaintiff and reasonable consumers like her to falsely believe that DSW stores are offering value, discounts or bargains from the prevailing market worth of the products sold that did not, in fact, exist. As a result, purchasers, including Plaintiff, reasonably perceived that they were receiving products that regularly or were intended to be sold at substantially higher prices (and were, therefore, worth more) than what they paid. This perception has induced reasonable purchasers, including Plaintiff, to buy such products, which they otherwise would not have purchased or would have paid less for.

69. The gravity of the harm to members of the Class resulting from these unfair acts and practices outweighs any conceivable reasons, justifications and/or motives of DSW for engaging in such deceptive acts and practices. By committing the acts and practices alleged above, DSW engages in unfair business practices within the meaning of California Business & Professions Code § 17200, *et seq*.

70. Through its unfair acts and practices, DSW has improperly obtained money from Plaintiff and the Class. As such, Plaintiff requests that this court cause DSW to restore this money to Plaintiff and all Class members, and to enjoin DSW from continuing to violate the UCL as discussed herein and/or from violating the UCL in the future. Otherwise, Plaintiff and the Classes may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

**COUNT II**

**(Violation of the "Fraudulent" Prong of the UCL)**

71. Plaintiff incorporate and realleges by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

72. The UCL defines unfair business competition to include any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising. Cal. Bus. & Pro. Code § 17200.

73. A business act or practice is "fraudulent" under the UCL if it is likely to deceive members of the consuming public.

74. DSW's labels and advertising materials concerning false and misleading "Compare At" prices are fraudulent within the meaning of the UCL because they deceived Plaintiff and reasonable consumers like her into believing that DSW was offering value, discounts or bargains at DSW stores from the prevailing market value or worth of the products sold that did not, in fact, exist.

75. As a result of DSW's illusory discounts, purchasers, including Plaintiff, reasonably perceived that they were receiving products that were worth more than what they paid. This perception induced reasonable purchasers, including Plaintiff, to buy such products from DSW stores, which they otherwise would not have purchased or would have paid less for.

76. DSW's acts and practices as described herein have deceived Plaintiff and are highly likely to deceive reasonable members of the consuming public. Specifically, in deciding to purchase merchandise from a DSW store, Plaintiff relied on DSW's misleading and deceptive representations regarding its "Compare At" prices. The illusory discounts reflected on DSW's price tags played a substantial role in Plaintiff's decision to purchase the DSW products she bought, and Plaintiff would not have purchased those items or would not have been willing to pay the amount she did for the shoes in the absence of DSW's

misrepresentations. Accordingly, Plaintiff suffered monetary loss as a direct result of DSW's pricing practices described herein.

77. As a result of the conduct described above, DSW has been unjustly enriched at the expense of Plaintiff and members of the proposed Class. Specifically, DSW has been unjustly enriched by obtaining revenues and profits that it would not otherwise have obtained absent its false, misleading and deceptive conduct.

78. Through its fraudulent acts and practices, DSW has improperly obtained money from Plaintiff and the Class. As such, Plaintiff requests that this court cause DSW to restore this money to Plaintiff and all Class members, and to enjoin DSW from continuing to violate the UCL as discussed herein and/or from violating the UCL in the future. Otherwise, Plaintiff and the Classes may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

## COUNT III

### (Violation of the "Unlawful" Prong of the UCL)

79. Plaintiff incorporate and realleges by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

80. The UCL defines unfair business competition to include any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising. Cal. Bus. & Pro. Code § 17200.

81. A business act or practice is "unlawful" under the UCL if it violates any other law or regulation.

82. DSW's misconduct described herein violates three statutes: California Business & Professions Code § 17500 *et seq.*; the Consumers Legal Remedies Act, Cal. Civil Code § 1750 *et seq.*; and the Federal Trade Commission Act, 15 U.S.C. § 45(a)(1) and 15 U.S.C. § 52(a). Each of these violations, described in detail below,

is independently sufficient to support Plaintiff's claim under the unlawful prong of the UCL.

83. California statutory and regulatory law expressly prohibits false former pricing schemes. *Business & Professions Code* § 17501, entitled "*Value determinations; Former price advertisements*," states:

> For the purpose of this article the worth or value of anything advertised is the prevailing market price, wholesale if the offer is at wholesale, retail if the offer at retail, at the time of publication of such advertisement in the locality wherein the advertisement is published.
>
> *No price shall be advertised as a former price of any advertised thing, unless the alleged former price was the prevailing market price as above defined within three months next immediately preceding the publication of the advertisement* or unless the date when the alleged former price did prevail is clearly, exactly and conspicuously stated in the advertisement. [Emphasis added.]

