1  SEDGWICK LLP
   STEPHANIE A. SHERIDAN, State Bar No. 135910
2  *stephanie.sheridan@sedgwicklaw.com*
   ANTHONY J. ANSCOMBE, State Bar No. 135883
3  *anthony.anscombe@sedgwicklaw.com*
   MEEGAN B. BROOKS, State Bar No. 298570
4  *meegan.brooks@sedgwicklaw.com*
   333 Bush Street, 30th Floor
5  San Francisco, CA 94104-2834
   Telephone: 415.781.7900
6  Facsimile: 415.781.2635
   Attorneys for Defendant DSW INC.

7  TYCKO & ZAVAREEI LLP
   KRISTEN LAW SAGAFI, State Bar No. 222249
8  *ksagafi@tzlegal.com*
   ANNICK M. PERSINGER, State Bar No. 272996
9  *apersinger@tzlegal.com*
   483 Ninth Street, Suite 200
10 Oakland, CA 94607
   Telephone: 510. 254.6808
11 Facsimile: 202.973.0950

12 Counsel for Plaintiff
   *(Additional counsel listed on signature page)*

13            **UNITED STATES DISTRICT COURT**

14    **CENTRAL DISTRICT OF CALIFORNIA, EASTERN DIVISION**

15

16 AMY EVANS, individually and on       CASE NO. 2:16-cv-03791-JGB-SP
   behalf of all others similarly situated,
17                                       [DISCOVERY MATTER]
              Plaintiff,
18                                       Assigned to: Judge Jesus G. Bernal
       v.                                Referred to: Magistrate Judge Sheri
19                                       Pym
   DSW INC.,
20                                       **JOINT STIPULATION TO**
              Defendant.                 **COMPEL RESPONSES TO**
21                                       **DEFENDANT'S REQUEST FOR**
                                         **PRODUCTION OF DOCUMENTS,**
22                                       **SET ONE AND**
                                         **INTERROGATORIES, SET ONE**
23                                       **[COURT SCHEDULING ORDER**
                                         **ATTACHED AS EXHIBIT A]**
24
                                         Date:       August 22, 2017
25                                       Time:       10:00 a.m.
                                         Crtm:       3, 3rd Floor, Riverside
26
                                         Discovery Cut Off:      12/11/17
27                                       Pre-trial Conference:   04/09/18
                                         Trial Date:             04/24/18
28

1   Pursuant to Local Rule 37-1, the parties met and conferred by written
2   correspondence, as well as by telephonic meetings on May 5, July 11, and July 14,
3   2017.  The following discovery disputes, addressed more fully below, have not been
4   resolved.  Accordingly, pursuant to Local Rule 37-2.1, the parties hereby submit this
5   Joint Stipulation in support of Defendant DSW Inc.'s ("Defendant" or "DSW")
6   motion to compel Plaintiff Amy Evan's ("Plaintiff") responses and/or further
7   responses to discovery regarding the following disputed issues.

8   **I.      INTRODUCTORY STATEMENTS**

9       **1.      Defendant's Introductory Statement**

10      Plaintiff claims that DSW duped her into buying several pairs of Kelly &
11  Katie-brand shoes by displaying a "Compare At" price for each item, which
12  informed Plaintiff of prices she could expect to pay for similar items at other
13  retailers.  Some of the most important issues in this case thus include what Plaintiff
14  believed "Compare At" to mean;  did she actually rely on this phrase?;  did she have
15  independent knowledge of what she could expect to pay for shoes of similar style
16  and quality at other retailers?;  and what would reasonable shoppers believe on these
17  topics?  Plaintiff's experience shopping at other retailers will provide critically
18  important information relevant to these issues.

19      Plaintiff, however, is attempting to thwart any meaningful inquiry into these
20  topics by refusing to provide important information about her own shopping history,
21  her shopping preferences or her shopping habits.  DSW brings this motion to compel
22  in order to probe the truthfulness and credibility of Plaintiff's self-serving and
23  conclusory assertions that she was hoodwinked.  When she walked into the DSW
24  store in March, 2016, and visited DSW's website in April, 2016, she brought a
25  lifetime of shopping experience with her, and that experience provided the lens
26  through which she interpreted DSW's pricing representations.  She must share that
27  experience in discovery.

28

1      As Rule 26 makes clear, parties are entitled to "obtain discovery regarding

2  any non-privileged matter that is relevant to any party's claim or defense and

3  proportional to the needs of the case …." Fed. R. Civ. P. 26(b)(1).  Here, DSW has

4  sought information highly relevant to her claims:  a list of retailers where she shops;

5  credit card statements that would confirm where she shops and how much she

6  spends with those retailers; and the terms and conditions of the retailer

7  rewards/loyalty memberships and credit/debit cards she has held throughout the

8  class period.  DSW's requests are reasonably tailored to the needs of this case, and

9  impose virtually no burden on Plaintiff at all (*i.e.*, identifying retailers, obtaining

10  credit card statements and terms and conditions), as they will merely allow DSW to

11  perform further investigation itself, such as by issuing subpoenas.

12      Plaintiff objects to Interrogatory No. 12 and Requests for Production Nos.

13  11and 13 as asking for irrelevant information.  In her responses to these requests,

14  Plaintiff contends that documents and information are only relevant to the extent

15  they are directly related to Plaintiff's purchase of DSW Exclusive Products[1]

16  purchased from DSW.  *See* Plaintiff's Response to ROG No. 12 ("Plaintiff's

17  purchase of DSW Exclusive Products has nothing to with the purchase of any other

18  products.").  In response to this request, Plaintiff subsequently agreed to provide

19  information as to all of Plaintiff's *DSW* purchases (not just her purchases of

20  Exclusive Products) during the class period, but that is still insufficient.  DSW is

21  entitled to learn about her entire shopping history – knowledge, behaviors,

22  preferences, and the like.  For example, a jury could easily conclude that Ms. Evans

23  is not someone for whom a bargain is an important motivating factor if her shopping

24  history shows that she buys most of her apparel at upscale boutiques.  And how

25

26

27  [1] "DSW Exclusive Products" are defined in Plaintiff's Complaint as products

28  "produce[d], market[ed], and exclusively sold under [DSW's trademarked] private
brand names…." (FAC ¶10.)

1  could she possibly claim, with credibility, that her understanding of pricing and
2  advertising do not depend on her experiences shopping at other retailers?

3        For this reason, courts in other pricing cases have ordered plaintiffs to
4  produce their credit card information. *See Sperling v. Stein Mart*, Case 5:15-cv-
5  01411-BRO-KK,  2017 U.S. Dist. Lexis 3668 at *6-*13 (Jan. 10, 2017) (Ordering
6  Plaintiff to produce loyalty program and credit card information in response to
7  requests nearly identical to those here, because "The Court agrees Plaintiff's
8  shopping habits are relevant to the claims and defenses in this action."); *Chester v.*
9  *The TJX Companies, Inc.*, EDCV 15-01437-ODW (DTBx), Dkt. 85 (March 6, 2017)
10  (minutes for telephonic conference stating that plaintiffs are to provide credit card
11  statements to the extent they exist); see also *Lucas v. Jos. A. Bank*, 3:14-cv-01631-
12  LAB-JLB, Dkt. 112 (July 6, 2016) (noting that defendant received full set of
13  plaintiff's bank statements pursuant to subpoena).

