1  SEDGWICK LLP
   STEPHANIE A. SHERIDAN, State Bar No. 135910
2  *stephanie.sheridan@sedgwicklaw.com*
   ANTHONY J. ANSCOMBE, State Bar No. 135883
3  *anthony.anscombe@sedgwicklaw.com*
   MEEGAN B. BROOKS, State Bar No. 298570
4  *meegan.brooks@sedgwicklaw.com*
   333 Bush Street, 30th Floor
5  San Francisco, CA 94104-2834
   Telephone: 415.781.7900
6  Facsimile: 415.781.2635

7  Attorneys for Defendant
   DSW INC.

8

9

10               **UNITED STATES DISTRICT COURT**

11       **CENTRAL DISTRICT OF CALIFORNIA, EASTERN DIVISION**

12

13  AMY EVANS, individually and on          CASE NO. 2:16-cv-03791-JGB-SP
    behalf of all others similarly situated,
14                                                   [DISCOVERY MATTER]
              Plaintiff,
15                                          Assigned to: Judge Jesus G. Bernal
         v.                                 Referred to: Magistrate Judge Sheri Pym
16
    DSW INC.,                               **DSW'S L.R. 37-2.3 SUPPLEMENTAL**
17                                          **MEMORANDUM IN SUPPORT OF**
              Defendant.                    **MOTION TO COMPEL FURTHER**
18                                          **DISCOVERY RESPONSES**
19
                                            Date:    August 22, 2017
20                                          Time:    10:00 a.m.
                                            Crtm:    3, 3rd Floor, Riverside
21
22
                                            Discovery Cut Off:      12/11/17
23                                          Pre-trial Conference:   04/09/18
                                            Trial Date:             04/24/18
24
25

26

27

28

84985380v2                                              Case No. 2:16-cv-03791-JGB-SP
──────────────────────────────────────────────────────────────────────────
DEFENDANT'S NOTICE OF MOTION AND MOTION TO COMPEL FURTHER DISCOVERY RESPONSES

1   Plaintiff claims that her shopping history would only be relevant to this case if
2   the shoes she purchased were also sold by other retailers.  However, regardless of
3   the fact that Plaintiff purchased only DSW Exclusive Products,[1] she did not make
4   her purchases in a vacuum.  Plaintiff's shopping history—including stores where she
5   shops, the frequency at which she makes purchases, and the amount she spends—is
6   relevant to whether Plaintiff actually interpreted "Compare At" to mean the price at
7   which the items she purchased were sold by other retailers, whether that
8   interpretation was material to her, and indeed, to whether her shopping experience
9   would have also informed her that the shoes she bought at DSW were sold
10  elsewhere.  All of these topics are relevant to statutory standing and the key liability
11  issues in this case.  *See Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310, 322 (2011).

12  There are numerous ways in which her credit card statements and a list the
13  stores where she has shopped could shed light on how Plaintiff interpreted the Kelly
14  & Katie brand and the "Compare At" price on the items she purchased, and other
15  factors she might have considered during those purchases.  For example:

16  • Other retailers use "Compare At" on their price tags , and some post
17    signage at the point-of-sale that define "Compare At" to mean the price
18    of comparable merchandise.  Defendant is entitled to learn what stores
19    she has visited to assess her potential for having formed impressions as
20    to the meaning of "Compare at" at DSW.

21  • If Plaintiff has shopped at retailers using "Compare At" *after* she filed
22    suit against DSW, it would provide compelling evidence that "Compare
23    At" pricing was not material to her.

24  • If Plaintiff buys most of her apparel at upscale boutiques, then a jury
25    could easily conclude that she is not someone for whom a bargain is an

---

[1] "DSW Exclusive Products" are defined in Plaintiff's Complaint as products
"produce[d], market[ed], and exclusively sold under [DSW's trademarked] private
brand names…." (FAC ¶10.)

Sedgwick LLP

important motivating factor.

- If Plaintiff is a frequent shopper, making regular purchases from a wide variety of fashion retailers, then she likely would have known that Kelly & Katie is not a name brand sold by other retailers.

