1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**TYCKO & ZAVAREEI LLP**
Annick M. Persinger (State Bar No. 272996)
483 Ninth St., Suite 200
Oakland, CA 94607
Telephone: (510) 254-6808
Facsimile: (510) 210-0571
E-Mail:    apersinger@tzlegal.com

**TYCKO & ZAVAREEI LLP**
Hassan A. Zavareei (State Bar No. 181547)
1828 L Street, N.W., Suite 1000
Washington, D.C. 20036
Telephone: (202) 973-0900
Facsimile: (202) 973-0950
E-Mail:  hzavareei@tzlegal.com

*Counsel for Plaintiff*
*(Additional counsel listed on signature page)*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMY EVANS, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>DSW, INC.,<br><br>Defendant. | Case No. 2:16-cv-03791-JGB-SP<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR DETERMINATION OF WHETHER PLAINTIFF IS A SUCCESSFUL PARTY UNDER A CATALYST THEORY**<br><br>Date:  June 11, 2017<br>Time:  9:00 a.m.<br>Courtroom: 1-Riverside<br><br>Hon. Jesus G. Bernal<br><br>PUBLIC VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL |

# TABLE OF CONTENTS

PAGE(S)

I.     INTRODUCTION ................................................................................................ 1

II.    PLAINTIFF IS A "SUCCESSFUL PARTY" UNDER THE
       CATALYST THEORY ...................................................................................... 6

       A.    The Chronology of Events ................................................................ 6

             1.    *Before Plaintiff Filed Her Lawsuit* .................................... 6

             2.    *DSW's First Motion to Dismiss: DSW's First Bite at
                   Injunctive Relief.* ................................................................... 8

             3.    *DSW's Motion for Judgment on the Pleadings: DSW's Second
                   Bite at Injunctive Relief* ...................................................... 8

             4.    *The Parties' Mediation and DSW's Decision to Change Its
                   Ways Exactly Align.* ............................................................ 10

             5.    *DSW Postponed Responding To Discovery Regarding The
                   Practice Changes Until After It Implemented Those Changes* ..... 10

             6.    *DSW's* ▮▮▮▮▮▮ *Mandated the Change Because of
                   This La* ▮▮▮▮ .......................................................................... 12

             7.    *DSW'S "Variety of Business Reasons" Are Unpersuasive* ......... 16

       B.    The Parallel Between the Remedy Sought and the One DSW
             Provided Is an Additional Factor That Supports an Inference
             That the Litigation Was a Catalyst ............................................... 19

       C.    A Significant Benefit Has Been Conferred on the Public ......... 20

       D.    Plaintiff's Lawsuit Was Not Frivolous ........................................ 22

       E.    Any Pre-Suit Attempt to Settle the Case Would Have Been
             Futile ................................................................................................... 22

       F.    The Necessity and Financial Burden of Private Enforcement
             Makes the Award Appropriate ...................................................... 25

III.   CONCLUSION ................................................................................................. 25

# TABLE OF AUTHORITIES

**PAGE(S)**

**Cases**

*Barber et al. v. DSW Inc.*,
C.D. Cal. Apr. 4, 2016 ........................................................................... 23, 24

*Californians for Responsible Toxics Mgmt. v. Kizer*,
211 Cal.App.3d 961 (1989) ........................................................................ 5

*Cates v Chiang*,
213 Cal. App. 4th 791 (2013) ............................................................... 23, 24

*Colgan v. Leatherman Tool Group, Inc.*,
135 Cal.App.4th 663, 703, 38 Cal.Rptr.3d 36 (Ct.App.2006) ...........................20

*Ebbetts Pass Forest Watch v. California Dep't of Forestry & Fire Prot.*,
187 Cal.App.4th 376 (2010) ........................................................................ 4

*Edwards v. Ford Motor Co.*,
2018 WL 1007372 (9th Cir. Feb. 22, 2018) ...................................... passim

*Folsom v. Butte Cty. Assn't of Governments*,
32 Cal.3d 668 (1982) ................................................................................21

*Graham v. DaimlerChrysler Corp.*,
34 Cal.4th 553 (2004) ......................................................... 4, 6, 19, 22

*Henderson v. J.M. Smucker Co.*,
2013 WL 3146774 (C.D. Cal. June 19, 2013) ...................................... passim

*Hogar v. Cmty. Dev. Com. of City of Escondido*,
157 Cal.App.4th 1358, 69 Cal.Rptr.3d 250 (2007) ........................................ 5

*Keith v. Volpe*,
858 F.2d 467 (9th Cir. 1988) ......................................................................25

*Kumar v. Salov N. Am. Corp.*,
2017 WL 2902898 (N.D. Cal. July 7, 2017) ..................................................25

*Lavie v. Proctor & Gamble Co.*,
105 Cal.App.4th 496, 129 Cal.Rptr.2d 486 (Ct.App.2003) .............................20

*Lyons v. Chinese Hosp. Ass'n*,
136 Cal. App. 4th 1331, 39 Cal. Rptr. 3d 550 (Ct. App. 2006) .......................25

*MacDonald v. Ford Motor Co.*,
142 F.Supp.3d 884 (N.D. Cal. 2015) .................................................. passim

*Maria P. v. Riles*,
43 Cal.3d 1281 (1987) ................................................................................ 4

*Sperling v. DSW Inc.*,
   2016 WL 354319 (C.D. Cal. Jan. 28, 2016) ........................................................23

*Stathakos v. Columbia*,
   2018 WL 582564 (N.D. Cal. Jan. 25, 2018) ................................................. 21, 22

*Tazel v. City of Richmond*,
   2007 WL 172379 (Cal. Ct. App. Jan.24, 2007) ....................................................6

*Westside Cmty. for Independent Living v. Obledo*,
   33 Cal.3d 348, n. 6 (Ct.App.1983) ...............................................................6, 16

**Statutes**

16 C.F.R. § 233.2 ................................................................................... 3, 13, 20

**Regulations**

California's Code of Civil Procedure Section 1021.5 ...........................................4

## I.     INTRODUCTION

Cal. Civ. Code Section 1021.5 provides that a court may award attorneys' fees to a successful party when the action has resulted in the enforcement of an important right affecting the public interest. To be entitled to an award of attorneys' fees under section 1021.5, a plaintiff need not obtain a court-ordered change in the defendant's behavior; it is enough when a plaintiff's action is a substantial factor—or catalyst—in motivating the defendant to voluntarily provide the relief sought.

