STEPTOE & JOHNSON LLP
STEPHANIE SHERIDAN, State Bar No. 135910
ssheridan@steptoe.com
ANTHONY ANSCOMBE, State Bar No. 135883
aanscombe@steptoe.com
MEEGAN B. BROOKS, State Bar No. 298570
mbrooks@steptoe.com
1 Market Street, Steuart Tower, Suite 1800
San Francisco, CA 94105
Telephone: 415.365.6700
Facsimile: 415.365.6699

Attorneys for Defendant
DSW INC.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMY EVANS, individually on behalf of all others similarly situated<br><br>Plaintiff,<br><br>vs.<br><br>DSW INC., an Ohio corporation, and DOES 1 through 100 inclusive,<br><br>Defendant. | CASE NO. 2:16-cv-03791-JGB-SP<br><br>**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR DETERMINATION OF WHETHER PLAINTIFF IS A SUCCESSFUL PARTY UNDER A CATALYST THEORY**<br><br>Judge: Jesus G. Bernal<br>Date: June 11, 2018<br>Time: 9:00 a.m.<br>Ctrm: 1 - Riverside |

REDACTED VERSION OF DOCUMENT
PROPOSED TO BE FILED UNDER SEAL

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION AND SUMMARY OF ARGUMENT ..............................1

II.  BACKGROUND ...............................................................................................2

    A.  DSW ...................................................................................................2

    B.  Plaintiff's Claims ...............................................................................3

    C.  History of this Litigation ....................................................................3

    D.  DSW's Change Does Not Impact DSW Consumers ...........................6

    E.  Timeline of DSW's Change to "Comp. Value" ..................................8

III.  REQUIREMENTS UNDER CALIFORNIA CIV. CODE §1021.5 ...............10

IV.  PLAINTIFF FAILS TO MEET HER BURDEN TO ESTABLISH ALL
    THE PREREQUISITES TO AN AWARD OF CATALYST FEES ..............11

    A.  DSW's Change Was Not "the Primary Relief Sought" By This
        Litigation ..........................................................................................12

    B.  Plaintiff Had a Financial Incentive—Not a Financial Burden—to
        Bring this Case ..................................................................................14

    C.  Plaintiff Failed to Engage in Any Pre-Suit Settlement
        Discussions ........................................................................................16

    D.  The Lawsuit Did Not Enforce an Important Right or Confer a
        Significant Benefit ............................................................................18

    E.  Plaintiff's Lawsuit Has No Merit......................................................20

    F.  This Case Did Not Motivate DSW to Change Its Prices ...................20

V.  CONCLUSION ...............................................................................................22

**[REDACTED] DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR DETERMINATION OF
WHETHER PLAINTIFF IS A SUCCESSFUL PARTY UNDER A CATALYST THEORY**

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Balch Enterprises, Inc. v. New Haven Unified School Dist.*,
219 Cal. App. 3d 783 (1990) ................................................................ 19

*Barber v. DSW*,
No. 8:15-cv-02024-JGB-SP (C.D. Cal. 2016) ............................... 3, 4, 17

*Baxter v. Salutary Sportsclubs, Inc.*,
122 Cal. App. 4th 941, 19 Cal. Rptr. 3d 317 (2004) ..................... 18, 19

*Beach Colony II v. Cal. Coastal Comm'n*,
166 Cal. App. 3d 106, 114 (1985) ........................................................ 14

*Bui v. Nguyen*,
230 Cal. App. 4th 1357 (2014) ............................................................ 11

*California Pub. Records Research, Inc. v. Cty. of Yolo*,
4 Cal. App. 5th 150, 192 (Cal. Ct. App. 2016) .............................. 12, 14

*Californians for Responsible Toxics Mgmt. v. Kizer*,
211 Cal. App. 3d 961, 259 Cal.Rptr. 599 (1989) ............................... 20

*Carian v. Dep't of Fish & Wildlife*,
235 Cal. App. 4th 806 (2015) ........................................................ 16, 17

*Cates v. Chiang*,
213 Cal. App. 4th 791 (2013) .............................................................. 16

*Chen v. Allstate Ins. Co.*,
819 F.3d 1136 (9th Cir. 2016) ............................................................. 15

*Children & Families Comm'n of Fresno Cty. v. Brown*,
228 Cal. App. 4th 45 (2014) .......................................................... 14, 15

*Chowning v. Kohl's Dep't Stores, Inc.*,
2016 WL 1072129 (C.D. Cal. Mar. 15, 2016) .................................. 4, 5

*Davis v. Farmers Ins. Exch.*,
245 Cal. App. 4th 1302 (2016) ...................................................... 14, 15

**[REDACTED] DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR DETERMINATION OF WHETHER PLAINTIFF IS A SUCCESSFUL PARTY UNDER A CATALYST THEORY**

*Deposit Guar. Nat. Bank, Jackson, Miss. v. Roper*,
 445 U.S. 326, 339 (1980) ................................................................. 16

*Ebbetts Pass Forest Watch v. California Dept. of Forestry & Fire
 Protection*,
 187 Cal. App. 4th 376, 381 (2010) ................................................. 11

*Equine Legal Sols., Inc. v. Buntrock*,
 No. C 07-04976 CRB, 2008 WL 111237 (N.D. Cal. Jan. 9, 2008) ................... 19

*Flannery v. California Highway Patrol*,
 61 Cal. App. 4th 629, 635, 71, Cal. Rptr. 2d 632 (1998) ..................... 18

*Graham v. DaimlerChrysler Corp.*,
 34 Cal. 4th 553 (2004) ................................................... 16, 20

*Jacobo v. Ross Stores, Inc.*,
 CV-15-04701, 2017 WL 3382053 (C.D. Cal. Aug. 2, 2017) .......................... 4