*Id.*

84. The Consumers Legal Remedies Act, Cal. Civ. Code § 1770, subsection (a)(9), prohibits a business from "[a]dvertising goods or services with intent not to sell them as advertised," and subsection (a)(13) prohibits a business from "[m]aking false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions."

85. DSW violated and continues to violate *Business & Professions Code* § 17501, and *Civil Code* § 1770, sections (a)(9) and (a)(13) by advertising false discounts from purported former prices that were, in fact, not the prevailing market prices within three months next preceding the publication and dissemination of advertisements containing the false former prices.

86. Further, the Federal Trade Commission Act prohibits "unfair or deceptive acts or practices in or affecting commerce" and specifically prohibits false advertisements. (15 U.S.C. § 45(a)(1) and 15 U.S.C. § 52(a)). The FTC has established Guidelines which prohibit false pricing schemes, similar to DSW's

Compare At/Selling Price scheme in material respects, as deceptive practices that would violate the FTCA:

> (a) Many members of the purchasing public believe that a manufacturer's list price, or suggested retail price, is the price at which an article is generally sold. Therefore, if a reduction from this price is advertised, many people will believe that they are being offered a genuine bargain. To the extent that list or suggested retail prices do not in fact correspond to prices at which a substantial number of sales of the article in question are made, the advertisement of a reduction may mislead the consumer. A former price is not necessarily fictitious merely because no sales at the advertised price were made. The advertiser should be especially careful, however, in such a case, that the price is one at which the product was openly and actively offered for sale, for a reasonably substantial period of time, in the recent, regular course of her business, honestly and in good faith – and, of course, not for the purpose of establishing a fictitious higher price on which a deceptive comparison might be based.
>
> (i) It bears repeating that the manufacturer, distributor or retailer must in every case act honestly and in good faith in advertising a list price, and not with the intention of establishing a basis, or creating an instrumentality, for a deceptive comparison in any local or other trade area. For instance, a manufacturer may not affix price tickets containing inflated prices as an accommodation to particular retailers who intend to use such prices as the basis for advertising fictitious price reductions.

16 C.F.R. § 233.3. Additionally, the FTC also describes the proper way to perform comparable price advertising and explicitly states that DSW's pricing scheme serves no legitimate purpose:

> (a) Another commonly used form of bargain advertising is to offer goods at prices lower than those being charged by others for the same merchandise in the advertiser's trade area (the area in which he does business). This may be done either on a temporary or a permanent basis, but in either case the advertised higher price must be based upon fact, and not be fictitious or misleading. Whenever an advertiser represents that he is selling below the prices being charged in his area for a particular article, he should be reasonably certain that the higher price he advertises does not

> appreciably exceed the price at which substantial sales of the article are being made in the area—that is, a sufficient number of sales so that a consumer would consider a reduction from the price to represent a genuine bargain or saving. Expressed another way, if a number of the principal retail outlets in the area are regularly selling Brand X fountain pens at $10, it is not dishonest for retailer Doe to advertise: “Brand X Pens, Price Elsewhere $10, Our Price $7.50”.
>
> (c) A closely related form of bargain advertising is to offer a reduction from the prices being charged either by the advertiser or by others in the advertiser’s trade area for other merchandise of like grade and quality—in other words, comparable or competing merchandise—to that being advertised. Such advertising can serve a useful and legitimate purpose when it is made clear to the consumer that a comparison is being made with other merchandise and the other merchandise is, in fact, of essentially similar quality and obtainable in the area. The advertiser should, however, be reasonably certain, just as in the case of comparisons involving the same merchandise that the price advertised as being the price of comparable merchandise does not exceed the price at which such merchandise is being offered by representative retail outlets in the area. For example, retailer Doe advertises Brand X pen as having “Comparable Value $15.00”. Unless a reasonable number of the principal outlets in the area are offering Brand Y, an essentially similar pen, for that price, this advertisement would be deceptive

16 C.F.R. § 233.2 (emphasis added).

87. DSW’s use of and reference to a materially false “Compare At” price in connection with its marketing and advertisements concerning the merchandise sold at DSW Outlets violated and continues to violate the FTCA, 15 U.S.C. § 45(a)(1) and 15 U.S.C. § 52(a), as well as FTC Guidelines published at 16 C.F.R. § 233.