14        In addition to her relevancy objections, Plaintiff objects to the same requests
15  as being overly broad and/or unduly burdensome, but offers no detail as to why the
16  requests are unreasonable.  DSW limited its requests to reasonable time periods and
17  reasonable items, and her objections are nothing more than reflexive boilerplate
18  calculated to stymie DSW's investigation. *Paulsen v. Case Corp.,* 168 F.R.D. 285,
19  289 (C.D.Cal.1996) ("Overbroad, unduly burdensome, unduly redundant to other
20  discovery, oppressive" are "general or boilerplate objections, which are not proper
21  objections.").

22        DSW's requests about Plaintiff's shopping history are narrowly tailored to the
23  needs of this case, and Plaintiff has offered no valid objections.  Plaintiff must
24  therefore produce the requested information and documents sought in Interrogatory
25  No. 12 and Requests for Production Nos. 11 and 13.

26        **2.**    **Plaintiff's Introductory Statement**

27       DSW uses false "Compare At" prices on its DSW Exclusive Products to
28  deceive consumers into believing that they are purchasing brand-name shoes at a

1  discount, when they are actually buying products that are made exclusively for

2  DSW and that are never sold anywhere at the higher "Compare At" price. DSW has

3  several lines of Exclusive Products, none of which are ever sold at other stores, and

4  none of which are ever sold anywhere at the advertised "Compare At" price.

5  Plaintiff alleges that DSW's use of "Compare At" prices on its Exclusive Products is

6  therefore false, fraudulent, and deceptive. Further, every DSW customer's receipt

7  contains a "YOU SAVE" amount in large, capitalized letters, that reflects the

8  difference between the actual price paid and the "Compare At" price advertised on

9  the product price tag. But again, these "savings" are illusory—DSW Exclusive

10  Products have never been sold at other stores and have never been sold at the higher

11  "Compare At" price.

12      Plaintiff Amy Evans purchased five pairs of DSW Exclusive shoes, believing,

13  based on DSW's "Compare At" pricing, that she was getting a discount off the price

14  other stores charged for the same shoes. But, like all class members, Plaintiff was

15  deceived. The "discount" Plaintiff thought she was getting was fake and the

16  "Compare At" prices were a sham. Had Plaintiff known of the falsity of the

17  "Compare At" prices, she would not have purchased the shoes or would not have

18  paid the prices that she did.

19      Defendant's requests, which center around Plaintiff's shopping habits and

20  history at stores *other* than DSW, are irrelevant to this case which is premised

21  entirely around DSW Exclusive Products. As Judge Bernal recognized in denying

22  Defendant's Motion to Dismiss:

23          [T]he products at issue here are exclusively manufactured and sold by
            DSW so there would be no way of knowing whether the 'Compare
24          At' price printed on an item's tag corresponds to its true value, or a
            false and misleading amount manufactured by DSW. And so, Plaintiff
25          and consumers cannot just 'shop around' to determine whether they
26          are being deceived by DSW's "Compare At" value estimate[.]

27  Order on Motion to Dismiss, ECF No. 38 at 9-10 (internal quotation and citation

28  omitted). Judge Bernal later reasoned that "it is reasonable to infer that most

Sedgwick LLP

1   customers would interpret the 'Compare At' price to mean the price charged for the

2   same item—either formerly or at a different store—rather than an estimate price of

3   what a retailer could charge for a hypothetical 'comparable' shoe." *Id.* at 10. As

4   indicated in the Court's opinion, the relevant market here is DSW, not every store in

5   which Plaintiff may have encountered some "hypothetical comparable shoe." Thus,

6   Plaintiff's "independent knowledge of what she could expect to pay for shoes of

7   similar style and quality[]" is irrelevant to the question of whether DSW's false

8   "Compare At" prices were likely to deceive. *See supra* Def's Statement. In other

9   words, even if Plaintiff had "shop[ped] around," she never would have encountered

10  the DSW Exclusive Products at issue (anywhere, at any price), because the DSW

11  Exclusive Products are only sold at DSW. *See* Order on Motion to Dismiss, ECF

12  No. 38 at 9-10. Plaintiff's shopping history at stores other than DSW is not relevant

13  to any claims or defenses in this case, and is therefore not discoverable.

14          Notably, Plaintiff has reached agreement with Defendant on most of

15  Defendant's discovery requests. The only requests that remain are overbroad,

16  irrelevant to any party's claims and defenses, and disproportionate to the needs of

17  this case. Even if Defendant could prove that the requested documents are

18  marginally relevant, which they cannot, the burden on Plaintiff far exceeds any

19  potential benefit to Defendant. To the extent Plaintiff's shopping preferences are at

20  all relevant to any of Defendant's potential defenses, Defendant already has

21  significant information and is free to depose Plaintiff and inquire about such topics

22  at her deposition.[2] *See Mkt. Lofts Cmty. Assoc. v. Nat'l Union Fire Ins. Co.*, No. CV

23  15-3093-RGK (SPX), 2016 WL 6237909, at *6 (C.D. Cal. Mar. 9, 2016).[3]

24  _____

25  [2] Plaintiff has repeatedly offered to make Ms. Evans available for deposition.

26  Defendant has thus far declined to schedule it.

27  [3] Defendant's criticism of Plaintiff's supposedly "boilerplate" objections is not well

28  taken. In Plaintiff's letter dated May 12, 2017, Plaintiff clarified that she included
    specific objections to each of Defendant's discovery requests, and that she did not

1    Obfuscating the fact that DSW is the only retailer that sells the products at

2    issue, Defendant claims that it is entitled to discover the entire "lifetime of shopping

3    experience" that Plaintiff brought with her when she purchased products sold

4    exclusively at DSW stores. *See supra* Def's Statement. A "lifetime of shopping

5    experience," however, is not proportionate to the needs of this case, which relates to

6    products that are only sold by DSW. Indeed, given the number of consumer

7    transactions made on a daily basis, asking any typical consumer to provide a

8    "lifetime of shopping experience" would be impracticable.

9    Even though "Plaintiff and consumers cannot just 'shop around' to determine

10   whether they are being deceived by DSW's 'Compare At' value estimate," Plaintiff

11   has provided DSW with a lot of information about her "shopping history." *See*

12   Order on Motion to Dismiss, ECF No. 38 at 9-10. Specifically, Plaintiff has

13   provided a detailed list of retailers where she is a loyalty member or has a credit

14   card. After conferring with Defendant, Plaintiff has further promised to provide

15   pictures of every pair of shoes and every shoe box that she has in her possession, as

16   well as all receipts reflecting shoe purchases that she has in her possession. She has

17   also promised to search her email and provide DSW with the name of every retailer

18   from whom she receives email. Given the information that Plaintiff has already

19   provided, Defendant's argument that Plaintiff "is attempting to thwart meaningful

20   inquiry into these topics by refusing to provide important information about her own

21   shopping history, her shopping preferences or her shopping habits" should be

22   afforded little weight. *See supra* Def's Statement. [4]

23

24   withhold any documents based on objections that Defendant now characterizes as

25   "boilerplate."