- If Plaintiff has shopped at other retailers who have been sued for deceptive pricing, then she may have aware of those suits before making the purchases at issue here, and may have made her purchases here for the purpose of filing a claim.

- Plaintiff's shopping history would have also informed her decision that the shoes she purchased were worth the amount she decided to pay.

Plaintiff claims that her experience shopping at other retailers is "irrelevant," because the items she purchased were not sold by other retailers.  In support, Plaintiff cites to a portion of Judge Bernal's order on DSW's motion to dismiss, where he found that Plaintiff had adequately alleged that reasonable consumers would interpret "Compare At" to mean the identical item was sold at other retailers. Of course, the Court's finding that Plaintiff stated a claim is not the same as finding as a matter of fact that reasonable consumers would be deceived, or that Plaintiff herself was deceived.  Indeed, in denying DSW's motion to dismiss, Judge Bernal stated, "whether Plaintiff relied on DSW's alleged misrepresentation to her detriment or what motivated her desire to purchase the shoes depends on the resolution of factual issues going to the merits of this case."  (Dkt. 38, at 9.)

Although DSW contends that Plaintiff "brought a lifetime of shopping experience with her" when making the purchases at issue, it only requests information from the past several years.  Plaintiff nonetheless contends that the requests are overbroad and unduly burdensome, because "Plaintiff has provided DSW with a lot of information about her 'shopping history,'" and DSW "is free to depose Plaintiff and

1    inquire about such topics at her deposition."[2]

2           Plaintiff cannot close the door on discovery merely because she believes she has
3    produced enough for DSW to defend itself.  As Plaintiff herself admits in footnote 4 to
4    her portion of the Joint Statement, very little of the discovery that Plaintiff has
5    produced relates to her history shopping at other retailers. The only information
6    Plaintiff has actually provided as to other retailers—a list of retailers where Plaintiff
7    holds a loyalty card (only one of which, Banana Republic, is a fashion retailer, and
8    none are shoe retailers)—is but a small subset of the retailers where Plaintiff has
9    actually shopped.  Similarly, the photos of Plaintiff's shoes that Plaintiff has promised,
10   but has not yet produced, will not include information as to where or when Plaintiff
11   bought the shoes, or how much she paid.[3]

12          As DSW explained in its portion of the Joint Statement, courts in similar
13   pricing cases have ordered plaintiffs to produce their credit card information.  *See*
14   *Sperling v. Stein Mart*, Case 5:15-cv-01411-BRO-KK, 2017 U.S. Dist. Lexis 3668
15   at *6-*13 (Jan. 10, 2017); *Chester v. The TJX Companies, Inc.*, EDCV 15-01437-
16   ODW (DTBx), Dkt. 85 (March 6, 2017).  Plaintiff attempts to distinguish these
17   matters, again relying on the fact that her case involves only DSW Exclusive
18   Products.  These decisions should not be so limited.  In *Sperling v. Stein Mart*, for
19   example, the Court ordered the plaintiff to produce loyalty program and credit card
20   information in response to requests nearly identical to those here, because
21   "Plaintiff's shopping habits are relevant to the claims and defenses in this action."
22   "Shopping habits" in this sentence cannot be reasonably read to mean "history
23   shopping at other retailers that carry the same items Plaintiff purchased."

24          **Interrogatory No. 12 (list of retailers where Plaintiff has shopped).**  As

25   ──────────────────────────
26   [2] DSW should not be forced to wait until Plaintiff's deposition to receive this
     information.  DSW specifically requested this information before scheduling
27   Plaintiff's deposition, in order to ask follow-up questions during the deposition.

28   [3] Plaintiff has also agreed to produce any receipts "in her possession" for the shoes.