Here, Plaintiff's lawsuit played just such a role in changing DSW's misleading pricing and advertising to the benefit of DSW customers nationwide. When Plaintiff initiated this lawsuit on May 31, 2016, DSW used false "Compare At" prices on its DSW Exclusive Products, none of which were ever sold at other stores, and none of which were ever sold anywhere at the advertised "Compare At" price. *See* Orig. Compl. ¶ 9, Dkt. No. 1 (herafter "Compl."). Plaintiff alleged that this deceptive pricing scheme led consumers to believe that the "Compare At" price referred to a former price for the same item, and that they were purchasing brand-name shoes at a discount, when they were actually buying products that were sold exclusively at DSW (hereafter "Private Label" brands or products).[1] Plaintiff further alleged that by advertising a "Compare At" price for Private Label products, DSW contravened FTC regulations for advertising former prices. Compl. ¶¶ 23, 25, 32, 86, 87; 16 C.F.R. § 233.3. Based on these allegations, this Court denied DSW's motion to dismiss and noted that that "it is reasonable to infer that most customers would interpret the 'Compare At' price to mean the price charged for the same item—either formerly or at a different store—rather than an estimate price of what a retailer could charge for a hypothetical 'comparable' shoe." Dkt. 38 at 10.

---

[1] ███████████████████████████████████
██████ Roy Dep., Persinger Declaration Exhibit 101, 50:20-52:12; Stevenson Dep., Ex. 102, 32:23-33:12 ███████████████████████████████ Kistner Dep., Ex. 103, 25:19-25, 28:19-22 (same).

MOTION FOR DETERMINATION OF WHETHER PLAINTIFF IS A SUCCESSFUL PARTY UNDER A CATALYST THEORY                                                                                     1
CASE NO. 2:16-cv-03791-JGB-SP

DSW tried and failed twice to defeat Plaintiff's claim for injunctive relief so that it could preserve its deceptive pricing scheme. Having failed to rid themselves of Plaintiff's claim for injunctive relief, ██████████ ████████████████ ██████████████████████████ a change from the phrase "Compare At" to "Comp. Value" throughout DSW.  *See* Ex. 20; Stevenson Dep., Ex. 102, 102:1-23.[2] Unlike "Compare At" which misleadingly connotes a former price, "Comp. Value" communicates that the higher price listed is not a former price for the same item, but rather the price of a comparable item:

 

Taken at a CA DSW Store on 10/24/17     Taken at a CA DSW Store on 1/23/18

Ex. 3; Ex.4. The timeline, the documentary evidence, and the testimonial evidence all establish that this litigation was—at a minimum—a substantial factor in this remedial conduct by DSW, which provided for a significant public benefit.

██████████████████████████ — ████████████████████

██ a year and half after this lawsuit was filed and after Plaintiff's claim for injunctive relief had survived both a motion to dismiss and a motion for judgment on the pleadings—████████████████████████

██████████████████████████████

---

[2] Unless otherwise specified, all Exhibit ("Ex.") cites herein are attached to the Declaration of Annick M. Persinger submitted herewith.

1 ████████████████████████████████████████████████████████

2 ████████████████████████████████ Ex. 20 *compare* Compl. ¶ 21

3 (alleging that the juxtaposition of a "Compare At" price with a lower price conveys to

4 consumers that they are receiving a bargain compared to an outside store).

5 ████████████████████████████████████

6 █████████████████████████ Roy Dep., Ex. 101, 128:9-19; Ex. 7 at 3, 18

7 ███████████████ Ex. 8 ████████████████████████████

8 ████████████████████████ ; Ex. 9 ████████████████████ . DSW

9 suddenly changed its tune after DSW failed two times to eliminate Plaintiff's claim for

10 injunctive relief and failed to reach an agreement to settle this litigation at the parties'

11 mediation. Immediately after the failed mediation DSW decided to remove "Compare

12 At" as Plaintiff sought in her complaint, and ████████████████████ replaced

13 it with "Comp. Value"—the precise terminology that Plaintiff alleged would properly

14 describe the higher reference price on DSW's Private Label products. *See* SAC ¶ 89

15 (citing 16 C.F.R. § 233.2 including "Comparable Value" as a safe harbor term); Roy Dep.,

16 Ex. 101, 190:24-25 █████████████████████████████████████

17 ██ ; *id.* at 136:13-15 (same). ████████████████████████████

18 ███████████████████████████████████████████████ ██

19 ██████████████████████████ Ex. 20 ███████████████████

20 ████████████████████████████████████████████

21 ██████████████████████████████████████████████

22 ████████████████████████ ; Ex. 19; Ex. 17; Stevenson Dep., Ex.

23 102, 58:16-59:3, 90:21-91:3; Kistner Dep., Ex. 103, 71:25-72:17, 73:25-75:14; Roy Dep.,

24 Ex. 101, 139:25-140:4.  Thus, Plaintiff's lawsuit, brought on behalf of California

25 consumers, has affected a change that benefits similarly situated consumers across the

26 nation. ████████████████████████████

27       For these reasons, Plaintiff respectfully requests that the court find that Plaintiff is

28

the successful party under California's Code of Civil Procedure Section 1021.5 such that Plaintiff is entitled to fees. Plaintiff further requests that the Court order Plaintiff to submit a motion for attorneys' fees and costs within thirty days of an order finding that Plaintiff was a substantial factor in DSW's practice change.

## II.   THE LEGAL STANDARD FOR A CATALYST FEE AWARD

California's Code of Civil Procedure section 1021.5 provides an exception to the general rule that each party to a lawsuit bears its own attorneys' fees. *See Graham v. DaimlerChrysler Corp.*, 34 Cal.4th 553, 565 (2004); *MacDonald v. Ford Motor Co.*, 142 F.Supp.3d 884, 890 (N.D. Cal. 2015). Cal. Civ. Code Section 1021.5 provides in pertinent part that a court may award attorneys' fees to a successful party when the action has resulted in the enforcement of an important right affecting the public interest if: (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, and (b) the necessity and financial burden of private enforcement are such as to make the award appropriate. To be entitled to an award of attorneys' fees under section 1021.5, a plaintiff need not obtain a court-ordered change in the defendant's behavior; it is enough when a plaintiff's action motivates the defendant to provide the primary relief sought. *Graham*, 34 Cal.4th at 567 (citations omitted).