*McGuigan v. City of San Diego*,
 183 Cal. App. 4th 610, 623, 107 Cal. Rptr. 3d 554 (2010) ................... 12

*Marbley v. Bane*,
 57 F.3d 224, 234–235 (2nd Cir. 1995) ...................................... 20

*Marine Forests Soc'y v. Cal. Coastal Comm'n*,
 160 Cal. App. 4th 867 (2008) ........................................... 12, 13

*Millview Cty. Water Dist. v. State Water Res. Control Bd.*,
 4 Cal. App. 5th 759, 768-69 (2016) ....................................... 14

*NEI Contracting & Eng'g, Inc. v. Hanson Aggregates, Inc.*,
 No. 12-CV-01685-BAS(JLB), 2017 WL 2363163
 (S.D. Cal. May 31, 2017) ............................................ 12, 13, 15, 16

*Pipefitters Local No. 636 Defined Benefit Plan v. Oakley, Inc.*,
 180 Cal. App. 4th 1542, 104 Cal. Rptr. 3d 78 (2010) ....................... 19

*Press v. Lucky Stores, Inc.*,
 34 Cal. 3d 311 (1983) ..................................................... 14

*Roybal v. Governing Bd. of Salinas City Elementary School Dist.*,
 159 Cal. App. 4th 1143 (2008) ............................................. 14

**[REDACTED] DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR DETERMINATION OF
WHETHER PLAINTIFF IS A SUCCESSFUL PARTY UNDER A CATALYST THEORY**

*Satrap v. PG&E,*
   42 Cal. App. 4th 72 (1996) ................................................................... 14

*Sperling v. DSW Inc.,*
   2015 WL 13309476 (C.D. Cal. Nov. 19, 2015) ..................................... 17

*Sperling v. DSW Inc.,* 699 F. App'x 654 (9th Cir. 2017) .......................................... 18

*Sperling v. Stein Mart, Inc.,*
   291 F. Supp. 3d 1076 (C.D. Cal. 2018) .......................................... 4, 17

*Stathakos v. Columbia Sportswear Co.,*
   2017 WL 1957063 (N.D. Cal. May 11, 2017) ................................... 4, 5

*Summit Media LLC v. City of Los Angeles,*
   240 Cal. App. 4th 171 (2015) ......................................................... 14, 15

*In re Taco Bell Wage & Hour Actions,*
   222 F. Supp. 3d 813 (E.D. Cal. 2016) ................................................. 15

*Tipton-Whittingham v. City of Los Angeles,*
   34 Cal. 4th 604 (2004) ......................................................................... 11

**Statutes**

Cal. Civ. Code § 1021.5 ..............................................................*passim*

.Cal. Bus. & Prof. Code § 17500 ...................................................... 3

Cal. Civ. Code § 1750 ..................................................................... 3

Cal. Bus. & Prof. Code § 17200 ...................................................... 3

**Other Authorities**

16 C.F.R. § 233.2(c) ...................................................................... 10

## I.      INTRODUCTION AND SUMMARY OF ARGUMENT

This case is, and always has been, about money. After other trial courts have repeatedly rejected any award of damages or restitution in the so-called "false reference pricing" litigation, Plaintiff's counsel are heading for the exits. Attempting to mitigate their losses, they now seek catalyst attorney's fees for unexceptional business changes made by DSW. Specifically, Plaintiff's counsel claim that they achieved the goals of this litigation when, in January 2018, DSW changed the phraseology of the reference prices on its in-store displays from "Compare At" to "Comp. Value." In other words, the full sum of their purported accomplishment is: DSW changed from one term, which several courts have not found deceptive, to another term, which other courts and the Federal Trade Commission have likewise found not deceptive, and that at least one study has suggested consumers interpret interchangeably.

The Parties dispute whether this litigation had any role in causing DSW's change. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Plaintiff's counsel argue that this case caused the change. Ultimately, the Court need not resolve this factual dispute, because Plaintiff clearly cannot meet several important pre-requisites set forth in C.C.P. §1021.5 for an award of fees under a "catalyst" theory.

Plaintiff brought this action to recover money—the SAC seeks millions of dollars in restitution, profit disgorgement, a full refund of purchase price, and punitive damages. The unavailability of a monetary award is the sole reason Plaintiff's counsel are ready to call it quits. At no time before instituting this action, however, did Plaintiff's counsel make *any* effort to resolve the dispute in exchange for the simple business change that DSW  made on its own. And DSW's change in 2018 from "Compare At" to "Comp. Value" did not confer "a significant public benefit." Rather, this "like for like" change of terms has doubtful relevance to DSW customers. DSW requests that the Court reject Plaintiff's counsel's eleventh-hour attempt to recast this case as anything other than what it was—a garden variety consumer fraud class action filed in expectation of money.

-1-

**[UNREDACTED] DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR DETERMINATION OF WHETHER PLAINTIFF IS A SUCCESSFUL PARTY UNDER A CATALYST THEORY**

## II.    BACKGROUND

### A.    DSW

DSW is an acronym for "Designer Shoe Warehouse." It is primarily a specialty shoe store where consumers  get great shoes for great prices, in a self-service format (customers help themselves to shoes that are all laid out according to style and size, without the assistance of store personnel). DSW sells name-brands (such as Coach, Lucky Brand, Vince Camuto, Steve Madden, and Clarks), as well as "private label" brands that are "owned" by DSW and sold exclusively by DSW and its affiliates. This action only concerns DSW's private- abel items.