88. As a result of the conduct described above, DSW has been unjustly enriched at the expense of Plaintiff and members of the proposed Class. Specifically, DSW has been unjustly enriched by obtaining revenues and profits

that it would not otherwise have obtained absent its false, misleading and deceptive conduct.

89. Through its unlawful acts and practices, DSW has improperly obtained money from Plaintiff and the Class. As such, Plaintiff requests that this court cause DSW to restore this money to Plaintiff and all Class members, and to enjoin DSW from continuing to violate the UCL as discussed herein and/or from violating the UCL in the future. Otherwise, Plaintiff and the Classes may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

## COUNT IV

**(Violation of the California False Advertising Law,**
**California Business & Professions Code Section 17500, *et seq.*)**

90. Plaintiff incorporate and realleges by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

91. California's Business and Professions Code § 17500, *et seq*. prohibits unfair, deceptive, untrue, or misleading advertising, including, but not limited to, false statements as to worth, value and former price.

92. DSW's practice of advertising "Compare At" prices on DSW Exclusive Products that were materially greater than the actual prices of those products was an unfair, deceptive and misleading advertising practice because it gave the false impression that the DSW Exclusive Products were worth more than they actually were worth. In fact, DSW Exclusive Products were never sold anywhere but DSW, and they were never offered for sale at a price anywhere close to the "Compare At" price advertised because the merchandise was always sold for, or discounted further from, the selling price listed on the price tag at DSW stores.

93. Through its false advertising scheme, DSW has improperly obtained money from Plaintiff and the Class. As such, Plaintiff requests that this court cause DSW to restore this money to Plaintiff and all Class members, and to enjoin DSW from continuing to violate the FAL as discussed herein and/or from violating the

FAL in the future. Otherwise, Plaintiff and the Classes may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

**COUNT V**

**(Violation of the Consumers Legal Remedies Act,**
**California Civil Code Section 1750, *et seq.*)**

94. Plaintiff incorporate and realleges by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

95. Plaintiff and each member of the proposed class are "consumers" within the meaning of California Civil Code § 1761(d).

96. DSW's selling of goods manufactured exclusively for sale at DSW stores to Plaintiff and the Class were "transactions" within the meaning of Cal. Civ. Code § 1761(e).

97. The products purchased by Plaintiff and the Class are "goods" within the meaning of California Civil Code §1761(a).

98. As described herein, DSW violated the CLRA by falsely representing the nature, existence and amount of price discounts by fabricating inflated "Compare At" prices. Such a pricing scheme is in violation of Cal. Civ. Code § 1770, subsection (a)(9) ("[a]dvertising goods or services with intent not to sell them as advertised") and subsection (a)(13) ("[m]aking false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions").

99. Plaintiff relied on DSW's false representations about the existence and amount of discounts in deciding to purchase goods at a DSW stores. Plaintiff would not have purchased the products she bought or would not have been willing to pay the amount she did for the shoes absent DSW's unlawful conduct.

100. On May 27, 2016, counsel for Plaintiffs provided proper notice of their intent to pursue claims under the CLRA and an opportunity to cure to DSW via certified mail to DSW's headquarters at 810 DSW Drive, Columbus, OH 43219 and

also to DSW's registered agent for service in California. A true and correct copy of the notice letter dated May 27, 2016 is attached hereto as Exhibit C.

101. Plaintiff requests this Court enjoin DSW from continuing to violate the CLRA as discussed herein and/or from violating the UCL in the future and to order restitution to Plaintiff and each member of the proposed class. Otherwise, Plaintiff, the Classes and members of the general public may be irreparably harmed and/or denied effective and complete remedy if such an order is not granted.

102. If DSW declines to remedy its unlawful reference pricing scheme or otherwise address the CLRA violations and associated harm Plaintiff outlined in her notice letter within 30 days, Plaintiff will amend her complaint pursuant to Cal. Civ. Code § 1782(b) and (d) to seek actual and punitive damages, in addition to restitution, injunctive relief, and any other relief the Court deems proper.