26   [4] Plaintiff has been cooperative in providing information to Defendant. Plaintiff has
     produced 450 pages of documents including, but not limited to: pictures of all DSW

27   products she has in her possession (she has also agreed to make these available for
     inspection), receipts for DSW purchases, screen shots of the DSW website, a

28   detailed inventory of all the purchases she made at DSW, articles and research about

Sedgwick LLP

## II.    DISCOVERY REQUESTS AT ISSUE

### 1.    Plaintiff's Responses to DSW's Interrogatories, Set One

a.    <u>Interrogatory No. 12</u>

Identify by name and address all retailers (including online retailers, brick-and-mortar retailers, and individuals) from which/whom you have bought apparel, shoes, or accessories (bags, jewelry, scarves, hats, etc.) during the past six years.

## <u>PLAINTIFF'S RESPONSE TO INTERROGATORY NO. 12</u>

Plaintiff hereby incorporates the General Objections above as if fully stated herein. Plaintiff objects that this interrogatory is vague and ambiguous, overbroad, and so unduly burdensome that it would be impossible to respond to. Plaintiff also objects that the interrogatory constitutes harassment. This interrogatory is also overbroad in that it is not limited to DSW Exclusive Products purchased within the class period or applicable statutes of limitation. Additionally, Plaintiff objects that the interrogatory seeks information that is not relevant to this litigation or reasonably calculated to lead to the discovery of admissible evidence. This interrogatory is not proportional to the needs of this litigation because Plaintiff's purchase of DSW Exclusive Products has nothing to with the purchase of any other products — including any purchases of DSW items other than the DSW Exclusive Products at issue.

---

reference pricing, credit card statements reflecting DSW purchases (which she had to request from her credit card company), a current resume, her retention agreement, a privilege log detailing the time and date of emails that were exchanged between herself and counsel when she retained them to represent her, scores of emails sent to her from DSW, and a claim form, settlement check, and email related to her participation as an absent settlement class member in a settlement. She has also provided written information including but not limited to, her date and place of birth, her address, a list of all persons that live with her, all names that she has been known by, the dates of her marriage, whether she has been divorced, all of her addresses for the past ten years, all persons she has lived with in the past 10 years, whether she has children, all of her husband's email addresses, his date of birth, his phone number, her DSW membership information (which they already had), and a description of how she came to retain counsel in this litigation.

Sedgwick LLP

1    Subject to and without waiving the forgoing objections, Plaintiff responds as

2  follows: Plaintiff will produce an inventory describing all DSW Exclusive Products

3  Plaintiff has purchased from DSW during the class period and relevant limitations

4  period based on a reasonably diligent search to date, which includes description and

5  identifying numbers for each item and the amount, if known, Plaintiff paid for each

6  item, which may be updated if and when additional items are identified.

7  **DEFENDANT'S POSITION REGARDING INSUFFICIENCY OF**

8  **RESPONSE**

9    For the reasons set forth in DSW's Opening Statement, Plaintiff's response

10 should not be limited to DSW Exclusive Products, or to DSW products more

11 generally.  Plaintiff's purchases were informed by her shopping history.  The other

12 retailers where Plaintiff has shopped are therefore highly relevant to this case.

13 **PLAINTIFF'S POSITION REGARDING SUFFICIENCY OF RESPONSE**

14    For the reasons set forth in Plaintiff's Opening Statement, Plaintiff's only

15 relevant purchases were from DSW. DSW Exclusive Products are only sold at

16 DSW. The salient issue is whether the Compare At price is deceptive when DSW

17 Exclusive Products are never sold at that price at DSW or anywhere else. A list of

18 all retailers where Plaintiff has bought almost any product in the past six years is

19 disproportional to the needs of the case, especially when Defendant may obtain any

20 further information regarding Plaintiff's shopping habits through less burdensome at

21 her deposition.

22    Especially given the detailed information that Plaintiff has already provided,

23 DSW's remaining requests, such as this one, are disproportionate to the needs of this

24 case.  For example, DSW claims that it needs "a list of retailers where she shops."

25 But Plaintiff has already provided the following list of retailers where she is a

26 loyalty member or has a credit card: Albertson's, American Airlines, Amtrak,

27 ArcLight Cinemas, Banana Republic, Best Buy, BevMo, Coffee Bean, CVS, Delta,

28 e.l.f., Fairmont Hotel, Hilton, IHG Hotel Group, IKEA, JetBlue, Michael's, Office

1   Depot, P.F. Chang's, Pavilions, PetCo, Ralphs, REI, Sephora, Smart & Final,

2   Southwest, Starbucks, Starwood, United Airlines, Ulta, Veggie Grill, Virgin

3   Atlantic, and Vons. Even though all of the products at issue are sold exclusively at

4   DSW, Plaintiffs' list of loyalty memberships/credit cards provides a wealth of

5   information about where Plaintiff buys food, pet supplies, furniture, makeup,

6   movies, plane tickets, train tickets, clothing, office supplies, coffee, craft supplies,

7   and electronics. Plaintiff has also promised to provide a list of every retailer that she

8   receives email from. Defendant fails to explain why this information will not

9   provide it a sufficient opportunity to "allow DSW to perform further investigation

10  itself, such as by issuing subpoenas." *See supra* Def's Statement.

11         **2.     Plaintiff's Responses to DSW's Production of Documents (RFP), Set**

12                **One**

13                a.     <u>Request for Production No. 11</u>

14         A copy of each of YOUR credit card statements from the last four years for

15  any credit card YOU held at any point during that period.

16  **PLAINTIFF'S RESPONSE TO REQUEST FOR PRODUCTION NO. 11**

17         Plaintiff hereby incorporates the General Objections above as if fully stated

18  herein. Plaintiff objects that this request is designed solely to harass Plaintiff and her

19  counsel. This request is overbroad, extremely burdensome, and disproportionate to

20  the needs of this litigation, which relates solely to DSW Exclusive Products.

21  Plaintiff objects that this request is unlikely to lead to the discovery of admissible

22  evidence. Plaintiff further objects that this request is overbroad as to time, and

23  overbroad in that it is not tethered to the purchases she made of DSW Exclusive

24  Products. Responding to this request would also unacceptably infringe on Plaintiff's

25  right to privacy, and would reveal sensitive financial information. With respect to

26  purchases made by Plaintiff with her credit card at DSW stores, information is

27  equally in Defendant's custody and control.

28         Based on the foregoing objections, Plaintiff will produce purchase records

Sedgwick

1  related to DSW Exclusive Products, to the extent she finds them in her possession

2  after a reasonably diligent search.