Sedgwick LLP

1  discussed above, Plaintiff's shopping habits are relevant to Plaintiff's standing to bring

2  this case.  Plaintiff has provided practically no information as to her shopping history

3  outside of DSW.  She claims that this request is disproportionate to the needs of this

4  case, but offers no support for this objection.  Preparing a list of retailers where Plaintiff

5  has shopped would be a straightforward and simple exercise—indeed, most of the

6  retailers are likely listed on Plaintiff's credit card statements. Moreover, Plaintiff has

7  already willingly provided a list of the other retailers where she holds loyalty

8  memberships and photos and receipts of her non-DSW shoes, thereby conceding the

9  relevance of her non-DSW shopping history.   In the face of these productions,

10 Plaintiff's unwillingness to provide a list of retailers where she shops becomes logically

11 indefensible.

12          **Request for Production No. 11 (Credit card statements).**  As discussed above,

13 Plaintiff's shopping history is highly relevant to Plaintiff's case, which depends entirely

14 on her claim to have been deceived by the meaning of "Compare At."  Plaintiff's credit

15 card statements will provide an accurate picture of Plaintiff's shopping habits.

16 Plaintiff's credit card statements are the only way for DSW to gain a reliable

17 understanding of when and where Plaintiff spends money.

18          Privacy concerns cannot prevent their production, as any such concerns would be

19 protected by the robust protective order already in place.  *See A. Farber and Partners,*

20 *Inc. v. Garber,* F.R.D. 186, 188 (C.D. Cal. 2006). The request is also not overbroad, but

21 rather is narrowly tailored to cover Plaintiff's credit card purchases during the class

22 period, which took place in the years immediately before and after the purchases at

23 issue.  Finally, Plaintiff cannot limit her production to statements she finds "in her

24 possession after a reasonably diligent search."  All of Plaintiff's credit card statements

25 are within her control, because Plaintiff is able to obtain them upon demand.  "Parties

26 are not only required to produce items they possess, but those within their control as

27 well." *See Landini v. FIA Card Servs., Nat'l Ass'n,* 2014 WL 587520, at *3 (N.D. Cal.

28 Feb. 14, 2014) (citing Fed.R.Civ.P. 34(a)(1)). "Control is defined as the legal right to

1   obtain documents on demand." *U.S. v. Internat'l Union of Petroleum and Indus.*
2   *Workers,* 870 F.2d 1450, 1452 (9th Cir.1989) (citing *Searock v. Stripling,* 736 F.2d 650,
3   653 (11th Cir.1984)).   Moreover, as above, given Plaintiff's concession that *some*
4   information regarding her non-DSW shopping history is relevant and responsive, she
5   should not be permitted to unilaterally pick and choose which information she provides
6   and which she withholds.

7          **Request for Production No. 13 (Loyalty program terms and conditions).**
8   Similar to Plaintiff's credit card statements, the terms and conditions for
9   loyalty/rewards programs for which Plaintiff is a member, and retailer credit cards that
10  Plaintiff has opened, are relevant to Plaintiff's shopping habits.  Several of the retailers
11  for which Plaintiff has a membership—Albertsons, Banana Republic, Best Buy,
12  BevMo, CVS, Michael's, Office Depot, PetCo, Ralphs, REI, Sephora, Smart & Final,
13  Ulta, and Vons—each offer sales on some of the products they sell.  Several of these
14  retailers—Albertsons, Banana Republic, Best Buy, CVS, Michaels, and possibly
15  others—have been sued for deceptive pricing practices.  DSW is entitled to learn about
16  Plaintiff's relationship with each of these retailers.

17         DSW agrees that Plaintiff need not provide terms and conditions for her
18  memberships with American Airlines, Amtrak, ArcLight Cinemas, Delta, Fairmont
19  Hotel, Hilton, IHG Hotel Group, JetBlue, Southwest, Starwood, United Airlines, or
20  Virgin Atlantic, but contends that membership information for the other retailers is
21  relevant and must be produced.

22  DATED:  August 8, 2017                    SEDGWICK LLP

23

24                                 By:       /s/ Stephanie Sheridan
25                                       STEPHANIE A. SHERIDAN
                                         ANTHONY A. ANSCOMBE
26                                       MEEGAN B. BROOKS
                                         Attorneys for Defendant
27                                       DSW INC.

28