Notably, California law takes a "broad, pragmatic view of what constitutes a successful party" within the meaning of section 1021.5. *Graham*, 34 Cal.4th at 565; *MacDonald*, 142 F.Supp.3d 892. To be a successful party, "[a] favorable final judgment is not necessary." *Ebbetts Pass Forest Watch v. California Dep't of Forestry & Fire Prot.*, 187 Cal.App.4th 376, 381 (2010) (citing *Graham*, 34 Cal.4th at 565). "Plaintiffs may be considered successful if they succeed on any significant issue in the litigation that achieves some of the benefit they sought in bringing suit." *Ebbetts Pass Forest Watch*, 187 Cal.App.4th at 382 (citing *Maria P. v. Riles*, 43 Cal.3d 1281, 1292 (1987)). "Significantly here, the relief sought may be obtained from 'a voluntary change in the defendant's conduct.'" *MacDonald*, 142 F.Supp.3d 892 (quoting *Graham*, 34 Cal.4th at 567).

Because it can be difficult to prove causation when a plaintiff seeks to recover under this theory and "action is taken by the defendant after plaintiff's lawsuit is filed," the chronology of events can give rise the inference that the two events are causally related. *MacDonald*, 142 F.Supp.3d at 890; *Californians for Responsible Toxics Mgmt. v. Kizer*, 211 Cal.App.3d 961, 968 (1989) (citation omitted). In other words, "the chronology of events may raise an inference that the litigation was the catalyst for the relief." *Hogar v. Cmty. Dev. Com. of City of Escondido*, 157 Cal.App.4th 1358, 1366, 69 Cal.Rptr.3d 250 (2007). Such an inference then "shifts the burden to defendant to offer rebuttal." *See California for Responsible Toxics Mgmt. v. Kizer,* 211 Cal.App.3d 961, 968, 259 Cal.Rptr. 599 (Ct.App.1989).

Importantly, as the Ninth Circuit recently explained, even if the defendant introduces credible evidence to rebut the chronology of events, the inference from the chronology of events does not evaporate if the plaintiff's story is persuasive:

> In California, the inference from the chronology of events does not evaporate when the defendant introduces relevant and credible evidence to the contrary; rather, the trial court must weigh the evidence and determine on all the evidence, including any inference arising from the chronology, if the plaintiff's story is persuasive.

*Edwards v. Ford Motor Co.*, 2018 WL 1007372, at *1 (9th Cir. Feb. 22, 2018) (citing *Hogar v. Cmty. Dev. Comm'n of City of Escondido*, 157 Cal. App. 4th 1358, 1367 (2008)). In weighing the credibility of the evidence, the Court must also remain "mindful that 'defendants, on the whole, are usually rather reluctant to concede that the litigation prompted them to mend their ways.'" *MacDonald*, 142 F.Supp.3d at 891 (citations omitted).

Additionally, the lawsuit need not be the only cause of Defendant's conduct. *Henderson v. J.M. Smucker Co.,* 2013 WL 3146774, at *4 (C.D. Cal. June 19, 2013) ("To be a catalyst, the lawsuit must have been 'a substantial causal factor' contributing to Defendant's conduct, though the lawsuit need not be the only cause of Defendant's conduct."); *Edwards v. Ford Motor Co.*, 2018 WL 1007372, at *1 (9th Cir. Feb. 22, 2018) ("Although the declaration demonstrated that the NHTSA investigation was one reason

the customer satisfaction program was adopted, under applicable law, a catalyst for fees purposes need not be the only reason for providing a remedy."); *Graham,* 34 Cal.4th at 573; *MacDonald*, 142 F.Supp.3d at 891. Rather, to be a catalyst, the lawsuit need only be a substantial or material factor contributing to Defendant's conduct. *See id.*

Moreover, a lawsuit may even be a sufficient catalyst for purposes of Section 1021.5 if it caused the defendant to act sooner than it otherwise would have. *Henderson,* 2013 WL 3146774, at *4; *Westside Cmty. for Independent Living v. Obledo,* 33 Cal.3d 348, 354 n. 6 (Ct.App.1983); *see also Tazel v. City of Richmond,* 2007 WL 172379, at *12 (Cal. Ct. App. Jan.24, 2007) ("A defendant's voluntary action induced by plaintiff's lawsuit will still support an attorney fee award on the rationale that the lawsuit spurred defendant to act or was a catalyst speeding defendant's response."). The evidence here shows that that Plaintiff's lawsuit was a factor in DSW's practice change.

## II. PLAINTIFF IS A "SUCCESSFUL PARTY" UNDER THE CATALYST THEORY

### A. The Chronology of Events

As detailed below, the chronology of events gives rise to an inference that Plaintiff's case was a factor in DSW's decision to change its reference pricing practices.

#### 1. *Before Plaintiff Filed Her Lawsuit*

Before Plaintiff filed her lawsuit on May 31, 2016, DSW had no intention of changing its "Compare At" reference pricing for Private Label brands ████████████ ████████████████████████████████████. *See, e.g.,* Ex. 7 at 3, 18 (███████████████); Ex. 8 (██████████████████████); Ex. 9 (████████████████████████). ████████████████████████████ ████████████████████████████ ████████████████████████████ ████████ Roy Dep., Ex. 101, 88:15-90:22. ████████████████████



1  ████████████████████████████████████████████████

2  ████████████████████. *Id.* at 94:7-22. ████████████████

3  ████████████████████████████████████████████████

4  ████████████████████████████████████████████████

5  ████████████ Ex. 10 at 32; Roy Dep., Ex. 101, 99:17-100:6. ████████

6  ████████████████████████████████████████████

7  ████████████ Ex. 10; Roy Dep., Ex. 101, 91:10-23.

8  ████████████████████████████████████████████

9  ████████████████████████████████████████████

10 ████████████████████████████████████████████████

11 ████████████████████████████████████████████████

12 ████████████ Ex. 7; Roy Dep., Ex. 101, 59:16-25, 60:10-61:19, 68:13-69:16. ████

13 ████████████████████████████████████████

14 ████████████████████████████████████████████████

15 ████████████████████████████████████████

16 ████████████████████████████ Roy Dep., Ex. 101, 71:18-72:12; Ex. 7 at

17 18. ████████████████████████████████████████████

18 ████████████████████████████████ Ex. 7 at 18; Roy

19 Dep. Ex. 101, 72:13-73:10.  Unsurprisingly, DSW continued using "Compare At"

20 reference pricing ████████████████████. Roy Dep., Ex. 101, 63:19-64:1.

21 ████████████████████████████████████████ *Id.* at 73:3-17. ██

22 ████████████████████████████████████████████

23 ████████████████ *Id.* at 73:14-20.