Historically, DSW has included two prices on each item's price display: the selling price, and a "Compare At" price, along with a "You Save" amount. As clearly disclosed on both its website and in stores,

**[REDACTED] DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR DETERMINATION OF WHETHER PLAINTIFF IS A SUCCESSFUL PARTY UNDER A CATALYST THEORY**

### B.   Plaintiff's Claims

Plaintiff has contended that DSW deceives customers by listing Compare At prices for private-label items—that is, that because these items are not sold by other retailers under the exact same brand names, they purportedly have never been offered for their listed Compare At prices. The Second Amended Complaint (Corrected) (SACC) seeks restitution and injunctive relief under California's False Advertising Law (FAL), Cal. Bus. & Prof. Code § 17500; the Unfair Competition Law (UCL), Bus. & Prof. Code § 17200, and a recovery for "unjust enrichment." The Complaint has also sought various forms of relief under the Consumer Legal Remedies Act (CLRA), Cal. Civ. Code § 1750.

### C.   History of this Litigation

Plaintiff filed this action on May 31, 2016, immediately after her counsel dropped a nearly identical lawsuit it had filed against DSW, in which DSW caught the plaintiff, Deborah Baumel, taking photographs and video throughout its store and at the point-of-sale while making the very purchase for which she was suing. *Barber v. DSW*, No. 8:15-cv-02024-JGB-SP, Docs. 35, 35-4 (C.D. Cal. 2016). Plaintiff's counsel used their position as class counsel in yet a third pricing case, *Gattinella v. Michael Kors*, to find a new plaintiff here to sue DSW in very short order. They emailed the entire *Gattinella* class asking if any members "would like to assist in [their] investigation" of DSW, noting that the case would need to "mov[e] quickly." (Sheridan Decl., Exh. A.) They were so eager to bring this case that ***just 48 minutes*** after this Court entered judgment on the dismissal in *Barber*, they notified DSW of Ms. Evans' claims. (*Id.* )

1  They filed this suit the very next court day. (*Id.*)[1]

2  Plaintiff's counsel has never—at any time during the pendency of *Barber*, before

3  filing *Evans*, or since then—offered to settle with DSW for simple injunctive relief.

4  (Sheridan Decl. ¶ 8.)  Indeed, Ms. Evans' CLRA notice letter, delivered to DSW the

5  same day Evans filed this suit, demanded that DSW "agree to refund all monies

6  received by DSW from California consumers who purchased DSW Exclusive Products

7  labeled with 'Compare At' prices." (Sheridan Decl., Exh. B.) Plaintiff's original

8  Complaint sought "restitution and/or other equitable relief, including, without

9  limitation, restitutionary disgorgement of all profits, and unjust enrichment." (Dkt. 1,

10  Prayer for Relief ¶ B.) Plaintiff's First Amended Complaint, filed on July 11, 2016

11  (after the CLRA notice period had passed), added claims for actual and punitive

12  damages under the CLRA. (Dkt. 13, Prayer for Relief ¶ D.)

13  During the almost two-year period after this case was filed,  courts have

14  increasingly lined up in a row to grant summary judgment in favor of defendants as to

15  monetary relief. *Stathakos v. Columbia Sportswear Co.*, 2017 WL 1957063, at *10-13

16  (N.D. Cal. May 11, 2017) (granting motion for summary judgment as to restitution

17  where plaintiffs' proposed models of monetary relief "fail[] to account for that benefit,

18  and [are], therefore, impermissible under California law."); *Jacobo v. Ross Stores, Inc.*,

19  CV-15-04701, 2017 WL 3382053 (C.D. Cal. Aug. 2, 2017) (summary judgment

20  granted where plaintiffs failed to present evidence that products were not worth what

21  defendant claimed); *Chowning v. Kohl's Dep't Stores, Inc.*, 2016 WL 1072129, *10

22  (C.D. Cal. Mar. 15, 2016) (same); s*ee also Sperling v. Stein Mart, Inc.*, 291 F. Supp. 3d

23  1076 (C.D. Cal. 2018) (granting defendant's motion for summary judgment where

24  plaintiff failed to show that other retailers did not sell the same private label items

25  under other brand names for the "Compare At" price).

26  _____

27  [1] Amazingly, the purchase that Ms. Evans claims to have made raises precisely the

28  same issue that was the downfall of the *Barber* case.

*Stathakos* was brought by the same Plaintiff's counsel here. Just weeks after the *Stathakos* court entered judgment against that plaintiff on her damages claim—and more than a year after the lawsuit was filed—Plaintiff's counsel informed counsel for DSW that Plaintiff would seek leave to amend her complaint to add claims for breach of contract and breach of express warranty. (Sheridan Decl. ¶ 7 & Exh. C.) That amended complaint was a last-ditch effort by Plaintiff and her counsel to seek monetary relief, while avoiding the glaring pitfalls identified by the courts in both *Stathakos* and *Chowning*. DSW moved to dismiss Plaintiff's new claims for failure to provide pre-suit notice. (Dkt. 58.) This Court granted DSW's motion to dismiss the new claims, agreeing that Plaintiff failed to provide the requisite pre-suit notice of her claims: "[T]he first time DSW could have received Plaintiff's CLRA letter was on May 31, 2016. This could not provide DSW with an adequate opportunity to cure any breaches or negotiate a settlement since the letter was received the same day the suit was filed." Dkt. 71 *5.

On November 17, 2017, the Parties attended mediation, but did not reach an agreement.[2] On November 30, 2017, Plaintiff served DSW with one interrogatory: "Explain in detail all practice changes contemplated and/or in progress with respect to Your reference pricing practices…" (Motion at 11.)[3]

---

[2] Although Plaintiff submitted a declaration from her counsel, Annick Persinger, concerning the mediation, there is no record from JAMS that Ms. Persinger actually attended the mediation. Instead, Plaintiff was represented at mediation by Ms. Sagafi, who had previously filed a Notice of Withdrawal from the case. (Sheridan Decl. ¶ 10.)