103. Plaintiff's affidavit stating facts showing that venue in this District is proper pursuant to Cal. Civ. Code § 1780(c) is attached hereto as Exhibit D.

**COUNT VI**

**(Unjust Enrichment)**

94. Plaintiff incorporate and realleges by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

95. Plaintiff brings this claim individually, as well as on behalf of members of the Class, under California law.

97. At all times relevant hereto, Defendant deceptively priced, marketed, advertised, and sold DSW Exclusive Products to Plaintiff and the Class.

98. Plaintiff and members of the Class conferred upon Defendant non-gratuitous payments for merchandise that they would not have purchased or would have paid less for but for Defendant's deceptive pricing, advertising, and marketing. Defendant accepted or retained the non-gratuitous benefits conferred by Plaintiff and Class members, with full knowledge and awareness that, as a result of Defendant's deception, Plaintiff and Class members were not receiving a product of

the quality, nature, fitness, or value that had been represented by Defendant and that reasonable consumers would have expected.

99. Defendant has been unjustly enriched in retaining the revenues derived from purchases of merchandise by Plaintiff and Class members, which retention under these circumstances is unjust and inequitable because Defendant misrepresented, among other things, that its merchandise was being offered at a significant discount, which caused injuries to Plaintiff and Class members because they paid for, and/or paid more than they otherwise would have due to the misleading pricing and advertising.

100. Retaining the non-gratuitous benefits conferred upon Defendant by Plaintiff and Class members under these circumstances made Defendant's retention of the non-gratuitous benefits unjust and inequitable. Thus, Defendant must pay restitution to Plaintiff and the Class for unjust enrichment, as ordered by the Court.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff and the members of the Class demand a jury trial on all claims so triable and judgment against Defendant DSW as follows:

A. An order certifying that this action may be maintained as a class action, that Plaintiff be appointed Class Representative and Plaintiff's counsel be appointed Class Counsel;

B. A judgment awarding Plaintiff and the Class restitution and/or other equitable relief, including, without limitation, restitutionary disgorgement of all profits and unjust enrichment that Defendant obtained from Plaintiff and the Class as a result of its unlawful, unfair and fraudulent business practices described herein;

C. An order enjoining Defendant from continuing to violate the UCL, False Advertising Law, and CLRA as described herein

D. A judgment awarding Plaintiff her costs of suit; including reasonable attorneys' fees pursuant to California Civil Code § 1780(d), Code of Civil

Procedure § 1021.5 and as otherwise permitted by statute; and pre and post-judgment interest; and

E. Such other and further relief as may be deemed necessary or appropriate.

**DEMAND FOR JURY TRIAL**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a jury trial as to all issues triable by a jury.

Dated: May 31, 2016 Respectfully submitted,

By: */s/ Kristen Law Sagafi*
Kristen Law Sagafi

*Attorneys for Plaintiff*
**TYCKO & ZAVAREEI LLP**
KRISTEN LAW SAGAFI, California Bar No. 222249
ksagafi@tzlegal.com
MARTIN D. QUIÑONES, California Bar No. 238293
mquinones@tzlegal.com
483 Ninth Street, Suite 200
Oakland, CA 94607
Telephone (510) 254-6808
Facsimile (202) 973-0950

**TYCKO & ZAVAREEI LLP**
HASSAN A. ZAVAREEI, California Bar No. 181547
hzavareei@tzlegal.com
JEFFREY D. KALIEL, California Bar No. 238293
jkaliel@tzlegal.com
1828 L Street, NW, Suite 1000
Washington, DC 20036
Telephone (202) 973-0900
Facsimile (202) 973-0950

**KOPELOWITZ OSTROW P.A.**
JEFFREY M. OSTROW, Florida Bar No. 121452
ostrow@kolawyers.com
Scott A. Edelsberg, Florida Bar No. 0100537
edelsberg@kolawyers.com
200 S.W. 1st Avenue, 12th Floor
Fort Lauderdale, FL 33301
Telephone: (954) 525-4100
Facsimile: (954) 525-4300
(*pro hac vice to be filed)*

**LAW OFFICES OF WAYNE S. KREGER, P.A.**
WAYNE S. KREGER, California Bar No. 154759
wayne@kregerlaw.com
100 Wilshire Boulevard, Suite 940
Santa Monica, California 90401
Telephone (310) 917-1083
Facsimile (310) 917-1001