3  **PLAINTIFF'S AMENDED RESPONSE**

4     Plaintiff hereby incorporates the General Objections above as if fully stated

5  herein. Plaintiff objects that this request is designed solely to harass Plaintiff and her

6  counsel. This request is overbroad, extremely burdensome, and disproportionate to

7  the needs of this litigation, which relates solely to DSW Exclusive Products.

8  Plaintiff objects that this request is unlikely to lead to the discovery of admissible

9  evidence. Plaintiff further objects that this request is overbroad as to time, and

10  overbroad in that it is not tethered to the purchases she made of DSW Exclusive

11  Products. Responding to this request would also unacceptably infringe on Plaintiff's

12  right to privacy, and would reveal sensitive financial information. With respect to

13  purchases made by Plaintiff with her credit card at DSW stores, information is

14  equally in Defendant's custody and control.

15     Based on the foregoing objections, Plaintiff will produce purchase records

16  related to DSW Products, to the extent she finds them in her possession after a

17  reasonably diligent search, including credit card statements reflecting purchases of

18  DSW Products to the extent they can be obtained.

19  **DEFENDANT'S POSITION REGARDING INSUFFICIENCY OF**

20  **RESPONSE**

21     This request is narrowly tailored to cover Plaintiff's credit card purchases

22  during the class period, which took place in the years immediately before and after

23  the purchases at issue.  Plaintiff's credit card statements from the years immediately

24  before and after her purchase will provide DSW with a direct and discrete list of

25  places where she spent money around the time of the purchases at issue—this

26  information is directly relevant to how she would have interpreted DSW's

27  "Compare At" pricing, and whether or how Plaintiff's shopping habits changed after

28  she learned the meaning of "Compare At" pricing. *See also* DSW's Opening

Sedgwick LLP

1  Statement.

2      Where, as here, credit card statements are relevant to the Plaintiff's claims,

3  they must be produced.  *See Sperling*, 2017 U.S. Dist. LEXIS 3668 at *12-13

4  (Ordering Plaintiff to produce credit card statements from the four years preceding

5  her purchase to the present date, because "Plaintiff's shopping habits are relevant to

6  the claims and defenses in this action."); *Chester v. The TJX Companies, Inc.*,

7  EDCV 15-01437-ODW (DTBx), Dkt. 85 (March 6, 2017) (minutes for telephonic

8  conference stating that plaintiffs are to provide credit card statements to the extent

9  they exist); *Stokes v. Petroleum Helicopters*, No. CIV. A. 97-0508, 1998 WL

10  313733, at *2 (E.D. La. June 12, 1998) ("The credit card statements are therefore

11  discoverable if they are relevant to the general subject matter of this case and are

12  likely to lead to the discovery of admissible evidence.").

13      The Parties have already agreed to a robust Protective Order, which should

14  alleviate any privacy concerns.  *See A. Farber and Partners, Inc. v. Garber,* F.R.D.

15  186, 191 (C.D. Cal. 2006) ("plaintiff's need for defendant Garber's financial

16  documents outweighs defendant Garber's claim of privacy, especially when the

17  impact of the disclosure of the information can be protected by a carefully drafted

18  protective order." ); *In re Heritage Bond Litigation,* 2004 WL 1970058, *5 n. 12

19  (C.D.Cal.) ("Any privacy concerns Kaiser defendants have in their bank records and

20  related financial statements are adequately protected by the protective order, and are

21  not sufficient to prevent production in this matter.").

22  **PLAINTIFF'S POSITION REGARDING SUFFICIENCY OF RESPONSE**

23      DSW argues it needs credit card statements to "confirm where she shops and

24  how much she spends with those retailers." *See supra* Def's Statement. Setting aside

25  that no other retailer sells any of the products at issue, Defendant will already have a

26  picture of every shoe in Plaintiff's closet—including brand name, and pricing

27  information. DSW can analyze her choice of retailers and the amounts she spends on

28  those shoes using the shoes in her closet.  DSW also has a wealth of information

1  about Plaintiff's loyalty memberships and credit cards. *See* Plaintiff's Position

2  Regarding Sufficiency of Response to Interrogatory 12. It does not need to do a line-

3  by-line analysis of her credit card statements.

4          Plaintiff has already supplemented her response to this request to provide

5  credit card statements for purchases of all DSW products in the past four years

6  (rather than only DSW Exclusive Products, which are the only products at issue in

7  the Complaint). For the reasons set forth in Plaintiff's Opening Statement, Plaintiff's

8  shopping history at stores other than DSW is irrelevant and disproportionate to the

9  needs of the case. To the extent Defendant wishes to learn how Plaintiff's shopping

10 habits "changed after she learned the meaning of 'Compare At' pricing," Defendant

11 may so inquire at Plaintiff's deposition. As detailed below, Defendant's cited

12 authority is inapplicable to this case.

13         First, contrary to Defendant's representations, disclosure of Plaintiff's credit

14 card statements for the past four years—which undoubtedly include purchases not

15 just of shoes, or even of apparel generally—constitutes an unnecessary invasion into

16 Plaintiff's privacy rights which is grossly disproportionate to the needs of this case.

17 *See* e.g. *Asker v. Safeco Ins. Co. of Illinois*, No. CV-08-0335-EFS, 2009 WL

18 10627610, at *2 (E.D. Wash. Aug. 4, 2009) (concluding that the defendant's request

19 for a plaintiff's bank and credit card records was "grossly disproportionate to any

20 rationally-based need for information with which to prepare a defense").

21         Second, Defendant's cited cases are not instructive here. For example,

22 *Sperling v. Stein Mart*, Case 5:15-cv-01411-BRO-KK, 2017 U.S. Dist. Lexis 3668 is

23 inapposite. In *Sperling*, the relevant shopping universe included other retailers that

24 sold the same exact products that Stein Mart did. *See Sperling v. Stein Mart*, Case

25 5:15-cv-01411-BRO-KK, Complaint Dkt. 1, at ¶ 54 ("Plaintiff is informed and

26 believes, and on that basis alleges, that when Defendant advertised prices as

27 'Compare At' prices on the price tags of items sold in its California Stein Mart

28 stores, Defendant was not reasonably certain that the higher price it advertised did

not appreciably exceed the price at which substantial sales of the items were being made in the area."); *id.* at. ¶ 68 ("Plaintiff is informed and believes, and on that basis alleges, that often Defendant has not determined or verified the prices other merchants charge for the identical products"); *id.* at ¶ 103 ("Plaintiff is further informed and believes, and on that basis alleges, that the prevailing retail prices for the items that she purchased from Defendant were materially lower than the 'Compare At' prices advertised by Defendant. Plaintiff reasonably believed that the 'Compare At' prices associated with the items that she purchased from Defendant were the then prevailing retail prices for the items at other full-price retailers."). In this case, on the other hand, Plaintiff has not brought other stores into issue because she does *not* allege that prices at other retailers "for the items that she purchased from Defendant were materially lower than the 'Compare At' prices advertised by Defendant." *Cf. id.* at ¶ 103. To the contrary, Defendant does not dispute that no other retailer sells DSW Exclusive merchandise.  As a result, the merchandise sold by other retailers is irrelevant to this case