24 ████████████████████████████████████████████

25 ████████████████████████████████████████████

26 ████████████████████████████████████████████████

27 ████████████████████. Ex. 8; Roy Dep., Ex. 101, 78:9-21. ████████

28



Roy Dep., Ex. 101, 76:8-78:21; 82:3-21; Ex. 8.

Ex. 8.

Roy Dep., Ex. 101, 87:1-88:8. ████ on March 15, 2017, DSW still used "Compare At" reference pricing on its website. *Id.* at 83:7-11.

*Id.* at 82:22-83:11.

### 2.   *DSW's First Motion to Dismiss: DSW's First Bite at Injunctive Relief.*

On May 31, 2016, Plaintiff filed a putative class action against DSW alleging that DSW's "Compare At" pricing was deceptive with respect to DSW's private label brands because it led consumers to believe that those products were at some point offered for the "Compare At" price when, in fact, they were not. Dkt. 1. On August 1, 2016, DSW filed a motion to dismiss. Dkt. 14. DSW specifically attacked Plaintiff's claim for injunctive relief, arguing that Plaintiff lacked standing to seek injunctive relief because she could not be deceived by "Compare At" in the future. Dkt. 14 at 17. On February 2, 2017, this Court disagreed finding that Plaintiff had standing to pursue injunctive relief. Dkt. 38. Still, DSW did not decide to change its practices for several more months. ████

### 3.   *DSW's Motion for Judgment on the Pleadings: DSW's Second Bite at Injunctive Relief*

On July 3, 2017, pursuant to a stipulation by the parties, Plaintiff filed a Second Amended Complaint. Dkt. 55. On July 19, 2017, DSW filed a Motion for Partial

Judgment on the pleadings directed at Plaintiff's equitable remedies—including injunctive relief. Dkt. 58. In its Motion, DSW made its second attempt to convince the Court that Plaintiff and the class members she sought to represent were not entitled to injunctive relief. Specifically, DSW argued that Plaintiff was not entitled to equitable remedies, including injunctive relief, because she also seeks compensatory damages. DSW argued that because Plaintiff seeks damages she had an adequate remedy at law such that she could not pursue injunctive relief. Plaintiff vigorously opposed. Dkt. 63 at 12-20.

Kistner Dep., Ex. 103, 20:13-22:7.

*Id.* at 31:16-32:10, 55:17-23.

*Id.* at 56:12-57:6 ; *id.* at 36:10-19 ). Then, on September 14, 2017, this Court rejected DSW's second attempt to rid itself of injunctive relief, and reiterated its position that Plaintiff has sufficiently pled entitlement to injunctive relief: "Plaintiff has sufficiently demonstrated that injunctive relief may be appropriate to deter DSW from continuing to use its alleged false reference prices on its Exclusive Products." Dkt. 71.

. *See* Ex. 24; Stevenson Dep., Ex. 102, 61:9-18.



Ex. 24.

Kistner Dep., Ex. 103, 71:25-72:17; *id.* at 73:25-74:14.

*Id.* at 63:10-13; Ex. 24.

**4.      *The Parties' Mediation and DSW's Decision to Change Its Ways Exactly Align.***

Following the Court's ruling, the parties scheduled a mediation for November 17, 2017. Roy Dep., Ex. 101, at 133:15-25.  A

Ex. 20.

Ex. 20: *see also* Compl. ¶ 31, 86.

**5.      *DSW Postponed Responding To Discovery Regarding The Practice Changes Until After It Implemented Those Changes***

On November 30, 2017, after the parties' failed November 17, 2018 mediation,

Plaintiff served a single interrogatory that asked DSW to "Explain in detail all practices changes contemplated and/or in progress with respect to Your reference pricing practices, including, but not limited to, proposed or planned changes to the use of Compare At and You Save prices on DSW Exclusive Products. …." Ex. 104.

On January 4, 2018—the day that DSW's response was due—DSW sought a week extension to January 11, 2018 for the time to respond to Plaintiff's single interrogatory. While Plaintiff's counsel usually grants professional courtesies, Plaintiff explained that it was inappropriate to wait until the eve of the due date to make such a request especially given that "[t]he single interrogatory at issue is simple and highly relevant," and since DSW's counsel had been alluding to practice changes that were the subject of the interrogatory since November 2017. Ex. 105. Nonetheless, Plaintiff provided Defendant with an extension to Monday January 8, 2018 on the condition that DSW "provide an actual response as opposed to an objection." *Id.*

On January 8, 2018, DSW responded with boilerplate objections and the following response: "DSW will supplement this response shortly." Ex. 13. Two days later, on January 10, 2018, DSW first instituted the change in California before it instituted it anywhere else— ████████████████ Ex. 11; Roy Dep., Ex. 101, 139:25-140:4 ██ ████████████████████████████████████████████████████████ ; *Id.* at 141:19-142:5.

The change was complete within approximately one week—on January 17, 2018. Ex. 11; *see also* Kistner Dep., Ex. 103, 46:12-16; Ex. 25 (████████████████████ ████████████ ; Roy Dep., Ex. 101, 146:17-21 ████████████████ ████████ . The very next day after the change was complete in California, on January 18, 2018, DSW finally supplemented its response to state that DSW "has changed its Casetalkers and website such that the phrase 'Compare At' has been replaced with the phrase 'Comp. Value' across all product lines and locations." Ex. 14. Only after Plaintiff had prepared a motion to compel DSW to provide additional information, did

DSW provide any. And DSW still failed to delineate a single one of its claimed "variety of business reasons unrelated to the lawsuit" for making the change. Ex. 11.

In sum, DSW was finally motivated to change its practice ████ only after Plaintiff's lawsuit was filed, and DSW had twice failed to eliminate her claims for injunctive relief. *See* Roy Dep., Ex. 101, 128:14-16 ███████████████ ████████████. Only then did DSW change its practices in a purposeful attempt to eliminate the viability of Plaintiff's claims and to thwart Plaintiff's mediation efforts. This chronology easily gives rise to an inference that Plaintiff's lawsuit was a substantial factor in DSW's decision to change its ways.

Courts regularly find that lawsuits catalyze practice changes in similar situations. For instance, in *MacDonald*, the Court found that the defendant's decision to begin investigating a defect raised in the plaintiffs' complaint one month after the Court denied in part defendant's motion to dismiss, and defendant's issuance of a recall on the relevant vehicles five months after that, supported an inference that the lawsuit must have been a substantial causal factor in defendant's practice change. 142 F.Supp.3d at 892. Similarly, in *Henderson*, the Court found that the following chronology strongly supported an inference that plaintiff's suit catalyzed defendant's practice change: "soon after Defendant was served with the lawsuit, its R & D staff began inquiring into the background on a potential reformulation project, and about three to four months later, the project was more officially initiated upon 'upper management recommendation.'" 2013 WL 3146774, at *5. Here to, it is undisputed that began a "new evaluation" in 2017 a year after Plaintiff filed suit. Ex. 11. Thus, as in *MacDonald* and *Henderson*, the weight of the evidence and the chronology of events demonstrates that Plaintiff's case catalyzed DSW's practice change to the benefit of consumers.