[3]

**[REDACTED] DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR DETERMINATION OF WHETHER PLAINTIFF IS A SUCCESSFUL PARTY UNDER A CATALYST THEORY**

1

2  Plaintiff now claims that DSW's change to "Comp. Value" was "the precise

3  change Plaintiff sought to bring about through her lawsuit," (Motion at 20), and that in

4  light of this change, "the primary contested issue remaining between the parties is

5  whether Plaintiff is entitled to attorney's fees, and if so, in what amount." (Dkt. 81 at

6  1.) Plaintiff has not pointed to any place in any pre-suit correspondence, pleadings,

7  discovery responses, or in other case-related materials where she made clear that she

8  wanted DSW to make this "precise change."

9  **D.    DSW's Change Does Not Impact DSW Consumers**

10  Plaintiff contends that the change in reference price terminology from "Compare

11  At" to "Comp. Value" has conferred a substantial public benefit. DSW customers,

12  however, have greeted the change with a yawn—if even noticing it at all. DSW

13  personnel do not believe that this change has had any discernible impact on sales. (Roy

14  Decl. ¶ 3.)

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**[REDACTED] DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR DETERMINATION OF
WHETHER PLAINTIFF IS A SUCCESSFUL PARTY UNDER A CATALYST THEORY**



1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25        Moreover, survey evidence collected in another retailer's case shows that

26  customers interpret "Compare At" and "Comp. Value" to mean approximately the same

27  thing, and do not pay much attention to either phrase. That survey asked customers to

28

**[REDACTED] DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR DETERMINATION OF
WHETHER PLAINTIFF IS A SUCCESSFUL PARTY UNDER A CATALYST THEORY**

scale their agreement with the following statement: "The "Compare At" price you see on price tags at clothing stores is 'A fictitious price that has been inflated to show you that they are giving you a discount.'" (Simonson Decl. ¶ 4.D, 65.D, Ex. H, Q 470.) ***Roughly 90% of respondents*** expressed medium to strong agreement with this statement, indicating their distrust of Compare At prices. (*Id.* ¶ 63.) The survey also observed that "the results for 'Comparable Value' were very similar to those pertaining to 'Compare At' prices—there does not appear to be any significant difference between the interpretations of 'Compare At' prices and 'Comparable Values.'" (*Id.* ¶ 62.)

It is not just consumers who view "Compare At" and "Comp. Value" as interchangeable terms. One of Plaintiff's counsel has offered this same perception in another pricing case. (*See* Dkt. 15-2, Transcript from Demurrer, *Young v. Levi Strauss & Co.*, Case No. CGC-14-541316, 29:3–11 (June 28, 2016) ("'[C]ompare at' … in my mind and according to the guidelines, is a comparable price value. That is where, I think, it's more reasonable for a plaintiff to interpret that similar products might be out there at the same price.").) Plaintiff, and her counsel, in this motion over fees, cannot have it both ways.

### E.   Timeline of DSW's Change to "Comp. Value"

As for whether the Plaintiff's lawsuit played any role in causing DSW to change terminology, there is simply disagreement. DSW's 30(b)(6) witness, Julie Roy, testified that the "big impetus" behind DSW's change to "Comp. Value" ▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

4 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮



**[REDACTED] DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR DETERMINATION OF
WHETHER PLAINTIFF IS A SUCCESSFUL PARTY UNDER A CATALYST THEORY**



That DSW selected a new phrase—Comp. Value—reflects nothing more than good advice, supported by case law and FTC guidance. "Comparable Value," for which "Comp. Value" is an abbreviation, is recommended by both the Federal Trade Commission (FTC) and the Better Business Bureau (BBB). 16 C.F.R. 233.2(c); BBB Code of Advertising § 2.1.3, *available at* https://www.bbb.org/code-of-advertising/.

## III.   REQUIREMENTS UNDER CALIFORNIA CIV. CODE §1021.5

A party seeking attorney fees under California Civ. Code § 1021.5 bears the burden of proving that:

> (1) the action has resulted in the enforcement of an important right affecting the public interest;
>
> (2) a significant benefit has been conferred on the general public;
>
> (3) the financial burden of private enforcement warrants subsidizing the

**[REDACTED] DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR DETERMINATION OF WHETHER PLAINTIFF IS A SUCCESSFUL PARTY UNDER A CATALYST THEORY**

successful party's attorneys; and

(4) private enforcement was necessary.

*Bui v. Nguyen*, 230 Cal. App. 4th 1357, 1368 (2014) (citations omitted). Additionally, where, as here, the case has not resulted in a judgment, a plaintiff must also establish:

(5) the plaintiffs reasonably attempted to settle the litigation prior to filing the lawsuit;

(6) the lawsuit had merit and "achieved its catalytic effect by threat of victory, not by dint of nuisance and threat of expense"; and

(7) the lawsuit was a catalyst motivating the defendants to provide the "primary relief" sought.

*Tipton-Whittingham v. City of Los Angeles*, 34 Cal. 4th 604, 608 (2004).

The moving party bears "[t]he burden [of] establish[ing] each prerequisite to an award of attorney fees under section 1021.5." *Bui,* 230 Cal. App. 4th at 1365 (citing *Ebbetts Pass Forest Watch v. California Dept. of Forestry & Fire Protection,* 187 Cal. App. 4th 376, 381 (2010)).