Moreover, the minutes from the telephonic conference Defendant cites in *Chester v. The TJX Companies, Inc.*, EDCV 15-01437-ODW (DTBx), Dkt. 85 (March 6, 2017) shed no light on what Defendant was actually seeking, or what specifically the Court ordered the parties to produce. The minutes state only: "Furthermore, counsel are to discuss the status of the credit card statements as to when they will be provided or whether the statements exist." *Id.* The minutes have no precedential value when we do not know whether Defendant sought all of Plaintiff's credit card statements, or merely a redacted version documenting Plaintiff's purchases (which Plaintiff has already provided here).[5] It also cannot be discerned from the minutes whether the plaintiff(s) in *Chester* had provided

---

[5] *Lucas v. Jos. A. Bank*, 3:14-cv-01631-LAB-JLB, Dkt. 112 (July 6, 2016) is inapposite. In that case, Plaintiff voluntarily subpoenaed Plaintiff's bank statements only when questions arose regarding the veracity of Plaintiff's redacted bank statement.

1  purchase receipts, pictures of all products purchased at TJX, or a list of loyalty club
2  memberships and retailer credit cards. It is further unclear from the record whether
3  the products at issue in *Chester* were sold exclusively at TJX. If, for example, a
4  plaintiff bought an item at TJX for a certain price, and credit card statements
5  revealed that the plaintiff had bought that same item elsewhere for a much higher
6  price, than those credit card statements might be relevant to whether the plaintiff
7  was deceived by a "Compare At" representation.

8      Differently, here, the shopping universe at issue is exclusively DSW because
9  the DSW Exclusive products at issue were not sold anywhere but DSW. *See* Order
10 on Motion to Dismiss, ECF No. 38 at 9-10. Plaintiff could not have bought the
11 products at issue at any price at any other store. Additionally, Plaintiff has already
12 gone beyond what is required of her under the Federal Rules and provided
13 photographs of all DSW products in her possession (not just DSW Exclusive
14 Products), her receipts and credit card statements for the purchases she made at
15 DSW, her DSW loyalty number, and more. *See supra* fn. 4. She will also provide a
16 list of retailers who send her emails, a picture of each pair of shoes she owns, and
17 any receipts. As such, Defendant brings this motion seeking detailed credit card
18 statements, on top of what she has already provided, for no other reason than to
19 burden and harass Plaintiff.

20     Defendant's other cited cases do not support its position either. In *Stokes v.*
21 *Petroleum Helicopters*, No. CIV. A. 97-0508, 1998 WL 313733, at *2 (E.D. La.
22 June 12, 1998), for example, Plaintiff's credit card statements were relevant to
23 Plaintiff's claim for damages. Here, Plaintiff's credit card statements in no way have
24 bearing on Plaintiff's claims. Likewise, in *A. Farber & Partners, Inc. v. Garber*, 234
25 F.R.D. 186, 191 (C.D. Cal. 2006), Defendant's tax returns were relevant to
26 Plaintiff's civil RICO claim, and the information was not available from other
27 sources. Here, the information Defendant seeks is readily available from other

28

1  sources; if Defendant would like to know where else Plaintiff has shopped,

2  Defendant may ask her at her deposition.[6]

3                    b.         Request for Production No. 13

4         Copies of the terms and conditions of any retailer's rewards or loyalty

5  program you have joined, or any store credit or debit card you have opened,

6  including but not limited to those offered by DSW.

7  **PLAINTIFF'S RESPONSE TO REQUEST FOR PRODUCTION NO. 13**

8         Plaintiff hereby incorporates the General Objections above as if fully stated

9  herein. Plaintiff objects that this request is vague, overbroad, and unduly

10 burdensome in that it seeks information related to retailers other than DSW. To the

11 extent this requests seeks information related to retailers other than DSW, this

12 request is not proportional to the needs of this litigation, and is unlikely to lead to

13 the discovery of admissible evidence. Other credit cards and retailer reward

14 programs are not relevant to this litigation because the products at issue in this

15 litigation are DSW Exclusive Products. Responding to this request would also

16 unacceptably infringe on Plaintiff's right to privacy, and would reveal sensitive

17 financial information. Plaintiff also objects that this request is designed solely to

18 harass Plaintiff and her counsel. In addition, Plaintiff objects that Plaintiff's DSW

19 rewards information is within Defendant's possession custody and control, and

20 equally available to Defendant.

21        Subject to and without waiving the forgoing objections, after a reasonable

22 search, Plaintiff has no responsive, non-privileged documents in her possession,

23 custody, or control with regard to rewards programs. With regard to credit cards,

24 Plaintiff will not respond to this request.

25 _____

26 [6] *In re Heritage Bond Litig.*, No. CV 02-1475-DT(RCX), 2004 WL 1970058, at *5
   (C.D. Cal. July 23, 2004) involved the indisputably relevant financial documents of

27 the Defendant, rather than a class plaintiff. The only cases Defendant cites involving
   a class plaintiff's disclosure of bank records are *Sperling* and *Chester*, both of which

28 are inapplicable for the reasons stated herein.

Sedgwick<sub>LLP</sub>

**PLAINTIFF'S AMENDED RESPONSE**

Plaintiff hereby incorporates the General Objections above as if fully stated herein. Plaintiff objects that this request is vague, overbroad, and unduly burdensome in that it seeks information related to retailers other than DSW. To the extent this requests seeks information related to retailers other than DSW, this request is not proportional to the needs of this litigation, and is unlikely to lead to the discovery of admissible evidence. Other credit cards and retailer reward programs are not relevant to this litigation because the products at issue in this litigation are DSW Exclusive Products. Responding to this request would also unacceptably infringe on Plaintiff's right to privacy, and would reveal sensitive financial information. Plaintiff also objects that this request is designed solely to harass Plaintiff and her counsel. In addition, Plaintiff objects that Plaintiff's DSW rewards information is within Defendant's possession, custody, or control, and equally available to Defendant.

Subject to and without waiving the forgoing objections, after a reasonable search, Plaintiff has no responsive, non-privileged documents in her possession, custody, or control with regard to rewards programs. With regard to credit cards, Plaintiff will not respond to this request.

**DEFENDANT'S POSITION REGARDING INSUFFICIENCY OF RESPONSE**

The terms and conditions of Plaintiff's credit cards and reward/loyalty programs will reflect directly on Plaintiff's shopping habits, as well as on Plaintiff's knowledge of how other retailers define "Compare At". Plaintiff has put such information at issue by bringing this case. *See also* DSW's Opening Statement; DSW's Statement re RFP 11.

To the extent that Plaintiff does not have these terms and conditions in her possession, she is obliged to obtain such information from the retailers in question. *See Sperling* , 2017 U.S. Dist. LEXIS 3668 at *13 ("To the extent there is any

Sedgwick LLP

1 confusion…a document is currently in Plaintiff's control if [s]he has a legal right to

2 obtain it from third parties.")