    6.    <u>DSW's ██████████████ *Mandated the Change Because* █████████████</u>

Plaintiff need only show that the chronology of events gives rise to an inference

that Plaintiff's lawsuit was a material factor in DSW's practice change. However, the record in this case goes well beyond that showing. ████████████████

████████████████████████████████████

███████████████████████████████

████████████████████████████████ *MacDonald*, 142 F.Supp.3d at 891 (citations omitted).

Importantly, ████ DSW asserted in a sworn interrogatory response that the change was provided for "business reasons" and that Legal only provided "counseling," ████████████████████████████████ *Compare* Ex. 11 *with* █████████████ ████ Ex. 19 ████████████████████████████████ █████████████████████████████████ ████; ███████████████████████ Ex. 17 ████████ ████; Roy Dep., Ex. 101, 192:12-24. ████████████ Ex. 20 ██████████████████████████ ███████████████████████████████ ████████████████████████████████ ████ (emphasis added). ██████████████████████

this lawsuit influenced DSW's decision to change misleading "Compare At" language to the FTC safe harbor term, "Comp. Value." *See* SAC ¶ 89 (citing 16 C.F.R. § 233.2). In that regard, despite four prep meetings, and numerous privilege objections, ████ ████████████████████████████████ ████████████████████████████████ ████ Stevenson Dep., Ex. 102, 35:14-25; *see also id.* 19:5-9 (prep); *id.* 21:25-26:21 (privilege objections). ████████████████████



1 ████████████████████████████████████████████████████████

2 ████████████████████████████

3   Q:   ████████████████████████████████████

4   A:   ██████████████████████████████████████

5         ██████████

6 *See* Stevenson Dep., Ex. 102, 58:16-22; *see also id.* at 58:23-59:3 █████████████████

7 ████████████████████████████████████████████████████████

8 █████████████████████; *Id.* at 90:21-91:3 ████████████████████

9 ████████████████████████████████████████████████████████

10 ████████████████████████████████████.

11         Like Ms. Stevenson, Mr. Ed Kistner, was prepared for his deposition for several

12 hours over a series of in-person and phone meetings. Kistner Dep., Ex. 103, 11:18-20;

13 16:17-20:2. ████████████████████████████████████████████

14 ████████████████████████████████████████████████████████

15 ████████████████████████████████████████████████████████

16 ████████████████████████████ Kistner Dep., Ex. 103, 31:16-

17 32:10; Ex. 24. ██████████████████████████████

18 ████████████████████████████████████████████████████████

19 ████████████████████████████████ Ex. 24. ██████████

20 ████████████████████████████████████████████████████

21 ██████████████████████████████████████████

22 ████████████████████████████████████████████████████████

23 ████████████████████████████████ Kistner Dep., Ex. 103,

24 71:25-72:17; *id.* at 73:25-74:14. ████████████████████████

25 ████████████████████████████████████████████████████

26 ██████████████████████████. Thus, especially given that in weighing the

27 credibility of the evidence, the Court must also remain "mindful that 'defendants, on the

28

whole, are usually rather reluctant to concede that the litigation prompted them to mend their ways,'" ███████████████████████████████████████████

███████████████████████████████████████████ Plaintiff's lawsuit was a material factor in motivating DSW's practice change. *MacDonald*, 142 F.Supp.3d at 891 (citations omitted); Stevenson Dep., Ex. 102, 58:16-22, 58:23-59:3, 90:21-91:3.

DSW's Vice President of Customer Relationship Management, and Rule 30(b)(6) witness, Julie Roy, like most defendants, was more "reluctant to concede that the litigation prompted them to mend their ways." *MacDonald*, 142 F.Supp.3d at 891. ██

███████████████████████████████████████████

███████████████████████ Roy Dep., Ex. 101, 138:24-139:7 ████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

██████ Ex. 18 █████████████████████████████

███████████████████████████████████████████

████████; *see also* Roy Dep., Ex. 101, 201:5-205:9 ███████

███████████████████████████████████████████

███████████████████████████████████████████

██████. █████████████████████████████████████

███████████████████████████████████████ Roy Dep., Ex. 101, 190:24-191:3 ██████████████████████████████; *Id.* 136:13-15 (same).

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████ Roy Dep., Ex. 101, 139:25-140:4. ██

███████████████████████████████████████████████████

████████████████████████████████████ Plaintiff's lawsuit prompted DSW to prioritize changing the advertising of Private Label brands in California. *See Henderson*, 2013 WL 3146774 at \*5 ("Evidence of a general goal to reduce or eliminate trans fat, however, does not rebut Plaintiff's assertion that her lawsuit prompted Defendant to prioritize the reformulation of Uncrustables in particular."); *Westside Cmty.*, 33 Cal.3d 348, 354 n. 6 (suggesting that had the suit "accelerate[d] the process of issuing the final regulations" from the agency's "original timetable," the plaintiff would have been able to sufficiently demonstrate the causal connection between the suit and the defendant's conduct). Accordingly, the evidence in this case goes far beyond a mere showing that the chronology of events should give rise to an inference that Plaintiff's lawsuit catalyzed Defendant's practice change—the documentary and testimonial evidence buttress that inference. Especially when considered together, the chronology of events ████████

███████████████████████████████████████████████████████

██████████████ weigh heavily in favor of a finding that "plaintiff's story is persuasive." *Edwards*, 2018 WL 1007372, at \*1.

### 7. DSW'S "Variety of Business Reasons" Are Unpersuasive

In its response to Plaintiff's interrogatory, DSW claimed that it changed its practice for a "variety of business reasons not related to this lawsuit." Ex. 11 (verified under penalty of perjury by Julie Roy). None of those business reasons are delineated in its response to Plaintiff's interrogatory. *Id.* Thus, Defendant, who is in the best position to show why it changed when it did, offers little contemporaneous evidence to show that it had a plan to change its advertising independent of Plaintiff's lawsuit. *See Henderson*, 2013 WL 3146774 at \*5 (finding that a general corporate goal to make a change did not negate a catalyst inference based on the chronology of events where "Defendant, who is in the best position to show why it reformulated Uncrustables when

it did, offers little contemporaneous evidence to show that it had a plan to reformulate

Uncrustables independent of Plaintiff's lawsuit."). ████████████████████████

████████████████████████████████████████████████████

████████████████████████ Ex. 17; Roy Dep., Ex. 101, 192:12-24; Ex.