## IV.  PLAINTIFF FAILS TO MEET HER BURDEN TO ESTABLISH ALL THE PREREQUISITES TO AN AWARD OF CATALYST FEES

This Court need not even reach the factual dispute as to why DSW made the change from Compare At to Comp Value, because Plaintiff cannot satisfy other prerequisite  elements of § 1021.5. Plaintiff filed this suit to win money, not achieve any injunctive relief for the public. DSW's minor change in verbiage was never the "primary relief sought" by Plaintiff. Indeed, Plaintiff never made any effort to settle for a simple change of reference price terminology, either before filing this case (as required under § 1021.5), or even since then. Additionally, the change here—from Compare At to Comp. Value—cannot be said to have conferred a significant public benefit—much less an important right ,as Plaintiff's counsel, now, with a straight face, attempts to argue.

This case is very unlikely to continue beyond the Court's decision on this motion

because of the simple fact that Plaintiff cannot point to any economic harm she has suffered, and she has no financial incentive to continue. By definition, Plaintiff must also be fully satisfied with the terminology now used on DSW's price displays—otherwise, her motion would be frivolous, and would violate her fiduciary duty to the class she purports to represent. And because the writing on the wall now spells doom for Plaintiff's claims, neither of the parties has engaged in expert discovery, which would address dispositive merits issues such as how consumers interpret the phrase "Compare At," whether they trust it, or whether they consider it in making purchase decisions. Nevertheless, the record, incomplete as it is, coupled with the caselaw on this issue that has developed over the past few years, does make abundantly clear that Plaintiff was not the "prevailing party" within the meaning of section 1021.5.

### A.     DSW's Change Was Not "the Primary Relief Sought" By This Litigation

In non-catalyst cases under § 1021.5—those cases where the plaintiff succeeds in obtaining judicial relief—"it is sufficient if the plaintiff achieved partial success or succeeded on *any* significant issue in the litigation which achieved *some* of the benefit the plaintiff sought in bringing suit." *Marine Forests Soc'y v. Cal. Coastal Comm'n*, 160 Cal. App. 4th 867, 878 (2008). "However, in catalyst cases, the defendant must have provided the plaintiff with the *primary* relief sought." *Id.*; *see also NEI Contracting & Eng'g, Inc. v. Hanson Aggregates, Inc.*, No. 12-CV-01685-BAS(JLB), 2017 WL 2363163, *5 (S.D. Cal. May 31, 2017). Where a plaintiff fails to make such a showing, she cannot be the "prevailing party": "The trial court does not have discretion to award attorneys' fees unless the statutory criteria have been met as a matter of law. *California Pub. Records Research, Inc. v. Cty. of Yolo* ("Yolo"), 4 Cal. App. 5th 150, 192 (Cal. Ct. App. 2016) (citing *McGuigan v. City of San Diego,* 183 Cal. App. 4th 610, 623, 107 Cal. Rptr. 3d 554 (2010).)

In *Marine Forests Society*, for example, the plaintiff nonprofit corporation's "primary objective" was to enjoin the California Coastal Commission from requiring the plaintiff "to remove an experimental man-made reef that it had planted on the ocean floor." 160 Cal. App. 4th at 878, 870. The lawsuit did not save the reef, but it did lead to a determination that the Commission's appointment structure violated the California Constitution, which in turn caused the legislature to change the Commission's governing statutes. *Id.* at 870, 878. Based on this partial success, the trial court awarded attorneys' fees to the plaintiff under a catalyst theory, rationalizing that "[a] significant goal of the litigation was to ensure that the composition of the Coastal Commission complied with the separation of powers doctrine." *Id.* at 878 (alteration in original). The California Court of Appeal reversed, explaining that the change to the Commission's structure was not "the primary relief that [the plaintiff] sought." *Id.* at 879. Accordingly, because the plaintiff "failed to establish that [the] defendant provided the primary relief sought in its litigation," the Court of Appeal held the trial court erred in awarding fees under the catalyst theory. *Id.*

More recently, in *NEI Contracting & Eng'g, Inc. v. Hanson Aggregates, Inc.* ("NEI"), the court held that although the defendant changed its conduct, the change in conduct was "incidental to [plaintiff] and its counsel's primary objective of obtaining damages on an individual and classwide basis." No. 12-CV-01685-BAS(JLB), 2017 WL 2363163, *5 (S.D. Cal. May 31, 2017) (currently on appeal). Catalyst fees were thus inappropriate. *Id.* There, like here, the plaintiff sought to recover "potentially millions of dollars in damages on behalf of a class of [defendant's] customers." *Id.*

Here, as in *Marine Forests Society* and *NEI*, Plaintiff has not obtained the "primary relief" sought by this litigation. Plaintiff's conclusory argument that DSW's change from "Compare At" to "Comp. Value" was the "precise change Plaintiff sought to bring about through her lawsuit" (Motion at 18–19, see also *id.* at 22, 23) is fantasy, and contradicted by the big, fat check that Plaintiff has really, in fact, requested at every turn.

Nor has Plaintiff ever suggested that "Comp. Value" was the "precise" and "exact change" she was seeking in this litigation. (Motion at 19–20.) Rather, her complaint quoted two pages of FTC guidance and then generically alleged that DSW's Compare At/Selling Price scheme ran afoul of this guidance. (SACC ¶ 89). Nothing in the SAC suggests that "Comp. Value" would "properly describe the higher reference price on DSW's Private Label products," as Plaintiff now claims. (Motion at 3.) If anything, Plaintiff's generic allegations could apply equally to either phrasing. And there is an apparent reason why Plaintiff pleaded her claims so generically, with no suggestion of alternative language: because money has always been Plaintiff and her counsel's primary objective. For this reason alone, their claim for catalyst fees must be rejected. *Yolo*, 4 Cal. App. 5th at 192.