3 **PLAINTIFF'S POSITION REGARDING SUFFICIENCY OF RESPONSE**

4      Plaintiff incorporates by reference Plaintiff's response to Request for

5 Production No. 11.

6      Defendant fails explain how the "terms and conditions for [her] credit cards"

7 will provide any meaningful information about its stated need for information about

8 "the lens through which she interpreted DSW's pricing representations," or

9 "whether she [had] independent knowledge of what she could expect to pay for

10 shoes of similar style and quality at other retailers." *See supra* Def's Statement. In

11 other words, Plaintiff's contracts of adhesion with her credit card companies do not

12 plausibly relate to the question of whether Plaintiff relied on the "Compare At"

13 phrase used on DSW's price tags for its exclusive merchandise.  Defendant also

14 fails to explain why it needs Plaintiff's loyalty and credit card *numbers* in addition

15 to the list of memberships/credit cards she has already provided to probe Plaintiff's

16 credibility or to determine whether Plaintiff is typical of the class.

17      The terms & conditions of Plaintiff's various loyalty programs for airline,

18 hotels, coffee, groceries, and the like are not relevant to this case. To the extent the

19 Court is persuaded that any information related to other retailers' loyalty programs

20 is relevant, Plaintiff will request and provide the terms and conditions of the limited

21 subset, if any, of loyalty programs the Court deems relevant to this case.

22

23 DATED:  July 25, 2017        SEDGWICK LLP

24                            By:    /s/ Stephanie Sheridan *

25                               STEPHANIE A. SHERIDAN

26                               ANTHONY A. ANSCOMBE

27                               MEEGAN B. BROOKS

28                               Attorneys for Defendant
                              DSW INC.

1

2   DATED:  July 25, 2017          TYCKO & ZAVAREEI LLP

3                                          By:     /s/ Kristen Law Sagafi

4                                                KRISTEN LAW SAGAFI
                                               ANNICK M. PERSINGER
5                                              Attorneys for Plaintiff

6

7

8   *  I hereby attest pursuant to Local Rule 5-4.3.4 that I obtained concurrence in the
    filing of the document from the other Signatories prior to filing.

9

10

11                      *Additional Counsel for Plaintiff*:

12

13  **TYCKO & ZAVAREEI LLP**           **KOPELOWITZ OSTROW**
    HASSAN A. ZAVAREEI, SBN 181547     **FERGUSON WEISELBERG**
14  *hzavareei@tzlegal.com*            **GILBERT**
    JEFFREY D. KALIEL, SBN 238293      Jeffrey M. Ostrow
15  *jkaliel@tzlegal.com*              *ostrow@kolawyers.com*
    1828 L Street, NW, Suite 1000      Scott Edelsberg
16  Washington, D.C. 20036             *edelsberg@kolawyers.com*
    Telephone: (202) 973-0900          1 West Las Olas Blvd., 5th Floor
17  Facsimile: (202) 973-0950          Ft. Lauderdale, FL 33301
                                       Telephone: (954) 525-4100
18                                     Facsimile: (954) 525-4300

19

20

21  **KOPELOWITZ OSTROW**
    **FERGUSON WEISELBERG**
22  **GILBERT**
    Avi R. Kaufman
23  *kaufman@kolawyers.com*
    2800 Ponce de Leon Blvd., Suite 1100
24  Coral Gables, FL 33134
    Telephone: 305-529-8858
25  Facsimile: 954-525-4300

26

27

28

Sedgwick LLP

# Exhibit A

1
2
3
4
5
6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

7
8

| | |
|---|---|
| AMY EVANS | Case No: 2:16−cv−03791−JGB−SP |
| Plaintiff(s), | |
| v. | CIVIL TRIAL SCHEDULING ORDER |
| DSW, INC. | Last Day to Stipulate or File a Motion to Amend Pleadings or Add New Parties: 7/3/2017 |
| Defendant(s). | Deadline for Initial Designation of Expert Witnesses: 11/6/2017 |
| | Deadline for Designation of Rebuttal Expert Witnesses: 11/27/17 |
| | All Discovery Cut−Off (including hearing of discovery motions): 12/11/2017 |
| | Dispositive Motion Hearing Cut−Off: 2/26/2018 at 9:00 AM |
| | Last day to Conduct Settlement Conference: 1/8/2018 |
| | Final Pre−Trial Conference: 4/9/2018 at 11:00 AM |
| | Jury Trial: 4/24/2018 at 09:00 AM |
| | Trial Estimate: 10 Day(s) |

This case is set for trial before the Honorable Jesus G. Bernal, Courtroom 1,
United States District Court, 3470 Twelfth Street, 2nd Floor, Riverside, California.
\\\

−1−

**Motions**

Judge Bernal hears motions in civil cases on Mondays at 9:00 a.m. The cut−off date for hearing motions is the last day on which motions will be heard, i.e., the motion must be filed at least 28 days before the deadline in accordance with the requirements of Local Civil Rule 6−1. **A copy of every motion related document filed must be delivered to the chambers drop box outside Courtroom 1 ("the mandatory chambers copy")**. The cut−off date applies to all non−discovery motions except motions directly related to the conduct of trial, e.g., motions in limine and motions to sever parties or bifurcate issues for trial.

All motions in limine and other trial−related motions must be properly noticed for hearing no later than the date of the Final Pretrial Conference. **Each side is limited to five motions in limine**. Memoranda of Points and Authorities in support of or in opposition to motions in limine shall not exceed 10 pages. Replies will not be accepted. Motions shall not be compound, i.e., each motion shall address only one item of evidence or witness. If common grounds for exclusion or admission apply to multiple items of evidence or witnesses, each motion shall address only one category of evidence or witnesses. Motions in limine should not be disguised motions for summary adjudication of issues.

All parties and counsel must comply with Local Rule 7−16, which provides:

> Any moving party who intends to withdraw the motion before the hearing date shall file and serve a withdrawal of the motion, not later than seven (7) days preceding the hearing. Any opposing party who no longer intends to oppose the motion, shall file and serve a withdrawal of the opposition, not later than seven (7) days preceding the hearing.

Failure to comply with this notification requirement may result in the imposition of sanctions on the offending counsel or party.

\\\
\\\
\\\

**Discovery**

Counsel shall initiate all discovery other than depositions at least **45 days** before the cut–off date. The Court will not approve stipulations between counsel which permit responses to be served after the cut–off date except in unusual circumstances and for good cause shown.

All depositions must be completed by the discovery cut–off deadline. Counsel shall lodge all original depositions that will be used in trial with the Courtroom Deputy Clerk on the first day of trial.

Counsel are expected to resolve discovery problems without the assistance of the Court. Discovery disputes have been referred to the United States Magistrate Judge assigned to this case. The discovery cut–off is the last date to complete discovery, including expert discovery. It is also the last day for hearing any discovery motion. If not separately set forth above, the required expert disclosures shall be made **70 days** before the discovery cut–off date.