19; Roy Dep. Ex., 101, 210:10-211:10, 213:8-12.

 The reasons that DSW's 30(b)(6) witness, Ms. Roy, attempted to enumerate at her

deposition remained extremely vague. ████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

████████████████████████████████████████████████

█████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████ Roy Dep., Ex. 101,

152:10-19; *id.* 153:24-25 ██████████████████████████████████.

 First, DSW clings to Ms. Love's arrival in May 2017 to point to a reason other

than this lawsuit that DSW changed its advertising after 20 years only recently after no

testing. Ex. 11 ("In approximately May, 2017, at the direction of new Chief Operating

Officer, Michele Love, DSW began a new evaluation of this issue, specifically with

respect to private label products."). ███████████████████████████

████████████████████████████████████████████████

█████████████████████████████████████████████████████████

████████████. Roy Dep., Ex. 101, at 120:22-125:22. But Ms. Love's May 2017 arrival does

not help DSW much because the decision to make a change was not made for another 7

months—████████ after the parties' unsuccessful mediation. ████████████████

████████████████████████████████████████████████

█████████████████████████████████████████████████

Stevenson Dep., Ex. 102, 50:16-51:15. █████████████████████████████

███████████████████████████████████████████████████

██████████████████████████████████ Further, the fact that DSW did not have

"any specific plan or timetable"—before Ms. Love joined, or in the seven months

afterward—to change its advertising casts doubt on DSW's argument.

*Henderson*, 2013 WL 3146774 at *5.

Even if Ms. Love's arrival affected a longstanding corporate discussion about

comparative pricing, that does not negate the inference that Plaintiff's lawsuit factored

into DSW's decision to make a change.[3] *Edwards*, 2018 WL 1007372, at *1 ("the inference

from the chronology of events does not evaporate when the defendant introduces …

evidence to the contrary"). Courts have found, under similar circumstances, that the

existence of a general corporate goal to accomplish something does not negate the

inference that plaintiff's lawsuit served as a catalyst, especially when a company prioritizes

changing the particular products mentioned in the lawsuit. For instance, in the *Henderson*

case, the defendant argued that the suit was not a catalyst because the defendant was

already in the process of making the requested changes to its food products before the

lawsuit. *Henderson*, 2013 WL 3146774 at *5. But the defendant's "general goal to reduce or

eliminate trans fat ... [did] not rebut [plaintiff's] assertion that her lawsuit prompted [the

defendant] to prioritize the reformulation of [the product at issue] in particular." *Id.* The

fact that the defendant did not have "any specific plan or timetable to remove trans fat"

also cast doubt on the defendant's argument. *Id.*  Here, as in *Henderson*, Defendant sought

to prioritize rolling out its practice change for the specific set of products Plaintiff's

---

[3] Conven ███████████████████████████████████████ ision

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

██████oy Dep., Ex. 101, 126:13-19; *id.* 136:3-12. In the absence of that evidence the
court must follow the inferences of the chronology and the other evidence while taking
into account that defendants in general are not inclined to reveal when they make
changes as a result of a lawsuit. *MacDonald*, 142 F.Supp.3d at 891.

1  lawsuit was concerned with, namely, Private Label products in California stores, █████

2  █████████████████████████████████████████ Kistner Dep., Ex. 103,

3  63:10-13; *see also* Roy Dep., Ex. 101, 139:25-140:4 ████████████████████████

4  ████████████████████████████████████████████████████████

5  ██████████████████.

6       Moreover, it is well established that Plaintiff's lawsuit need not be the only cause

7  of DSW's change in practice for the Court to find that her lawsuit was a catalyst.

8  *Henderson,* 2013 WL 3146774, at *4; *Edwards,* 2018 WL 1007372, at *1; *Graham,* 34 Cal.4th

9  at 573; *MacDonald,* 142 F.Supp.3d at 891. Thus, even if Ms. Love's hiring was a factor in

10  the removal of "Compare At" and ████ replacement of the term with "Comp. Value"

11  that does not mean that Plaintiff's lawsuit was not also a factor. Therefore, based on the

12  chronology of events, ████████████████████████████████████████████

13  ████████████████████████████████████████████████████████

14  ████, the Court can easily find that, at the very least, Plaintiff's lawsuit was one of the

15  material factors in DSW's recent practice change. *See* Stevenson Dep., Ex. 102, 58:16-22.

16       Finally, DSW's claim that the consumer environment has shifted and that

17  reference pricing does not convey value is not convincing given that they still use

18  reference pricing—they just changed the phrasing to be FTC compliant and non-

19  misleading. Roy Dep., Ex. 101, 106:12-15. ███████████████████████████████

20  ████████████████████████████████████████████ *Id.* at 107:3-7.

21  Accordingly, DSW's "variety of business reasons" do not disturb the conclusion that

22  Plaintiff's suit was at least one substantial causal factor contributing factor in DSW's

23  replacement of the term "Compare At" with "Comp. Value." *See e.g.,*

24  *Henderson,* 2013 WL 3146774 at *5.

25       **B.    The Parallel Between the Remedy Sought and the One**
            **DSW Provided Is an Additional Factor That Supports an**
26          **Inference That the Litigation Was a Catalyst**

27       The fact that DSW's ████████████ changed its language from "Compare At"

28  ─────────────────────────────────────────────────────────

to "Comp. Value"— the precise change Plaintiff sought to bring about through her lawsuit—further shows that Plaintiff's lawsuit was a substantial factor in DSW's decision to change its practice of 20 years. In her complaint, Plaintiff specifically explained that FTC identify language such as "Comparable Value" as being a safe harbor for retailers because they do not create the misleading impression that the higher price is a former price of an identical item.  *See* SAC ¶ 89 (citing 16 C.F.R. § 233.2) (stating that "Such advertising can serve a useful and legitimate purpose when it is made clear to the consumer that a comparison is being made with other merchandise," and giving the example of a retailer that advertises "Brand X pen as having 'Comparable Value $15.00'" when a similar pen is offered for that price by other outlets in the area).