## B.   Plaintiff Had a Financial Incentive—Not a Financial Burden—to Bring this Case

Section 1021.5 "was not designed as a method for rewarding litigants motivated by their own pecuniary interests who only coincidentally protect the public interest." *Davis v. Farmers Ins. Exch.*, 245 Cal. App. 4th 1302, 1329 (2016) (quoting *Beach Colony II v. Cal. Coastal Comm'n*, 166 Cal. App. 3d 106, 114 (1985)). Instead, the statute's "purpose is to provide some incentive for the plaintiff who acts as a true private attorney general, prosecuting a lawsuit that enforces an important public right and confers a significant benefit, despite the fact that his or her own financial stake in the outcome would not by itself constitute an adequate incentive to litigate." *Satrap v. PG&E*, 42 Cal. App. 4th 72, 80 (1996). Thus, an award under section 1021.5 is not warranted where "the plaintiff had a 'personal financial stake' in the litigation 'sufficient to warrant [the] decision to incur significant attorney fees and costs in the vigorous prosecution' of the lawsuit." *Millview Cty. Water Dist. v. State Water Res. Control Bd.*, 4 Cal. App. 5th 759, 768-69 (2016) (alteration in original) (quoting *Summit Media LLC v. City of Los Angeles*, 240 Cal. App. 4th 171, 193–94)

(2015).[9]

Plaintiff spends a mere four sentences arguing that she has established financial burden. She states that "Plaintiff's only financial incentive was the potential entitlement to a small incentive award, and a pro rata distribution of a class-wide settlement." (Motion at 25.) This, of course, ignores the millions and millions of dollars that Plaintiff was seeking on behalf of the putative class, including damages, rescission (that is, a full refund to everyone in the class), profit disgorgement, unjust enrichment, and actual and punitive damages. (SACC, Prayer for Relief.) Indeed, by bringing this case under the Class Action Fairness Act, Plaintiff has represented that the amount in controversy exceeded $5 million. (SACC ¶ 39.) "[T]he case law directs the Court to consider the value of the litigation, *not the value of the individual claims in a class action*." *In re Taco Bell Wage & Hour Actions*, 222 F. Supp. 3d 813, 827 (E.D. Cal. 2016) (emphasis added); *see also NEI Contracting*, 2017 WL 2363163, at *10–11 ("the prospect of a sizable class action recovery provided sufficient financial incentives to justify this litigation in economic terms.").

Plaintiff has not, and cannot demonstrate that she lacked a financial incentive to bring this case. The class device, by definition, incentivizes attorneys to take representations involving small value claims which, in the aggregate, involve large

_____

[9] *See also Davis v. Farmers Ins. Exch.*, 245 Cal. App. 4th 1302, 1310 (2016) (because plaintiff sought over ten million dollars in monetary relief, "it was reasonable for the [trial] court to find that at every critical juncture [the plaintiff] expected a substantial financial recovery, and that this was sufficient motivation to pursue the case," making a fee award under section 1021.5 inappropriate.); *Press v. Lucky Stores, Inc.*, 34 Cal. 3d 311, 321 (1983) (courts should consider the plaintiff's "incentives involved in bringing the lawsuit."); *Roybal v. Governing Bd. of Salinas City Elementary School Dist.*, 159 Cal. App. 4th 1143, 1151 (2008) (catalyst fees inappropriate where the enforcement of the public interest is merely "coincidental to the attainment of . . . personal goals" or is "self serving") (internal quotations omitted); *Children & Families Comm'n of Fresno Cty. v. Brown*, 228 Cal. App. 4th 45, 62 (2014) (noting the court is concerned with evaluating "incentives rather than outcomes" under the financial burden requirement).

**[REDACTED] DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR DETERMINATION OF WHETHER PLAINTIFF IS A SUCCESSFUL PARTY UNDER A CATALYST THEORY**

sums. *See, e.g. Chen v. Allstate Ins. Co.*, 819 F.3d 1136, 1147 (9th Cir. 2016) (citing *Deposit Guar. Nat. Bank, Jackson, Miss. v. Roper*, 445 U.S. 326, 339 (1980)). Sometimes they win, and sometimes they lose, but an attorney's incentive to take the case does not derive from the small individual claim of the class representative. Again, this provides an independent, unassailable basis on which to deny Plaintiff's motion. *See NEI Contracting,* 2017 WL 2363163, at *12.

### C.   Plaintiff Failed to Engage in Any Pre-Suit Settlement Discussions

This Court has already found that Plaintiff did not provide pre-suit notice of her discontent with DSW's use of "Compare At." (Dkt. 71 *5.) This is, also, fatal to her claim for catalyst fees now. Pre-suit settlement discussions are *required* under section 1021.5. *Graham v. DaimlerChrysler Corp.*, 34 Cal. 4th 553, 577 (2004), *as modified* (Jan. 12, 2005) (remanding so that court could determine "whether plaintiffs attempted to reasonably settle the matter short of litigation"). The purpose of adopting this "sensible" rule was to discourage lawsuits like Plaintiffs, which "are more opportunistic than authentically for the public good." *Id*. This "important categorical rule . . . cannot be ignored merely because the court believes it would be equitable for the plaintiff to receive a fee award or that plaintiff had a good excuse for failing to engage in these efforts." *Cates v. Chiang,* 213 Cal. App. 4th 791, 816 (2013), *reh'g denied* (Feb. 26, 2013), *review denied* (May 15, 2013).

Plaintiff does not deny that she failed to engage in pre-suit settlement discussions. To the contrary, Plaintiff's CLRA letter made patently unreasonable monetary demands (e.g. that DSW provide a full refund to every class member), and did not propose the specific change that DSW has made.