**Settlement Procedures**

Counsel must complete a settlement conference under the Court–Directed ADR Program (Local Rule 16–15.4) no later than the date set by the Court above. If the parties desire to participate in an ADR procedure other than that elected in the Rule 26(f) Scheduling Report and Order, they shall file a stipulation with the Court. This request will not necessarily be granted.

Counsel shall include in the proposed Pretrial Conference Order a status report detailing what procedure has been followed, and the status of settlement efforts. No case will proceed to trial unless all parties, including the principals of all corporate parties, have appeared personally at a settlement conference and complied with Local Rule 16–15.5.

If a settlement is reached, it shall be reported immediately to this Court as by Local Rule 16–15.7. **In all cases set for jury trial, the parties must notify the Court, no later than the Wednesday preceding the Tuesday trial date, of any settlement, so that the necessary arrangements can be made to bring in a different case for trial or notify the members of the public who would otherwise be reporting for jury duty that their services are not needed that date.**

**Failure to comply with this notification requirement may result in the imposition of sanctions on counsel for one or more parties, or their clients, or both.**

## Final Pretrial Conference

The Court will conduct a Final Pretrial Conference pursuant to Federal Rule of Civil Procedure 16 and Local Rule 16–1 on the date and time listed above. Each party appearing in this action shall be represented at the Final Pretrial Conference and at all pretrial meetings by the lead trial counsel. Counsel should be prepared to discuss streamlining the trial, including presentation of testimony by deposition excerpts, time limits, stipulations as to undisputed facts, and qualification of experts by admitted resumes. In rare cases where the Pretrial Conference is waived by the Court, counsel must follow Local Rule 16–11. This Court does not exempt *pro per* parties from the requirements of Local Rule 16.

**Matters to be Discussed at the Final Pretrial Conference**

Counsel shall be prepared to discuss the following matters with the Court at the Pretrial Conference:

- the witnesses all parties intend to call during their respective cases,

and the amount of time necessary for direct and cross examination of each witness;

- any anticipated problems in scheduling witnesses;
- any evidentiary issues, including anticipated objections under Rule 403, and objections to exhibits;
- jury selection procedures;
- all pretrial motions, including motions in limine, to bifurcate and to sever;
- any disputed jury instructions, and the form of the instructions which will be given to the jury at the outset of the case, i.e., before opening statements and presentation of evidence;
- whether any counsel intends to use any evidence or demonstrative aid in opening statement; and
- motions to exclude witnesses from the courtroom during trial testimony.

If counsel for any party need to arrange for the installation of their own equipment, such as video monitors, notebooks, or overhead projectors, counsel shall notify the Courtroom Deputy Clerk **_no later than 4:00 p.m. two days before trial_** so that the necessary arrangements can be made.

**Pretrial Filings**

Counsel shall submit carefully prepared Memoranda of Contentions of Fact and Law (which may also serve as the trial briefs) and proposed Pretrial Conference Orders in accordance with the provisions of Local Rules 16–4 through 16–7. The form of the proposed Pretrial Conference Order shall be in conformity with the form set forth in Appendix A to the Local Rules.

The filing schedule for pretrial documents is as follows:

\\\

A.     <u>At least 28 days before final pretrial conference</u>

-     Motions in limine

B.     <u>At least 21 days before final pretrial conference</u>

-     Memorandum of contentions of fact and law

-     Witness lists

-     Joint exhibit list

-     Oppositions to motions in limine

C.     <u>At least 14 days before final pretrial conference</u>

-     Proposed final pretrial conference order

-     Proposed jury instructions, and any objections

-     Proposed verdict forms

-     Statement of the case

-     *Proposed voir dire questions, if desired*

D.     <u>At least 7 days before trial:</u>

-     Trial briefs, if desired

In drafting the proposed Pretrial Conference Order, counsel shall make a good faith effort to agree on and set forth as many uncontested facts as possible. The Court may read the uncontested facts to the jury at the start of the trial.

In drafting the factual issues in dispute for the proposed Pretrial Conference Order, the issues of fact should track the elements of a claim or defense upon which the jury would be required to make findings. Counsel should attempt to state issues in ultimate fact form, not in the form of evidentiary fact issues (i.e., "was the defendant negligent?"; "was such negligence the proximate cause of injury to the plaintiff?"; "was the plaintiff negligent?"; **not**, "was the plaintiff standing on the corner of 5th and Spring at 10:00 a.m. on May 3?"). Counsel may list sub−issues under the headings of ultimate fact issues, but shall not use this as a device to list disputes over evidentiary matters.

Issues of law should state legal issues upon which the Court will be required

to rule after the Pretrial Conference, including during the trial, and should not list ultimate fact issues to be submitted to the trier of fact.

Each party shall list and identify its respective expert witnesses, if any. Failure of a party to list and identify an expert witness in the proposed Pretrial Conference Order shall preclude a party from calling that expert witness at trial.

**Exhibit and Witness Lists**

Counsel are to prepare their exhibits by placing them in 3–ring binders that are tabbed down the right side with exhibit numbers. The spine portion of the binder shall indicate the volume number and contain an index of each exhibit including in the volume. The binders are to be prepared with an original for the Courtroom Deputy Clerk, which shall be tagged with the appropriate exhibit tags in the upper right hand corner of the first page of each exhibit, and one copy for Court ("bench book"). Each binder shall contain an index of the included exhibits. The exhibits are to be numbered in accordance with Local Rule 26–3.

The Court requires the following to be submitted to the Courtroom Deputy Clerk on the first day of trial:

A.    The original exhibits with the Court's exhibit tags. The parties shall use yellow tags for plaintiff and blue tags for defendant, which shall be stapled to the front of the exhibit on the upper right corner with the case number, case name, and exhibit number placed on each tag. Counsel can obtain exhibit tags at the Clerk's Office, Room 134, 1st Floor, 3470 Twelfth Street, Riverside.

B.    One bench book with a copy of each exhibit for use by the Court, tabbed with numbers as described above. (Court's exhibit tags not necessary.)

C.    Three copies of exhibit index.

The exhibit index shall be in the following form:

| Case No. | Case Name: | | |
|---|---|---|---|
| Exhibit No. | Description | Date Identified | Date Admitted |
| 3 | 1/30/2005 Letter from Doe to Roe | | |

D.     Three copies of witness lists in the order in which the witnesses may be called to testify.

The witness lists shall be in the following form:

| Case No. | Case Name: |
|---|---|
| Witness Name | Date Called to Testify |
| 1.     John Doe | |
| 2.     Jane Doe | |

All counsel are to meet no later than **10 calendar days** before trial and to stipulate to the extent possible to foundation, waiver of the best evidence rule, and which exhibits may be received into evidence at the start of trial. The exhibits to be received will be noted on the extra copies of the exhibit lists.

**Court Reporter**

At least 7 days before the commencement of trial, counsel for the parties shall provide the court reporter with a list of unusual words, phrases, and spellings that may come up during trial. This information should be emailed to the reporter at Adele_Frazier@cacd.uscourts.gov.