Courts have found that the degree of equivalence between the remedy sought and the remedy ultimately provided is relevant to the determination of whether a lawsuit contributed substantially to a defendant's conduct. *See Edwards*, 2018 WL 1007372 at *1 (listing "the parallel between the remedies Edwards requested and those [Ford] eventually provided" as a factor in addition to the chronology that weighed in favor of a finding that the lawsuit was a factor in Ford's decision to institute the customer satisfaction program). In this case, the practice change implemented by DSW is the exact change Plaintiff identified in her complaint as being necessary in order for DSW to avoid deceiving costumers and running afoul of the FTC's clear guidance regarding comparative pricing. This provides yet more support in favor of an inference that Plaintiff's lawsuit was a substantial causal factor in bringing about DSW's recent practice change.

## C.    A Significant Benefit Has Been Conferred on the Public

The "enforcement of the California consumer protection laws" qualifies as "an important right affecting the public interest." *Colgan v. Leatherman Tool Group, Inc.,* 135 Cal.App.4th 663, 703, 38 Cal.Rptr.3d 36 (Ct.App.2006) (citing *Lavie v. Proctor & Gamble Co.,* 105 Cal.App.4th 496, 503, 129 Cal.Rptr.2d 486 (Ct.App.2003) (noting that the evaluation of whether an advertisement is deceptive under the Unfair Competition Law

"has important public policy implications for California consumers and businesses"). Courts must "realistically assess the litigation and determine, from a practical perspective, whether or not the action served to vindicate an important right." *Folsom v. Butte Cty. Assn't of Governments,* 32 Cal.3d 668, 685, (1982).

Here, Plaintiff's suit primarily alleges that DSW's use of "Compare At" in relation to Private Brand products violated California consumer protection law, and contravened FTC regulations because it inappropriately suggested that the higher price on the label was a former price of the Private Brand product—when it was not. Defendant could have remedied the alleged the violation in one of two ways (1) complete removal of reference pricing, or (2) use of FTC sanctioned phrasing that makes clear that the higher reference price could be the price of a comparable but not identical item. As discussed at length above, the evidence shows that Plaintiff's suit was at least a substantial causal factor that promoted Defendant to change to replace the phrase "Compare At" with "Comp. Value"—an FTC sanctioned phrase. Accordingly, from a practical perspective, Plaintiff has enforced California consumer protection laws. *See e.g., Henderson, Co.,* 2013 WL 3146774, at *10; *MacDonald,*142 F.Supp.3d at 895.

Plaintiff also easily meets the requirement that the benefit be conferred on the general public or a large class of persons. Indeed, DSW has sold and continues to sell hundreds of Private Brand products in California alone. *See e.g.,* Ex. 106 ███████████ ████████████████████████████████. Following DSW's practice change, consumers shopping at DSW's in California and nationwide will no longer be deceived. *See* Stevenson Dep., Ex. 102, 102:7-102:23. Instead, because DSW changed its practices to address the violations raised by Plaintiff's lawsuit, consumers in California and nationwide will understand that DSW's reference pricing refers to items of comparable value, rather than to a former price. *See id.*; *Stathakos v. Columbia,* 2018 WL 582564, at *2, *4 (N.D. Cal. Jan. 25, 2018) (finding that a settlement that changed Columbia's reference pricing practices to communicate that the higher price on outlet-

only products was the price of a similar, rather than the same item, conferred a benefit on the class); *Stathakos v. Columbia*, Case No. 15-cv-04543-YRG, Slip. Op. at 6 (N.D. Cal. Apr. 9, 2018) (awarding fees over Columbia's objection and stating that the "Court finds that plaintiffs' counsel obtained meaningful relief for the class. Specifically, the Settlement requires Columbia to change its labeling and marketing practices across outlet stores in California to clarify to consumers that the reference price on Outlet item tags may not refer to the to the same product offered" elsewhere); *Id.* at 7 (including restrictions on the use of the "Compare At" as an additional material benefit to the class achieved by plaintiff's counsel during negotiations).

### D.    Plaintiff's Lawsuit Was Not Frivolous

Under the catalyst theory, a lawsuit has merit if it is not "frivolous, unreasonable, or groundless…." *Graham*, 34 Cal. 4th at 575. This requirement is "designed to screen out nuisance suits." *Henderson*, 2013 WL 3146774, at *9. Plaintiff's lawsuit had merit. Plaintiff alleged that injunctive relief would prevent future harm to consumers who could not rely on DSW "Compare At" with any confidence. Plaintiff's claims for injunctive relief then survived both a motion to dismiss, and a motion for judgment on the pleadings. After its second attempt to get rid of injunctive relief failed, DSW changed its practices. Now that DSW has changed its practice, consumers will know that the reference price could refer to a similar, but not identical item. In doing so, DSW now complies with FTC regulations and California consumer protection law, thereby eliminating the future harm that Plaintiff sought to remedy. *See e.g. MacDonald*,142 F.Supp.3d at 894. Accordingly, at the very least, Plaintiff has established "the precise factual/legal condition that [she] sought to change or affect as a prerequisite for establishing the catalytic effect of her lawsuit." *See e.g.*, *Henderson, Co.*, 2013 WL 3146774, at *9. Plaintiff's suit was clearly no nuisance. *See id.*

### E.    Any Pre-Suit Attempt to Settle the Case Would Have Been Futile

Under a catalyst theory, the requirement that a plaintiff attempt to settle the matter

short of litigation "may be excused where such attempts would have been futile."
*MacDonald*, 2015 WL 6745408, at *6 (following *Cates v Chiang*, 213 Cal. App. 4th 791, 815
(2013)); *see also Henderson v. J.M. Smucker, Co.*, 2013 WL 3146774, at *10 (C.D Cal. June 19,
2013) (citing *Cates v Chiang*, 213 Cal. App. 4th at 815). Because the rule was "judicially
created … to promote the purposes of section 1021.5 and deter attorneys from filing
meritless suits merely to obtain attorney's fees, it should not be applied to bar an attorney
fees recovery where to do so would defeat the core purpose of the statute." *Cates*, 213
Cal. App. 4th at 816.  It should not be invoked "blindly without any consideration of
whether the [settlement attempt] would have made any difference in the need for the
lawsuit and whether the plaintiff's motivations were directed toward seeking the relief
demanded, as opposed to the recovery of attorney fees." *Id.*

After Plaintiff filed her lawsuit, DSW "denied that it had any responsibility to do
anything different with respect to" it's reference pricing practices. *Cates*, 213 Cal. App.
4th at 816 ("As the trial court found, after Cates filed her lawsuit, the Commission denied
that it had any responsibility to do anything different with respect to the Indian tribes'
gambling income."); *See e.g.*, MTD, Dkt. 14 (arguing that "reasonable consumers would
not be deceived by DSW's 'Compare At' pricing"); Answer, Dkt. No. 41, at ¶ (denying
that DSW's "Compare At" pricing was "deceptive in any way.").