Plaintiff argues that any attempt to settle before filing suit would have been futile. In support, Plaintiff claims: (1) DSW maintains that it did nothing wrong (Motion at 23); (2) DSW did not agreed to settle this case early on (*id*. at 23–24); (3) Plaintiff brought this suit out of her interest in seeking injunctive relief (*id*. at 24); and (4) DSW did not change its practices in response to earlier lawsuits concerning its

pricing practices (*id.*). Plaintiff's arguments are "speculative and not supported by any evidence in the record," and should be rejected. *Carian v. Dep't of Fish & Wildlife*, 235 Cal. App. 4th 806, 819 (2015).

Plaintiff's vague references to "efforts" made by Plaintiff's counsel to settle the case are far more deceptive than any claims Plaintiff makes here as to DSW's pricing practices. Significantly, Plaintiff's counsel does not point to any such "efforts" in their declarations, because they cannot—Plaintiff has never made any "effort" to settle Plaintiff's injunctive relief claims, and has never made any formal settlement demand as to any claims. (Sheridan Decl. ¶¶ 8–10.)  Plaintiff's failure to suggest this simple wording change realistically deprived DSW of considering whether agreeing to it earlier would have provided a fast, simple business solution that could have saved it much time, trouble, and expense. Here, Plaintiff never suggested the change in terminology because Plaintiff only wanted money. *See NEI Contracting*, 2017 WL 2363163, at *7 (rejecting futility argument where plaintiff was focused on recovering sizable damages).

Other, unrelated pricing suits against DSW are irrelevant. Plaintiff's counsel did not try to settle *Barber* for injunctive relief, and in any event, their client, Deborah Baumel, could not have settled the case even if she had wanted to. She manufactured her own injury, lacked Article III standing, and would never have passed muster as a "typical" or "adequate" class representative.  Moreover, Plaintiff has repeatedly argued that other cases against DSW were distinguishable from this one because they involved the use of "Compare At" in connection with brand-name products (such as *Sperling v. DSW* and *Barber v. DSW*).[10] Regardless, DSW did not settle because it had strong

---

[10] *See* Dkt. 17 at 15-16 (distinguishing *Barber* because the complaint there "d[id] not allege the products purchased by Plaintiffs . . . were [sold] exclusively at Defendant's stores."); *id.* at 11 ("Here, however, the products at issue are sold exclusively at DSW stores, and consumers are not made aware which products are DSW exclusives. Consumers therefore have no way of knowing whether the "Compare At" price printed

**[REDACTED] DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR DETERMINATION OF WHETHER PLAINTIFF IS A SUCCESSFUL PARTY UNDER A CATALYST THEORY**

defenses to cases; DSW was able to extract itself from both cases at the pleadings stage. *Sperling v. DSW Inc*., 2015 WL 13309476, \*5 (C.D. Cal. Nov. 19, 2015); 699 F. App'x 654 (9th Cir. 2017) (affirming dismissal); *Barber v. DSW Inc*., 8:15-cv-02024-JGB-SP (C.D. Cal), Dkt. 27 (granting motion to dismiss), 35 (motion to dismiss SAC attaching video footage; plaintiffs voluntarily dismissed soon after filing).

### D.   The Lawsuit Did Not Enforce an Important Right, Nor Confer a Significant Benefit

DSW's change from "Compare At" to "Comp. Value" has not conferred a "significant benefit," as is expressly required by Civ. Code § 1021.5. This language makes clear that:

> [T]he Legislature did not intend to authorize an award of fees under section 1021.5 in every lawsuit enforcing a constitutional or statutory right. [Citations.] The statute specifically provides for an award only when the lawsuit has conferred 'a significant benefit' on 'the general public or a large class of persons.' The trial court ***must determine the significance of the benefit*** and the size of the class receiving that benefit ***by realistically assessing the gains that have resulted in a particular case***.

*Baxter v. Salutary Sportsclubs, Inc.*, 122 Cal. App. 4th 941, 19 Cal. Rptr. 3d 317 (2004) (emphasis added) (citing *Flannery v. California Highway Patrol, supra,* 61 Cal. App. 4th 629, 635, 71 Cal. Rptr. 2d 632 (1998). ("[w]hile plaintiff's lawsuit was based on the important right to be free from unlawful discrimination, its primary effect was the vindication of her own personal right and economic interest.")).

In *Baxter*, the plaintiff alleged that the defendant, which owned and operated a series of health clubs, violated the UCL by failing to include certain language in its

---

on an item's tag corresponds to its true value, or a false and misleading amount manufactured by DSW."); *id.* at 15 ("unlike in *Branca I* and *Rubenstein*, Evans's claims here relate only to products sold exclusively at DSW stores"); Dkt. 63 at 13 ("unlike in *Mulligan* . . . here, [the items] were never offered anywhere else at the higher price on the label."); *see also Sperling v. Stein Mart, Inc.*, 291 F. Supp. 3d 1076 (C.D. Cal. 2018) (distinguishing *Sperling v. DSW* from cases involving exclusive products).

consumer contracts. Even though the plaintiff had established that the defendant had violated the law, and the defendant changed its forms as a result, the court held that fees were not warranted. The court explained that the case was "a textbook example of valueless litigation against a private party 'under the guise of benefiting the public interest,'" and that "it does not follow as a matter of law that this litigation has conferred a significant benefit on anyone, much less on a large segment of the public." *Id.* at 945–46.