**Jury Instructions**

**Fourteen calendar days** prior to the Rule 16–2 Meeting of Counsel, counsel

shall exchange proposed jury instructions and special verdict forms (if applicable), *Seven calendar days* prior to the Rule 16–2 meeting, counsel shall exchange any objections to the instructions and special verdict forms. Prior to or at the time of the Rule 16–2 meeting, counsel shall meet and confer with the goal of reaching agreement as to one set of joint, undisputed jury instructions and one special verdict form.

The parties shall file proposed jury instructions *fourteen calendar days* before the Final Pretrial Conference. As always, the parties must submit mandatory chamber copies to the Court. In addition, the parties must submit electronic versions (either Word or WordPerfect format) to the Court at the following e–mail address: JGB_Chambers@cacd.uscourts.gov.

As noted above, the parties must act jointly to submit proposed jury instructions. The parties must submit one set of agreed upon jury instructions. At the same time, the parties must submit another set of jury instructions containing the instructions upon which the parties disagree and the objections to those instructions. Where the parties disagree on an instruction, the party opposing the instruction must attach a short (i.e., one to two paragraphs) statement supporting the objection and the party submitting the instruction must attach a short statement supporting the instruction. Each statement should be on a separate page and should follow directly after the disputed instruction.

Accordingly, the parties ultimately will submit one document or, if the parties disagree over any proposed jury instructions, two documents. If the parties submit two documents, those documents should consist of: (1) a set of agreed upon jury instructions and (2) a set of disputed jury instructions along with reasons supporting and opposing each disputed instruction.

Where the *Manual of Model Civil Jury Instructions for the Ninth Circuit (2007 edition)* provides a version of a requested instruction, the parties should submit the Model instruction. Where California law applies, the Court prefers

counsel to use *Judicial Council of California, Civil Instructions* – ("CACI").

If neither of the above sources has an instruction on the subject, counsel are

directed to consult the current edition of ***O'Malley, et al., Federal Jury Practice***

***and Instructions***. Each requested instruction shall (a) cite the authority or source

of the instruction, (b) be set forth in full, (c) be on a separate page, (d) be

numbered, (e) cover only one subject or principle of law, and (f) not repeat

principles of law contained in any other requested instruction.

The Court will send a copy of the jury instructions into the jury room for

use by the jury during deliberations. Accordingly, in addition to the file copies

described above, the parties shall file with the Courtroom Deputy Clerk and

shall email to chambers on the first day of the trial a "clean set" of joint and/or

proposed jury instructions that contain only the text of each instruction set forth

in full on each page, with the caption "Court's Instruction Number _____"

(eliminating titles, supporting authority, indication of party proposing, etc.).

This will be referred to as the "Jury Copy" of the jury instructions.

An index page shall accompany all jury instructions submitted. The index

page shall indicate the following:

- The number of the instruction;
- A brief title of the instruction;
- The source of the instruction and any relevant case citations; and
- The page number of the instruction.

EXAMPLE:

| Number | Title | Source | Page |
|--------|-------|--------|------|
| 1 | Burden of Proof | 9th Cir. 12.02 | 7 |

**Joint Statement of the Case**

Counsel shall prepare a joint statement of the case which will be read by the

Court to the prospective panel of jurors prior to the commencement of voir dire.

The statement should not be longer than two or three paragraphs. The statement shall be filed with the Court *fourteen calendar days* before the Final Pretrial Conference.

## Trial

The Court sets firm trial dates. Counsel shall arrive at the Courtroom **not later than 8:30 a.m.** each day of trial. The Court reserves the time from **8:30 to 9:00 a.m.** to handle legal and administrative matters outside the presence of the jury. The trial will commence promptly at 9:00 a.m. Counsel shall anticipate matters that may need discussion or hearing outside the presence of the jury and to raise them during this period.

The Court is in session with the jury on *Tuesdays through Fridays, 9:00 a.m. to 4:30 p.m., with a morning and an afternoon break and a lunch recess from approximately 12:00 to 1:15 p.m.* In most cases, jury selection is completed on the first morning of trial, and counsel should be prepared to give opening statements and begin presentation of evidence immediately thereafter.

All counsel are asked to observe the following practices during trial:

- All counsel, defendants, and parties shall rise when the jury enters and leaves the courtroom.
- Counsel shall stand when addressing the Court, including when objecting to opposing counsel's questions.
- When objecting, counsel should state only "objection," and the legal ground for the objection (e.g., hearsay, irrelevant, etc.). Counsel should refrain from arguing the legal basis for the objection unless permission is granted to do so.
- Counsel must seek leave to approach the Courtroom Deputy Clerk or the witness, and should question witnesses while standing at the lectern.

- Counsel should not address or refer to witnesses or parties by first names alone, with the exception of witnesses under 14 years old.
- Counsel shall not discuss the law or argue the case in opening statements.
- Counsel shall address all remarks to the Court and should not directly address the Courtroom Deputy Clerk, the Court Reporter, opposing counsel, or the jury (except in opening statement and closing argument). Counsel must ask the Court for permission to talk off the record in order to speak with opposing counsel.
- Counsel shall not make an offer of stipulation unless he or she has conferred with opposing counsel and believes that the stipulation will be accepted. Any stipulation of fact will require the defendant's personal concurrence and shall be submitted to the Court in writing for approval.
- While Court is in session, counsel may not leave the counsel table to confer with witnesses, colleagues, or assistants in the back of the courtroom unless the Court grants permission to do so in advance.
- Where a party has more than one lawyer, only one may conduct the direct or cross−examination of a particular witness, or make objections as to that witness.
- If a witness was on the stand before a recess or adjournment, counsel shall have the witness back on the stand and ready to proceed when Court resumes.
- If there is more than a brief delay between witnesses, the Court may deem that the party has rested.
- The Court attempts to cooperate with witnesses and will, except in extraordinary circumstances, accommodate them by permitting them to be examined out of sequence. Counsel should discuss any

scheduling issues with opposing counsel. If there is an objection, counsel shall confer with the Court in advance.

### Court Trial

*Twenty–one calendar days* before the trial date, each party shall prepare and serve on opposing counsel copies of the proposed Findings of Fact and Conclusions of Law. Each party shall review the other party's proposed Findings and Conclusions and make such changes in the party's own proposed Findings and Conclusions as necessary following such review. *Fourteen calendar days* before the trial date, each party shall lodge two copies of its proposed Findings of Fact and Conclusions of Law with the Court, also serving other parties if changes have been made. The parties shall be prepared to submit to the Court, and to exchange among themselves, supplemental Findings of Fact and Conclusions of Law during the course of the trial.

### Website

Counsel are encouraged to review the Central District's website for additional information: http://www.cacd.uscourts.gov

The Courtroom Deputy Clerk is ordered to serve a copy of this Order personally, electronically, or by mail on counsel for all parties to this action.

**IT IS SO ORDERED.**

Dated: April 24, 2017

Jesus G. Bernal
United States District Judge