Further, DSW had "taken no action" to change its practices in response to earlier
lawsuits that alleged its reference pricing practices were deceptive. *Cates*, 213 Cal. App.
4th at 816 ("Cates's employer, which had the duty to enforce gambling laws, had
apparently taken no action in response to Cates's workplace complaints."); *see e.g.*, *Sperling
v. DSW Inc.*, 2016 WL 354319 (C.D. Cal. Jan. 28, 2016) (alleging that DSW's "Compare
at" pricing was deceptive); *Barber et al. v. DSW Inc.*, Order Granting MTD with Leave to
Amend, Case No. 15-cv-02024-JGB-SP (C.D. Cal. Apr. 4, 2016) (alleging the "Compare
At" pricing on exclusive products was deceptive). Efforts were also made in the context
of the earlier litigation to settle the case with an injunctive relief component, but DSW

made clear that it would not consider settlement before a plaintiff successfully survived a motion to dismiss. *See generally* Edelsberg Decl.; *see id.* at Ex. A (CLRA letter seeking injunctive relief in earlier suit). Thus, DSW had the opportunity to address the harm, but it chose not to do so. Indeed, they were not inclined to make a change ███████████ ████████████████████████████. Roy Dep., Ex. 101, 128:9-19

Additionally, "[P]laintiff's motivations were clearly directed at the relief demanded, as opposed to the recovery of attorney fees." *Cates*, 213 Cal. App. 4th at 816. Plaintiff's counsel vigorously and successfully defended Plaintiff's standing to seek injunctive relief in response to DSW's motion to dismiss, as well as DSW's motion for judgment on the pleadings directed at those claims. *See* Opposition to Motion to Dismiss, Dkt. 17, at pp. 6-11; Opposition to Motion for Judgment on the Pleadings, Dkt. 63, at pp. 12-20. And at the parties' 2017 mediation, Plaintiff's counsel made clear that any deal would have to include a practice change component. Persinger Decl. ¶ 23. There is also no evidence that Plaintiff was motivated by the recovery of attorney's fees in filing Plaintiff's suit.

Based on this history, there is a reasonable basis to conclude that an earlier attempt to settle "would have been futile" and a "waste of time." *See Cates*, 213 Cal. App. 4th at 816. The essence of Plaintiff's action was to successfully change DSW's "Compare At" pricing practices that did not comply with FTC regulations or California consumer protection laws. "Under these particular circumstances, it would be contrary to the language of section 1021.5 and the underlying legislative intent to bar [Evans] from recovery based solely on her failure to provide a timely prelitigation demand letter." *See id.* "As the California Supreme Court has stated in another context: Generally a demand is not a prerequisite where it would be futile or an idle gesture." *Id.* (citations omitted). "The law does not require useless acts from litigants as prerequisites to seeking relief from the courts." *Id.* (citations omitted). The Court should exercise it's "broad discretion" and find that this has been satisfied. *Id.*

### F.     The Necessity and Financial Burden of Private Enforcement Makes the Award Appropriate

"[T]he necessity and financial burden requirement really examines two issues: whether private enforcement was necessary and whether the financial burden of private enforcement warrants subsidizing the successful party's attorneys." *Henderson, Co.*, 2013 WL 3146774, at *12. Here, the "necessity of private enforcement" prong is easily satisfied because no government agency has sought to enforce California's consumer protection law that specifically prohibits DSW from suggesting that the higher price on a price was a "former" price of a product when it was not. *See Henderson, Co.*, 2013 WL 3146774, at *12 (absence of any showing of parallel government action demonstrates that private enforcement was necessary); *Kumar v. Salov N. Am. Corp.*, 2017 WL 2902898, at *8 (N.D. Cal. July 7, 2017) ("[F]alse advertising laws depend on private enforcement"); *Keith v. Volpe*, 858 F.2d 467, 486 (9th Cir. 1988).

Plaintiff also satisfies the financial element burden, which considers "whether the financial burden placed on the party is out of proportion to its personal stake in the lawsuit." *Lyons v. Chinese Hosp. Ass'n*, 136 Cal. App. 4th 1331, 1352, 39 Cal. Rptr. 3d 550 (Ct. App. 2006). This requirement compares "the estimated value of the plaintiff's individual stake in the action . . . and the cost of the litigation." *Id.* at 1354. Here, Plaintiff's only financial inventive was the potential entitlement to a small incentive award, and a pro rata distribution of a class-wide settlement. On the other hand, Plaintiff's counsel has spent thousands of dollars in out-of-pocket costs, and hundreds of currently uncompensated hours prosecuting this litigation.  *See Edwards v. Ford Motor Co.*, 2016 WL 1665793, at *8 (S.D. Cal. Jan. 22, 2016).

## III.  CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court find that Plaintiff is a successful party under Section 1021.5 and set a deadline for Plaintiff to submit a motion for attorneys' fees and costs. *MacDonald*, 142 F.Supp.3d at 898 (granting catalyst motion and ordering submission of motion for attorney's fees within thirty days).

Dated: April 10, 2018

Respectfully submitted,

By: _____ /s/ Annick M. Persinger _____
        Annick M. Persinger

**TYCKO & ZAVAREEI LLP**
Annick M. Persinger (State Bar No. 272996)
483 Ninth St., Suite 200
Oakland, CA  94607
Telephone: (510) 254-6808
Facsimile: (510) 210-0571
Email:  apersinger@tzlegal.com

**TYCKO & ZAVAREEI LLP**
Hassan A. Zavareei (State Bar No. 181547)
1828 L Street, N.W., Suite 1000
Washington, D.C. 20036
Telephone: (202) 973-0900
Facsimile: (202) 973-0950
E-Mail:  hzavareei@tzlegal.com

**KOPELOWITZ OSTROW FERGUSON WEISELBERG GILBERT**
Jeffrey M. Ostrow
ostrow@kolawyers.com
Scott Edelsberg (*pro hac vice*)
edelsberg@kolawyers.com
One West Las Olas Blvd., Ste. 500
Fort Lauderdale, FL 33301
Telephone: (954) 525-4100
Facsimile: (954) 525-4300

*Counsel for Plaintiff*

MOTION FOR DETERMINATION OF WHETHER PLAINTIFF IS A SUCCESSFUL PARTY UNDER A CATALYST THEORY
CASE NO. 2:16-cv-03791-JGB-SP

1