Similarly, in *Equine Legal Sols., Inc. v. Buntrock*, No. C 07-04976 CRB, 2008 WL 111237, at *2 (N.D. Cal. Jan. 9, 2008), the court held that the fact that a lawsuit involves consumer protection claims under the UCL is not, in itself, sufficient to satisfy the "significant benefit" or "public interest" requirements:

> Attorney's fees awarded pursuant to § 1021.5 must be justified by reference to something more definite than the public's interest in the vague concept of "honest competition." . . . While misappropriation of ELS's legal forms is, no doubt, a potential statutory violation of significance to ELS, the notion that the public has a significant interest in this case, as currently pled, is spurious.

See also *Balch Enterprises, Inc. v. New Haven Unified School Dist.*, 219 Cal. App. 3d 783, 795–96 (1990) (holding that plaintiffs did not enforce or vindicate important public right where the "record reveals no more than a procedural defect"); *Pipefitters Local No. 636 Defined Benefit Plan v. Oakley, Inc.*, 180 Cal. App. 4th 1542, 1551–53, 104 Cal. Rptr. 3d 78, 84-85 (2010) (applying the substantial benefit doctrine, "a lion produced a mouse . . . plaintiff's victory was 'pyrrhic in every respect save the potential of the fee request'").

As in *Baxter* and *Equine Legal*, Plaintiff here cannot satisfy these factors by merely pointing to the fact that this case involves claims brought under consumer protection laws. DSW's small change in terminology has not bestowed any "significant" public benefit.

### E.    Plaintiff's Lawsuit Has No Merit

The case is very unlikely to be decided on its merits. The unavailability of a monetary remedy, and Plaintiff's apparent satisfaction with "Comp. Value," has led the parties to defer expert disclosure on issues of central importance to this case. Plaintiff therefore cannot demonstrate that her action would win in the long-run. Fees under § 1021.5 are only appropriate where the change in practice was achieved "by threat of victory, not by dint of nuisance and threat of expense." *Graham,* 34 Cal. 4th at 576 (2004) (citing *Marbley v. Bane,* 57 F.3d 224, 234–235 (2nd Cir. 1995).

Here, Plaintiff appears to have declared victory based on the fact that her claims for injunctive relief survived the motion to dismiss stage, but this says nothing as to the merits of her case. "Attorney fees should not be awarded for a lawsuit that lacks merit, even if its pleadings . . . survive a demurrer." *Graham,* 34 Cal. 4th at 576. Recent class certification and merits determinations in similar cases have favored defendants. Although neither side has, to date, found the sums at issue in this case sufficient to warrant expert disclosure ("dint of nuisance" and "expense"), it would have been DSW's intention to present evidence showing lack of materiality, lack of deceptiveness, and that its Compare At prices did not affect purchase decisions.

It is pure speculation for Plaintiff to claim that she would have prevailed on any part of her claim. The expense she has inflicted on both sides, however, is real and ongoing.

### F.    This Case Did Not Motivate DSW to Change Its Prices

Finally, Plaintiff cannot receive an award under section §1021.5 unless she can demonstrate a causal connection between her action and the relief achieved. *Californians for Responsible Toxics Mgmt. v. Kizer,* 211 Cal. App. 3d 961, 966, 259 Cal.Rptr. 599 (1989). Although a court may infer that a causal connection exists between actions taken by the defendant after a plaintiff's lawsuit is filed, it is an error to rely solely upon the chronology of events. 211 Cal. App. 3d 961, 968–69 (reversing lower court). Where a defendant presents evidence to rebut an inference made by

**[REDACTED] DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR DETERMINATION OF WHETHER PLAINTIFF IS A SUCCESSFUL PARTY UNDER A CATALYST THEORY**

1    chronology, the court weighs the credibility of the evidence. *Id.* at 968–70.

2        Plaintiff dedicates 20 pages of her 25-page motion to arguing that the chronology

3    of this case compels a finding that this litigation caused DSW to change its practices.

4    However, the evidence submitted shows that DSW made the change ⬛⬛⬛⬛

5    ⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛

6    ⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛

7    ⬛⬛⬛⬛⬛⬛⬛⬛⬛[11],⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛

8    ⬛⬛⬛⬛⬛⬛⬛.

9    ⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛

10   ⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛ and

11   regardless of whether they like to see such language on price tags, there is no evidence

12   that this slight change in terminology actuates any purchasing decisions. Plaintiff

13   quotes repeatedly from an internal memo stating ⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛

14   ⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛

15   ⬛⬛⬛⬛⬛⬛⬛⬛⬛ But again, even if Plaintiffs had laid a foundation for the

16   inference they wish to draw from this document (and they have not), there is no

17   competent evidence in this case that "Compare At" influences purchase decisions in the

18   first place.

19       Finally, Plaintiff makes much of ⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛

20   ⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛. This merits nothing but a big "So What?" ⬛⬛⬛

21   ⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛

22   [11]

23

24

25

26

27

28

1

2

3

4

5

6

7

8  **V.  CONCLUSION**

9       Plaintiff filed this action because she and her counsel wanted money. The

10  litigation has not gone as they would have hoped, and their attempt now to turn this

11  case into something it was not—a crusade for "Comp. Value" instead of "Compare

12  At"—rings hollow. Had Plaintiff truly wanted that change, she would have suggested it

13  before she filed suit. Plaintiff gambled for more and lost, but it was that incentive, not a

14  love of "Comp. Value," that caused her counsel to pursue this case.

15

16  Dated: May 8, 2018              STEPTOE & JOHNSON LLP

17

18                          By:     /s/ *Stephanie Sheridan*

19                                  STEPHANIE A. SHERIDAN
                                    ANTHONY J. ANSCOMBE
20                                  MEEGAN B. BROOKS
                                    Attorneys for Defendant
21                                  DSW INC.

22

23

24

25

26

27

28

**[REDACTED] DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR DETERMINATION OF
WHETHER PLAINTIFF IS A SUCCESSFUL PARTY UNDER A CATALYST THEORY**