UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

Case No.   **2:16-cv-03791 JGB (SPx)**   Date   August 17, 2018

Title   *Amy Evans v. DSW, Inc.*

Present: The Honorable   JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE

MAYNOR GALVEZ
Deputy Clerk

Not Reported
Court Reporter

Attorney(s) Present for Plaintiff(s):
None Present

Attorney(s) Present for Defendant(s):
None Present

**Proceedings:**   Order (1) GRANTING Plaintiff's Applications to File Under Seal (Dkt. Nos. 87, 97); (2) GRANTING Defendant's Application to File Under Seal (Dkt. No. 90); and (3) DENYING Plaintiff's Motion (Dkt. No. 89) (IN CHAMBERS)

Before the Court is Plaintiff Amy Evan's ("Plaintiff") motion for determination of whether she is a successful party under a catalyst theory. ("Motion," Dkt. No. 89.) The Court finds this matter appropriate for resolution without a hearing. See Fed. R. Civ. P. 78; L.R. 7-15. On July 25, 2018, the Court took the motion under submission. (Dkt. No. 109.) After considering all papers filed in support of, and in opposition to, the Motion, the Court DENIES Plaintiff's Motion.

### I.   PROCEDURAL BACKGROUND

On May 31, 2016, Plaintiff filed her complaint. ("Complaint," Dkt. No. 1.) On July 11, 2016, Plaintiff filed a first amended complaint. ("FAC," Dkt. No. 13.) On August 1, 2016, Defendant DSW, Inc. ("Defendant" or "DSW") filed a motion to dismiss Plaintiff's FAC. (Dkt. No. 14.) On February 2, 2017, the Court denied Defendant's motion to dismiss. (Dkt. No. 38.) Plaintiff then filed a second amended complaint on June 20, 2017 (Dkt. No. 54) and a corrected second amended complaint on July 3, 2017 ("SAC," Dkt. No. 54). In her SAC, Plaintiff alleged eight causes of action on behalf of herself and all others similarly situated: (1) violation of the "unfair" prong of California's Unfair Competition Law ("UCL"); (2) violation of the "fraudulent" prong of the UCL; (3) violation of the "unlawful" prong of the UCL; (4) violation of the California False Advertising Law, California Business & Professions Code §§ 17500, et seq.; (5) violation of the Consumers Legal Remedies Act ("CLRA"),

California Civil Code §§ 1750, et seq.; (6) unjust enrichment; (7) breach of express warranty; and (8) breach of contract. (SAC.) Defendant moved to dismiss the SAC on July 19, 2017. (Dkt. No. 58.) On September 14, 2017, the Court granted in part and denied in part Defendant's motion to dismiss Plaintiff's SAC. (Dkt. No. 71.)

Defendant removed the "Compare At" terminology on the label, at issue in Plaintiff's complaints, and replaced it with "Comp. Value." (Mot. at 3.) Subsequently, on April 10, 2018, Plaintiff filed an application for leave to file documents under seal in support of her Motion. ("Plaintiff's Application I," Dkt. No. 87.) Plaintiff also filed a sealed declaration in support of her Application I. (Dkt. No. 88.) That same day, Plaintiff filed the instant Motion. Plaintiff attached the following documents to her Motion:

- Declaration of Annick M. Persinger ("Persinger Decl.," Dkt. No. 89-1) and accompanying exhibits:

    o Exhibit 3: Photograph of an in-store display for a Kelly & Katie brand show taken at a California DSW Store by Plaintiff's counsel on October 24, 2017;
    o Exhibit 4: Photograph of an in-store display for a Kelly & Katie brand show taken at a California DSW Store by Plaintiff's counsel on January 23, 2018;
    o Exhibit 7: DSW internal email dated May 23, 2017 that attaches consumer research;
    o Exhibit 8: DSW internal email chain from April 2016;
    o Exhibit 9: DSW internal email chain from May 2016;
    o Exhibit 10: Internal email dated March 3, 2017 which attaches consumer research;
    o Exhibit 11: DSW's second supplemental response to interrogatory 23, dated March 7, 2018;
    o Exhibit 13: Defendant's objections and responses to interrogatories propounded by Plaintiff, dated January 8, 2018;
    o Exhibit 14: Defendant's objections and supplemental response to interrogatories propounded by Plaintiff, dated January 18, 2018;
    o Exhibit 17: A January 2018 internal DSW spreadsheet concerning digital tasks which was produced in native format;
    o Exhibit 18: An email dated August 25, 2017;
    o Exhibit 19: An internal DSW communication sent to District Managers on January 4, 2018;
    o Exhibit 20: A DSW internal email chain containing a business update from November 27, 2017;
    o Exhibit 24: A DSW internal email chain including emails from August to October 2017;
    o Exhibit 25: An internal DSW manual entitled *Shoe Lover Training for Merchants* that was produced in native format;

- - o   Exhibit 101: Excerpts from the March 15, 2018 30(b)(6) Deposition of Julie Roy, DSW Vice President of Customer Relationship Management, Digital and Analytics;
    - o   Exhibit 102: Excerpts from the March 16, 2018 deposition of Amy Stevenson, DSW Chief Marketing Officer;
    - o   Exhibit 103: excerpts from the March 16, 2018 deposition of Edward Kistner, DSW Senior Vice President of Planning and Allocation;
    - o   Exhibit 104: Interrogatory No. 23, which was served on November 30, 2017;
    - o   Exhibit 105: January 2018 email correspondence between Plaintiff's counsel, Hassan Zavareei, and Defendant's counsel, Stephanie Stroup, concerning Defendant's request for an extension of the time to respond to Plaintiff's single interrogatory concerning DSW's practice changes;
    - o   Exhibit 106: A small excerpt from a large spreadsheet containing information about Private Label brands sold in California which, in its complete form, contains thousands of entries;
  - Declaration of Scott A. Edelsberg ("Edelsberg Decl.," Dkt. No. 89-2) and one accompanying exhibit:
    - o   Exhibit A: A CLRA letter sent in connection with Barber, et al. v. DSW, Inc., No. 15-cv-02024-JGB-SP, which sought injunctive relief dated December 7, 2015; and
  - Memorandum of Points and Authorities ("Memo," Dkt. No. 89-3).

On May 8, 2018, Defendant filed an application for leave to file under seal portions of its Opposition to the Motion. ("Defendant's Application," Dkt. No. 90.) Defendant also filed a sealed declaration in support of the application. (Dkt. No. 91.) Defendant attached to its Opposition ("Opposition," Dkt. No. 92) the following documents:

- Proposed Order (Dkt. No. 92-1);
- Declaration of Julie Roy ("Roy Declaration," Dkt. No. 92-2);
- Declaration of Stephanie A. Sheridan ("Sheridan Declaration," Dkt. No. 92-3);
- Exhibit A to Sheridan Declaration ("Exh. A to Sheridan Decl.," Dkt. No. 92-4);
- Exhibit B to Sheridan Declaration ("Exh. B to Sheridan Decl.," Dkt. No. 92-5);
- Exhibit C to Sheridan Declaration ("Exh. C to Sheridan Decl.," Dkt. No. 92-6);
- Exhibit D to Sheridan Declaration ("Exh. D to Sheridan Decl.," Dkt. No. 92-7);
- Exhibit E to Sheridan Declaration ("Exh. E to Sheridan Decl.," Dkt. No. 92-8);
- Exhibit F to Sheridan Declaration ("Exh. F to Sheridan Decl.," Dkt. No. 92-9);
- Exhibit G to Sheridan Declaration ("Exh. G to Sheridan Decl.," Dkt. No. 92-10); and
- Certificate of Service (Dkt. No. 92-11).

On May 24, 2018, Plaintiff filed an application for leave to file documents under seal submitted in support of her reply. (Dkt. No. 93.) Plaintiff's reply, however, exceeded 12 pages in contravention of the Court's Standing Order. (Dkt. No. 95.) On May 30, 2018, Plaintiff filed another application for leave to file documents under seal submitted in support of her reply. ("Plaintiff's Application II," Dkt. No. 97.) Plaintiff submitted a sealed declaration in support of

its Application II.  (Dkt. No. 98.)  Plaintiff also filed a reply which complied with this Court's Standing Order.  ("Reply," Dkt. No. 99.)  Plaintiff attached the following documents to her Reply:

- Reply Declaration of Annick Persinger ("Persinger Reply Declaration," Dkt No. 95-1) and accompanying exhibits:
    - Exhibit 107: Excerpts from the March 15, 2018 30(b)(6) deposition of Julie Roy, DSW Vice President of Customer Relationship Management, Digital and Analytics;
    - Exhibit 108: Copy of the November 17, 2017 sign-in sheet kept in JAMS records in their normal course of business;
    - Exhibit 109: Mark Armstrong & Yonhmin Chen, *Discount Pricing* 5 (Univ. of Oxford, Dep't of Econ., Discussion Paper Series No. 605, 2012);
    - Exhibit 110: Dhruv Grewal & Larry D. Compeau, *Comparative Price Advertising: Informative or Deceptive?*, 11 J. PUB. POL'Y & MARKETING 52, 56 (1992)
    - Exhibit 111: Donald Ngwe, *Fake Discounts Real Revenues in Retail*, (Harvard Bus. Sch., Working Paper, 2017);
- Reply Declaration of Scott Edelsberg ("Edelsberg Reply Declaration," Dkt. No. 95-2); and
- Objections to Defendant's Evidence Filed in Opposition ("Plaintiff's Objections," Dkt. No. 95-3).

Defendant then filed an ex parte application for leave to file a surreply.  ("Application Re: Surreply," Dkt. No. 100.)  On June 4, 2018, Plaintiff filed an opposition to the Application Re: Surreply.  (Dkt. No. 101.)  Defendant also filed a response to Plaintiff's evidentiary objections.  ("Defendant's Response to Plaintiff's Objections," Dkt. No. 103.)  On June 5, 2018, the Court granted Defendant's Application Re: Surreply.  (Dkt. No. 104.)  The next day, Defendant filed its Surreply.  ("Surreply," Dkt. No. 105.)  On June 20, 2018, Defendant filed a notice of supplemental authority (Dkt. No. 107), and attached a copy of Chowning v. Kohl's Dep't Stores, Inc., --- Fed. App'x ---, No. 16-56272, 2018 WL 3016908 (June 18, 2018 9th Cir.) to support its argument that Plaintiff's claim lacks merit (Dkt. No. 107-1).  On July 2, 2018, Plaintiff filed a joint status report to inform the Court of the Ninth Circuit's ruling in Chowning.  (Dkt. No. 108 at 2.)  The parties requested their case remain stayed pending a ruling on Plaintiff's Motion.  (Id.)

## II.     FACTUAL BACKGROUND

Plaintiff alleges the following in her SAC.  DSW is an Ohio corporation that operates forty-five DSW locations in California.  (SAC ¶ 38.)  DSW increases its sales by creating the "illusion of traditional outlet and warehouse discounts and bargains," in "offering made-for-outlet goods at prices reduced from fabricated, arbitrary, and false 'Compare At' prices."  (Id. ¶ 44.)  Plaintiff alleges Defendant intentionally uses false price comparisons deigned to deceive consumers to believe they are purchasing brand-name shows at a discount, when they are actually buying shoes made exclusively for DSW.  (Id. ¶ 46.)

    DSW creates and trademarks the DSW Exclusive Products' brands, including Kelly & Katie, Lulu Townsend, Poppie Jones, Audrey Brooke, and One Wink. (Id. ¶ 11.) DSW advertises its exclusive products with the "Compare At" price references. (Id. ¶ 12.) Plaintiff alleges this practice constitutes false, fraudulent, and deceptive advertising because the "Compare At" prices on product tags list substantially higher prices than those offered at DSW. (Id. ¶ 70.) Plaintiff further alleges that every DSW customer's receipt contains a "YOU SAVE" amount in large, capitalized letters, that reflects the difference between the actual price paid and the "Compare At" price advertised on the product price tag. (Id. ¶ 17.) Plaintiff alleges this is also true for online purchases, where DSW advertises its Exclusive Products with "Compare At" price references, and DSW tells customers how much they saved when they complete their orders. (Id. ¶ 48.) Plaintiff maintains, therefore, that DSW "sets the prices for its DSW Exclusive Products knowing full well that the products will never be sold anywhere at the Compare At price," in order to "facilitate sham markdowns," thereby deceiving its customers into believing they are getting a deal to increase its sales. (Id. ¶ 16.)

    Plaintiff purchased five DSW Exclusive Products in March and April 2016, both at the DSW store located in Sharman Oaks, California, and online through DSW's website. (Id. ¶ 37.) Plaintiff alleges she was induced to make these purchases in reliance on DSW's deceptive reference pricing scheme and suffered damages as a result. (Id.) Plaintiff asserts these claims on behalf of a "Proposed Class" consisting of "[a]ll California residents who, within the applicable statute of limitations preceding the filing of this action and going forward from the date of the Complaint, purchased a DSW Exclusive Product advertised with a Compare At price and a lower actual selling price from DSW." (Id. ¶ 56.)

### III.    MOTON TO FILE DOCUMENTS UNDER SEAL

**A. Legal Standard**

    There is a strong presumption of public access to judicial records and documents. Nixon v. Warner Commc'ns, Inc., 435 U.S. 589, 597 n.7 (1978) ("It is clear that the courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents."); Pintos v. Pac. Creditors Ass'n, 605 F.3d 665, 677 (9th Cir. 2010). The presumption applies to pleadings filed with the court and extends to discovery material attached to those pleadings. Foltz v. State Farm Mut. Auto. Ins. Co., 331 F.3d 1122, 1134 (9th Cir. 2003). Although a request to seal judicial records offends the presumption in favor of public access, the right of access "is not absolute." Id. at 1135.

    Generally, two standards govern requests to seal documents: the "compelling reasons" standard and the "good cause" standard. Pintos, 605 F.3d 665 at 677. When the documents sought to be sealed are only "tangentially related" to the underlying cause of action, the court applies a "good cause" standard. Ctr. for Auto Safety v. Chrysler Grp., LLC, 809 F.3d 1092, 1097 (9th Cir. 2016). The Ninth Circuit in Chrysler recognized that whether a motion is dispositive or nondispositive should not automatically dictate which standard a court should apply. Id. at 1098 ("When using the words 'dispositive' and 'nondispositive,' we do not believe

our court intended for these descriptions to morph into mechanical classifications. Rather, these descriptive terms are indicative of when a certain test should apply.") The Ninth Circuit continued, explaining: "The focus in all of our cases is on whether the motion at issue is more than tangentially related to the underlying cause of action." Id. at 1099 (citations omitted); see also Miotox LLC v. Allergan, Inc., No. 2-14-cv-08723 ODW (PJWx), 2016 WL 3176557, at *1 (C.D. Cal. June 2, 2016) (examining whether the documents were tangentially related to the cause of action). The Ninth Circuit, in discussing the compelling reasons standard, has stated: "A party seeking to seal a judicial record then bears the burden of overcoming this strong presumption by meeting the compelling reasons standard. That is, the party must articulate compelling reasons supported by specific factual findings that outweigh the general history of access and the public policies favoring disclosure . . . ." Kamakana v. City and Cnty. of Honolulu, 447 F.3d 1172, 1178-79 (9th Cir. 2006).

**B. Discussion**

Plaintiff's Motion is only tangentially related to the merits of Plaintiff's claims. The Court need only assess the merits of Plaintiff's claims to determine that her case was not frivolous, unreasonable, or groundless. See Edwards v. Ford Motor Co., No. 11CV1058-MMA (BLM), 2016 WL 1665793, at *4 (S.D. Cal. Jan. 22, 2016). Accordingly, the Court applies a good cause standard. Chrysler, 809 F.3d at 1097.

First, as to Plaintiff's Application I, Plaintiff seeks to file the following documents under seal:

- Portions of Plaintiff's Memo which discuss documents and testimony designated as confidential by Defendant; and
- Exhibits 7-10, 17-20, 24-25, portions of 101, portions of 102, portions of 103, 106.[1]

(Plaintiff's Application I.) Plaintiff represents these documents should be sealed in whole or in part pursuant to a protective order entered on May 22, 2017. (Id. at 5 (citing Dkt. Nos. 50, 51).) Further, Plaintiff represents that the redacted portions of Plaintiff's Memo contain details obtained from deposition testimony and documents designated as confidential. (Id. at 5-6.) "The redacted [e]xhibits and deposition testimony all relate to internal business strategies, marketing strategies, and consumer research that is competitively sensitive and could cause DSW harm if it were in the public record and available to competitors." (Id. at 6.)

As to Defendant's Application, it seeks to seal the following documents:

- Portions of Defendant's Opposition;

---

[1] Plaintiff's proposed order does not list Exhibit 25 or Exhibit 106. (See Dkt. No. 87-1 at 3.) However, those documents are redacted as filed (see Dkt. No. 87-3) and Plaintiff requests in its Application I that those documents be filed under seal (Dkt. No. 87 at 4). Thus, the Court considers this request.

- Excerpts of the deposition transcript of Julie Roy;
- Excerpts of the deposition transcript of Amy Stephenson; and
- Excerpts of the deposition transcript of Ed Kistner.

(Defendant's Application.)  Defendant asserts there is good cause to permit the filing of the sealed versions of the documents pursuant to the protective order.  (Id. at 2-3.)  Further, the redacted portions of the Opposition and deposition transcripts "contain highly confidential and competitively sensitive information regarding DSW's internal pricing policies and marketing strategies, including vendor information, information from DSW's consumer surveys, information from its written pricing and advertising guidelines, and descriptions of confidential business meetings between DSW executives."  (Id. at 3.)

Lastly, Plaintiff's Application II seeks to seal the following documents:

- Portions of Plaintiff's Reply;
- Exhibit 107; and
- Plaintiff's Objections.

(Plaintiff's Application II.)  As before, Plaintiff moves to seal these documents pursuant to the parties' protective order.  (Id. at 3.)  Further, Plaintiff maintains these documents contain details obtained from deposition testimony designated as confidential and related to internal business strategies, marketing strategies, and consumer research that is competitively sensitive.  (Id. at 4.)

The Court finds that because these documents relate to confidential financial information and business strategy, good cause exists.  See Aevoe Corp. v. AE Tech. Co., No. 2:12-cv-00053-GMN-NJK, 2013 WL 2302310, at *1-2 (D. Nev. May 24, 2013) (finding good cause exists to seal documents that identify the plaintiffs' sales information and business strategies).  Further, the protective order encompasses the documents and information the parties request the Court to seal.  See Edwards, 2016 WL 1665793, at *5 ("Because the 'good cause' standard applied to the parties' joint motion for a protective order, which was granted, and the documents they request the Court seal fall under the Protective Order, the Court GRANTS the parties' motions to file documents under seal.")  Accordingly, the Court GRANTS Plaintiff's Application I, Defendant's Application, and Plaintiff's Application II.

## IV.   CALIFORNIA CODE OF CIVIL PROCEDURE SECTION 1021.5

### A. Legal Standard

Pursuant to Section 1021.5 of the California Code of Civil Procedure ("Section 1021.5"), "the court may award attorney fees to a successful party in any action that has resulted in the enforcement of an important right affecting the public interest if: (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the

recovery, if any." Graham v. DaimlerChrysler Corp., 34 Cal. 4th 553, 565 (2004) (internal quotation marks and citation omitted). "Whether [the plaintiff] has proved each of these criteria is a matter primarily vested in the trial court." Hogar v. Comty Dev. Comm'n of City of Escondido, 157 Cal. App. 4th 1358, 1364 (2007).

## B. Discussion[2]

### 1. "Successful Party"

In deciding whether a party constitutes a "successful party" for the purposes of Section 1021.5 the "critical fact" is "the impact of the action, not the manner of its resolution." Graham, 34 Cal. 4th at 566. "[A] plaintiff need not obtain a judgment in its favor to be a

---

[2] Plaintiff filed objections to evidence submitted by Defendant. (Plaintiff's Objections.) Plaintiff objects to the admissibility of particular excerpts of Julie Roy's deposition, upon which Defendant relies, on hearsay grounds. (Plaintiff's Objections at 1.) Plaintiff also objects to the admissibility of Dr. Itamar Simonson's expert report because Defendant did not disclose Dr. Simonson as an expert witness and failed to produce his expert report in discovery. (Id. at 10.) Lastly, Plaintiff objects to Defendant's reliance on attorney argument in a hearing on a demurrer in a separate case. (Id. at 12.)

As to Plaintiff's argument that the excerpts cited from Roy's deposition constitute hearsay as opposed to personal knowledge, the Court disagrees. First, Plaintiff assumes that Roy's testimony is based on information from other DSW employees, but offers no factual support for this proposition. Second, Roy testified as a Rule 30(b)(6) witness and thus, was not required to have personal knowledge of the facts to which she testified. See Cooper v. United Air Lines, Inc., 82 F. Supp. 3d 1084, 1096 (N.D. Cal. 2015), appeal docketed 15-15623 (Apr. 1, 2015 9th Cir.); see also 11 Moore's Federal Practice—Civil § 56.14[1][c] ("The testimony of a Rule 30(b)(6) corporate agent deponent may be presented on a motion for summary judgment, even though not based on personal knowledge, because a Rule 30(b)(6) witness need not have personal knowledge of the facts to which he or she testifies."). Thus, the Court OVERRULES Plaintiff's objection as to Roy's deposition excerpts.

As to Dr. Simonson's expert report, the Court SUSTAINS Plaintiff's objection and excludes Dr. Simonson's report. Defendant argues the expert disclosure deadline has not passed. (Defendant's Response to Plaintiff's Objections at 8.) However, the deadline lapsed in November 2017 (Dkt. No. 47) and the Court's order staying all pretrial deadlines preceded the deadline (Dkt. No. 82). Second, even if the deadline had not passed, Defendant would have had to designate Dr. Simonson as an expert prior to relying on his report. Third, simply because the report was produced in another case does not mean Dr. Simonson is not an expert here; Defendant relies on his expert opinion.

Lastly, as to the third objection regarding attorney argument, Plaintiff objects that it is impermissible hearsay. (Plaintiff's Objections at 12.) However, Defendant does not offer it for the truth of the matter asserted, and thus it does not constitute hearsay. Thus, the Court OVERRULES the objection.

successful party. Rather, a plaintiff is a successful party whenever it obtains the relief sought in its lawsuit, regardless of whether that relief is obtained through a voluntary change in the defendant's conduct . . . or otherwise." Hogar, 157 Cal. App. at 1365 (internal quotation marks and citation omitted). A plaintiff is a "successful party" under the catalyst theory if "(1) the lawsuit was a catalyst motivating the defendants to provide the primary relief sought; (2) that the lawsuit had merit and achieved its catalytic effect by threat of victory, not by dint of nuisance and threat of expense . . . and, (3) that the plaintiffs reasonably attempted to settle the litigation prior to filing the lawsuit." Tipton-Whittingham v. City of L.A., 34 Cal. 4th 604, 608 (2004).

      a.    **Plaintiff's Primary Relief Sought**

"[I]n catalyst cases, the defendant must have provided the plaintiff with the *primary* relief sought." Marine Forests Soc'y v. Cal. Coastal Comm'n, 160 Cal. App. 4th 867, 878 (2008) (emphasis in original). The parties disagree as to whether Defendant's remedial conduct was the primary relief Plaintiff's sought. Defendant contends Plaintiff primarily sought monetary relief. (Opp. at 12-14.) Defendant cites NEI Contracting & Eng'g, Inc. v. Hanson Aggregates, Inc., No. 12-CV-01685-BAS(JLB), 2017 WL 2363163, *5 (S.D. Cal. May 31, 2017), appeal docketed No. 17-55903 (June 27, 2017 9th Cir.). However, NEI is distinguishable. In NEI, the court held that the plaintiff did not demonstrate that changing the defendant's conduct was its primary objective in the case. Id. at *6. The plaintiff continued to prosecute the case even after the defendant changed its conduct. Id. This is not the case here. Immediately after learning of DSW's changed practice, Plaintiff here sought a determination that she is a successful party under a catalyst theory. (Reply at 7 (citing Dkt. No. 81).)

Defendant also relies on Marine Forests Society, but that case too is inapposite. In Marine Forests Society, the plaintiff's primary goal was to enjoin the California Coastal Commission from requiring that the plaintiff "remove an experimental man-made reef that it had planted on the ocean floor." 160 Cal. App. 4th at 870. The plaintiff wished to "preserve the artificial reef." Id. at 878. The legislature subsequently changed the Coastal Commission's governing statutes as a result of the finding that the Coastal Commission's structure violated the California Constitution. Id. The California Court of Appeal reversed the trial court's award of attorney's fees pursuant to the catalyst theory. Id. at 881. It found that the plaintiff's primary goal was to preserve the reef and not to change the Commission's structure, and the Commission "did not provide the primary relief that [the plaintiff] sought." Id. at 878-79.

In its SAC, Plaintiff seeks to enjoin Defendant from continuing its conduct (i.e., "Compare At"). (See Compl., Prayer for Relief ¶ C.) In fact, Plaintiff specifically alleged in her SAC that the Federal Trade Commission ("FTC") also describes the proper way to perform comparable price advertising and suggests using the term "Comparable Value" to describe products that are "comparable or competing—to that being advertised." (SAC ¶ 26.) Plaintiff alleges that Defendant's use of "Compare At" does not comply with FTC regulations which require the use of "Comparable Value" when the higher reference price refers to similar, but not identical, items. (Id. ¶ 90.) Again, Plaintiff seeks an injunction from Defendant's continued

violation of FTC regulations. (Id. ¶ 92.) The Court finds this sufficient to show that an injunction was the primary relief sought.

### b. Plaintiff's Lawsuit Was a Catalyst for Defendant's Remedial Conduct

Plaintiff alleges the lawsuit was a catalyst that prompted Defendant to modify its practices. (See, e.g., Mot. at 6.) Defendant contends a different factor motivated the change. (See, e.g., Opp. at 1.)

To constitute a catalyst, the lawsuit must have been a "substantial causal factor" leading to the defendant's actions. Graham, 34 Cal. 4th at 573. However, more than one cause of the defendant's conduct will not be fatal to a plaintiff's claim pursuant to the catalyst theory. Id. Further, if a lawsuit accelerated the defendant's actions, it may be a sufficient catalyst. Tazel v. City of Richmond, 2007 WL 172379, at *12 (Cal. Ct. App. Jan. 24, 2007).

Courts consider (1) "the situation immediately prior to the commencement of suit, and" (2) "the situation today, and the role, if any, played by the litigation in effecting any change between the two." Hogar, 157 Cal. App. At 1366 (internal quotation marks and citation omitted). The California Supreme Court has stated, "the defendant . . . knows better than anyone why it made the decision that granted the plaintiff the relief sought, and the defendant is in the best position to either concede that the plaintiff was a catalyst or to document why the plaintiff was not." Graham, 34 Cal. 4th at 573. The court's factual finding that the plaintiff's lawsuit was a catalyst must be supported by "substantial evidence." Godinez v. Schwarzenegger, 132 Cal. App. 4th 73. 92 (2005).

Based on the evidence submitted, the Court finds Plaintiff's lawsuit was a catalyst for Defendant's remedial conduct. See, e.g., Exh. 102, Stevenson Depo, 58:16-59:3; Exh. 103, Kistner Depo., 71:25-72:17, 73:25-74:17; Exh. 101, Roy Depo., 139:25-140:4. Defendant contests whether Plaintiff's lawsuit was a catalyst and provides an alternative explanation. (See Opp. at 1.) Defendant cites Roy's declaration, among other evidence, to support its argument. (See Exh. 101, Roy Depo., 133:15-134:16, 136:13-15, 160:22-161:1, 165:17-18, 166:10-14.) However, Defendant's evidence does not negate Plaintiff's assertion that the lawsuit was at least one of the substantial causes of the remedial efforts. See Henderson, 2013 WL 3146774, at *4 ("[t]o be a catalyst, the lawsuit must have been a 'substantial casual factor' contributing to the Defendant's conduct, though the lawsuit need not be the only cause").

### c. Plaintiff's Lawsuit Had Merit

To determine whether a lawsuit has merit, a court evaluates whether the lawsuit is "frivolous, unreasonable or groundless, in other words that its result was achieved by threat of victory, not by dint of nuisance and threat of expense." Graham, 34 Cal. 4th at 575 (internal quotation marks and citation omitted). At the minimum, "a plaintiff must establish the precise factual/legal condition that it sought to change or affect as a prerequisite for establishing the

catalytic effect of the lawsuit." Id. at 576. This finding is "not a final decision on the merits but a determination at a minimum that the questions of law or fact are grave and difficult." Id. 575-76.

Plaintiff contends her lawsuit was not frivolous (Memo. at 22), whereas Defendant argues "Plaintiff . . . cannot demonstrate that her action would win in the long-run" (Opp. at 20.) However, the question is not whether a plaintiff would ultimately succeed, but whether the lawsuit is "frivolous, unreasonable or groundless." Graham, 34 Cal. 4th at 575.

Defendant submitted a notice of supplemental authority (Dkt. No. 107), and attached a copy of Chowning v. Kohl's Dep't Stores, Inc., --- Fed. App'x ---, No. 16-56272, 2018 WL 3016908 (9th Cir. June 18, 2018) to support its argument that Plaintiff's claim lacks merit (Dkt. No. 107-1). In Chowning, the Ninth Circuit affirmed the district court's grant of summary judgment as to Kohl's Department Stores. 2018 WL 3016908, at *1. The plaintiff's first amended complaint alleged violations of California's False Advertising Law, UCL, and CLRA. 2016 WL 1072129, at *1 (C.D. Cal. Mar. 15, 2016). The plaintiff alleged the defendant's store displays included the selling price of an item as well as a significantly higher "actual retail price" ("ARP"). Id. The plaintiff claimed the ARPs were false prices and not prevailing market retail prices within the three months preceding the publication of the advertised ARPs pursuant to California law. Id. The district court granted the defendant's motion as to the monetary claims for restitution. Id.

The Ninth Circuit affirmed and rejected the plaintiff's damages model because it would award a full refund in addition to the value derived from the challenged product. Chowning, 2018 WL 3016908 at *1-2. "The proper calculation of restitution in this case is price paid versus value received." Id. at *1. The court noted that "[a]nother class action against Kohl's has already been certified regarding injunctive relief." Id. at *1 n.2. Thus, the only remaining remedies were restitution. Id. at *1, 1 n.2.

By contrast, Plaintiff's claims for injunctive relief remain. While Chowning may indicate that Plaintiff cannot pursue monetary relief under a full refund model, it does not involve injunctive relief, which is also sought by Plaintiff here. In Zaman v. Kelly Services, Inc., No. 15-CV-04601-HRL, 2017 WL 2335601, at *5, 7 (N.D. Cal. May 30, 2017), the court discussed how to calculate attorney's fees under Section 1021.5. Magistrate Judge Howard Lloyd of the Northern District of California wrote, "[a] district court may, but need not award a plaintiff who has succeed on only some of his or her claims fees for efforts related to the unsuccessful claims. [Citation omitted.] In deciding which efforts to compensate, the court first determines whether the successful and unsuccessful claims are related. [Citation omitted.]" Id. at *7. Thus, the court in Zaman implied that a plaintiff can recover attorney's fees pursuant to Section 1021.5 even if the plaintiff only has a likelihood of success on some of his or her claims. Id.; see also Henderson v. J.M. Smucker Co., No. CV 10-4524-GHK VBKX, 2013 WL 3146774, at *11 (C.D. Cal. June 19, 2013) (citation omitted) ("That Plaintiff did not obtain *every* relief she sought in this lawsuit affects the amount of, not entitle to, fees.") (emphasis in original); Robinson v. City of Chowchilla, 202 Cal. App. 4th 382, 393 (2011) ("[A] plaintiff's partial success is a factor considered in determining the amount of any fee award.").

The Court finds Plaintiff's lawsuit, at least as it relates to injunctive relief, is not frivolous. Defendant claims "[r]ecent class certification and merits determinations in similar cases have favored defendants." (Opp. at 20.) While in the abstract the Court finds the statement persuasive, Defendant does not cite authority to support that proposition. Defendant also argues it would have presented evidence which showed "lack of materiality, lack of deceptiveness, and that its Compare At prices did not affect purchase decisions." (Id.) However, as Plaintiff notes, the question is not whether Plaintiff would succeed, but whether the lawsuit was frivolous. Nonetheless, the Court finds Plaintiff has failed to carry her burden.

Plaintiff alleges she was deceived by the "Compare At" price, as she understood it to represent an original price or price at which products were previously sold. (SAC ¶ 3.) Further, she alleges that she believed the "You Save" amount was the amount she was saving compared to a price at which the products were previously sold there or elsewhere. (Id.) Plaintiff contends her claims have merit because they survived both a motion to dismiss and motion for judgment on the pleadings. (Mot. at 22; Reply at 8 ("Groundless suits do not survive both a motion to dismiss and motion for judgment on the pleadings.").)

The Graham court discussed what a plaintiff must show, as well as the inquiry a trial court must make, to determine whether a lawsuit has merit:

> Although the catalyst rule is sometimes formulated to permit an award of attorney fees as long as a lawsuit can survive a motion to dismiss or for judgment on the pleadings [citation], we see no reason to limit a trial court's inquiry regarding the merits of the case to an examination of whether the pleadings state a cause of action. When a lawsuit has been mooted by a defendant's change in conduct, some development of the factual record is required in order to prevail on a catalyst theory. At the very least, a plaintiff must establish "the precise factual/legal condition that [it] sought to change or affect" as a prerequisite for establishing the catalytic effect of its lawsuit. [Citation.] Sometimes this factual background will have been developed in the course of litigation. [Citations.] When the suit is mooted early in its prosecution (as occurred in the present case), it may generally be established during the attorney fee proceeding by declarations, or, at the discretion of the trial court, by an abbreviated evidentiary hearing. [Citations.] The trial court may review this factual background not only to determine the lawsuit's catalytic effect but also its merits. Attorney fees should not be awarded for a lawsuit that lacks merit, even if its pleadings would survive a demurrer. We believe that trial courts will be able to conduct an abbreviated but meaningful review of the merits of the litigation designed to screen out nuisance suits without significantly increasing attorney fee litigation costs.

Graham, 34 Cal. 4th at 576. In her Motion, Plaintiff presents no argument or evidence that its action had merit other than to rely on the Court's previous rulings. (Mot. at 22; Reply at 8.) However, the Court's prior decisions did not determine that Plaintiff's claims were meritorious or that its factual allegations were grounded in evidence. In Merced v. Cent. Presbyterian

Church of Merced, No. F060842, 2011 WL 6796431, at *11 (Cal. Ct. App. Dec. 28, 2011), an unpublished decision, the California Court of Appeal held that the plaintiff failed to establish its action had merit.

> In its motion for attorney fees, plaintiff did not attempt to demonstrate that its action had merit. Plaintiff simply relied on the reversal of the sanctions order as somehow establishing its action was not frivolous. Our prior decision, however, did not determine that plaintiff's action was not frivolous, that its claims were meritorious, or that its factual allegations had evidentiary support. It merely concluded defendants had not met their burden of proving plaintiff's factual allegations lacked evidentiary support. Consequently, plaintiff's motion failed to establish the second element required for an award of fees on a catalyst theory—that its action had merit.

Id.; see also Board v. Grossmont Union High Sch. Dist., No. D056606, 2011 WL 982889, at *1-2, 4-5, 8-10 (Cal. Ct. App. Mar. 22, 2011) (reversing and remanding the case to the trial court to enter judgment in favor of the defendant because the plaintiff did not "present substantial evidence that his lawsuit had merit"). Accordingly, Plaintiff has not established this element either.

### d.   Any Attempt at Pre-Litigation Settlement Would Have Been Futile

"[A] plaintiff seeking attorney fees under a catalyst theory must first reasonably attempt to settle the matter short of litigation." Id. at 577. Although "[l]engthy prelitigation negotiations are not required, . . . a plaintiff must at least notify the defendant of its grievances and proposed remedies and give the defendant the opportunity to meet its demands within a reasonable time." Id. However, this requirement may be waived when attempts to settle the matter would have been futile. See Cates v. Chiang, 213 Cal. App. 4th 791, 817 (2013).

That Plaintiff did not attempt to settle prior to initiating litigation is not in dispute. However, the parties disagree on whether pre-litigation negotiations would have been futile. Plaintiff claims pre-litigation negotiations would have been futile for several reasons: (1) Defendant continued to deny responsibility; (2) Defendant did not change its actions after Plaintiff filed the lawsuit and for a year and a half tried to "extract itself" at the pleading stage; and (3) one of Plaintiff's lawyers had previously discussed settlement with counsel for DSW in a nearly identical case and DSW's counsel indicated that her client would not consider settlement with injunctive relief unless Plaintiff survived a motion to dismiss. (Reply at 10-11.) Plaintiff cites Cates, among other cases, to support her argument that such attempts may be excused when they would have been futile. (Id. at 9 (citing Cates, 213 Cal. App. 4th at 815).)

In Cates, the trial court found that pre-litigation settlement efforts would have been futile. Id. The Court of Appeals affirmed, in part because, after the plaintiff filed the action, the defendant "continued to strongly assert that its practices were appropriate . . ." and the court could not identify any evidence "that the [defendant] would have agreed to change its

procedures in response to a prelitigation settlement offer or that negotiating with the [defendant] was a reasonable alternative to the lawsuit." Id. at 816.  The Court of Appeals also relied upon the trial court's conclusion that the plaintiff did not bring the action for "improper motivation, such as to obtain attorney fees." Id.  Finally, the court noted, "before filing its answer, the [defendant] had the full opportunity to negotiate an end to the lawsuit by providing the relief sought." Id.

By contrast, in NEI, "NEI continued to defend its prior admonition, [but] . . . had already changed its conduct moving forward—indicating it was not stalwartly opposed to modifying its phone system's admonition.  2017 WL 2363163, at *7.  Further, there is a reasonable explanation for why Hanson continued to defend its prior admonition: NEI continued to prosecute this case and pursue its primary objective of recovering sizable damages based on Hanson's past conduct." Accordingly, the court was not persuaded that notice would have been futile.  Id.  However, the court notably recognized that "[m]ost of the conduct NEI highlights occurred after Hanson had already changed its admonition, not before—minimizing its relevance." Id.

Here, the case most closely resembles Cates and is distinguishable from NEI.  Defendant did not change its conduct until January 2018 (Mot. at 11), after it filed a motion to dismiss (Dkt. No. 14), and a motion to dismiss and motion for partial judgment on the pleadings (Dkt. No. 58).  Defendant vigorously defended against suit, as evidence by its filings, thus implying that any pre-litigation notice would have been futile.  The Court finds it unnecessary to address Defendant's counsel's alleged statements with respect to Barber, because Plaintiff, even absent these statements, has shown that a reasonable settlement attempt would have been futile.  Plaintiff therefore satisfies its burden of demonstrating this requirement.

   2. **Enforcement of an Important Right Affecting the Public Interest**

A court must inquire "whether there was an important public interest at stake." Beasley v. Wells Fargo Bak, 235 Cal. App. 3d 1407, 1417, overturned on other grounds by Olson v. Automobile Club of Southern California, 42 Cal. 4th 1142 (2008).  A court examines the subject matter of the action, "i.e., whether the right involved was of sufficient societal importance." Id.  These include constitutional rights and rights enshrined in "'important'" statutes.  Woodland Hills Residents Assn., Inc. v. City Council, 23 Cal. 3d 917, 935 (1979).

Plaintiff refers the Court to Henderson v. J.M. Smucker Co., No. CV 10-4524-GHK (VBKx), 2013 WL 3146774, at *10 (C.D. Cal. June 19, 2013).  In Henderson, the court concluded that the lawsuit resulted in the enforcement of an important right affecting the public interest.  Id. at *10-11.  The plaintiff's suit alleged certain health claims violated California consumer protection laws, and the plaintiff's suit induced the defendant to remove PHVO from its product.  Id. at *10.  In McDonald v. Ford Motor Co., 142 F. Supp. 3d 884, 895-96 (N.D. Cal. 2015), the court concluded the plaintiffs satisfied this requirement and found that "having safety-related car defects recalled and repaired is an important right affecting the public interest." Citing Graham, the court recognized that the plaintiff's claims pursuant to the CLRA and UCL were "important rights affecting the public interest." Id. (citing Graham, 34 Cal. 4th at 578).

Plaintiff alleges the public will benefit because they "will no longer be deceived." (Mot. at 21.) Defendant claims this is insufficient pursuant to Equine Legal Sols., Inc. v. Buntrock, No. C 07-04976 CRB, 2008 WL 111237 (N.D. Cal. Jan. 9, 2008). In Equine Legal, the plaintiff provided legal forms at a cost and defendant Buntrock allegedly downloaded the plaintiff's forms and passed them on to its client, which posted the forms on its website for free use. Id. at *1. The plaintiff sought attorney's fees pursuant to Section 1021.5, which the court struck. Id. at *2-3. The court found the plaintiff failed to identify a public interest implicated by the suit and reference to "'honest competition'" was insufficient. Id. The court recognized that, "[i]f anything, the public arguably benefited—at [the plaintiff's] expense—from free access to documents which otherwise required a fee." Id. at *2.

Defendant also cites Baxter v. Salutary Sportsclubs, Inc., 122 Cal. App. 4th 941, 948 (2004), where the court concluded that the "trial court did not err in refusing to award attorney fees for the minuscule benefit this litigation has conferred on the public." The plaintiff claimed that the defendant, which owned and operated health clubs, violated the UCL because it failed to include specific language in its consumer contracts. Id. at 942-43. The trail court concluded that "'[t]he relief granted was a de minimus change in the defendant's contracts that did not result in a significant benefit to the public.'" Id. at 944. The Court of Appeals, affirming the trial court, held that the case was "a textbook example of valueless litigation against a private party 'under the guise of benefiting the public interest.'" Id. at 946.

The Court finds the case at bar most analogous to Henderson and McDonald. See Henderson, 2013 WL 3146774, at *10; see also McDonald, 142 F. Supp. 3d at 895-96. Both cases concerned alleged false advertising and a change in these practices was found to confer a public benefit. Plaintiff's case is distinguishable from Equine Legal, where the change sought benefited only the plaintiff and, as the court recognized, the status quo actually benefited the public. See 2008 WL 111237, at *2. There, the case concerned unfair competition between two parties, not alleged false advertising affecting the public, as is here. Further, the Court finds the facts here distinguishable from those in Baxter. The court in Baxter characterized the change or relief granted as de minimus. 122 Cal. App. 4th at 944. Here, the Court cannot characterize the change in advertising as miniscule. Thus, the Court finds Plaintiff has met its burden and shown that the case resulted in an enforcement of an important right affecting the public interest.

### 3. Significant Benefit Conferred on the General Public or a Large Class

"The Court must determine the size of the class who benefits from the relief granted." Edwards, 2016 WL 1665793, at *7. Here, the putative class includes "[a]ll California residents, who within the applicable statute of limitations, preceding the filing of this action and going forward from the date of the Complaint, purchased a DSW Exclusive Product advertised with a Compare At price and a lower actual selling price from DSW." (SAC ¶ 56.) Thus, the benefit conferred would impact a large class or significant portion of the general public.

4. **The Necessity and Financial Burden of Private Enforcement**

A court must ask "whether private enforcement was necessary and whether the financial burden of private enforcement warrants subsidizing the successful party's attorneys." In re Conservatorship of Whitley, 50 Cal. 4th 1206, 1214 (2010) (internal quotation marks and citation omitted).

   a. **Necessity**

"Private enforcement is necessary where public enforcement of a right is inadequate." Edwards, 2016 WL 1665793, at *8 (citing MacDonald, 2015 WL 6745408, at *8). Courts take into account all relevant circumstances, such as "whether anyone previously called the problem to the defendant's attention, whether attempts to settle were futile, and whether exigent circumstances required immediate resort to judicial processes." Id. (citation omitted). Defendant does not challenge whether Plaintiff's lawsuit was unnecessary, but rather contests the financial burden. (See Opp. at 14-16.) Plaintiff represents that no government agency has sought to challenge this practice. (Mot. at 25.) The Court is satisfied that private enforcement was necessary here.

   b. **Financial Burden**

"The financial burden of private enforcement warrants granting attorneys' fees under section 1021.5 where the cost of the claimant's legal victory transcends his personal interest, that is, when the necessity for pursing the lawsuit placed a burden on the plaintiff out of proportion to his individual stake in the matter." Edwards, 2016 WL 1665793, at *8 (internal quotation marks and citation omitted). This prong focuses "not only on the costs of the litigation but also any offsetting financial benefits that the litigation yields or reasonably could have been expected to yield." Whitley, 50 Cal. 4th at 1215.

A court is to estimate the value of the action when essential litigation decisions were made and then examine the costs of litigation required to bring the action to fruition. Id. A court looks at the approximate value of the class claims (not the individual claims) separate from the actual cost to determine whether attorney's fees should be awarded to encourage the type of litigation at issue. Id. A court, however, should not award attorney's fees when the anticipated value of the litigants' own monetary award is greater than the costs by a significant margin. Id. "'Private attorney general fees are not intended to provide insurance for litigants and counsel who misjudge the value of their case." NEI, 2017 WL 2363163, at *9 (quoting Satrap v. Pac. Gas & Elec. Co., 42 Cal. App. 4th 72, 79-80 (1996).

The Court concludes the record is insufficient to determine whether an award of fees pursuant to Section 1021.5 is appropriate. "[Plaintiff] bears the burden of establishing that its litigation costs transcend its personal interest." Beach Colony II v. California Coastal Comm'n, 166 Cal. App. 105, 113 (1985). Plaintiff represents in her Motion that counsel "has spent thousands of dollars in out-of-pocket costs, and hundreds of currently uncompensated hours

prosecuting this litigation." (Mot. at 25.) In Plaintiff's prayer for relief in her SAC, she seeks damages, recession (a full refund to everyone in the class), profit disgorgement, unjust enrichment, and actual and punitive damages. (SAC, Prayer for Relief.) The amount exceeds $5 million, as Plaintiff asserts jurisdiction pursuant to the Class Action Fairness Act of 2005 ("CAFA"). (Id. ¶ 39 ("the aggregate claims of the members of the putative Class exceed $5 million, exclusive of costs . . .")).

Thus, the Court cannot sufficiently compare plaintiff's individual stake to the cost of litigation and remains skeptical as to whether a determination awarding fees pursuant to Section 1021.5 would be proper. See Covenant Media of CA, L.L.C. v. City of Huntington Park, CA, 434 F. Supp. 2d 785, 787 (C.D. Cal. 2006). Further, on the present record, the Court questions whether at the time that the significant litigation decisions were made, a court-awarded fee was necessary to encourage the type of litigation involved in the action. See NEI, 2017 WL 2363163, at *7.

The Court also acknowledges that Plaintiff sought an order enjoining Defendant from continuing to violate the UCL, False Advertising Law, and CLRA. (SAC, Prayer for Relied ¶ C.) The financial burden prong appears to focus on the financial benefits and burdens. The Court considers the request for injunctive relief in the SAC to the extent it may weigh into the financial incentive to litigate. For instance, if a party only sought injunctive relief, the financial benefit may be minimal as compared to the financial costs of litigation. However, here, Plaintiff does not only seek injunctive relief, as discussed above. Accordingly, the Court finds Plaintiff does not satisfy this requirement.

## V. CONCLUSION

For the foregoing reasons, the Court DENIES Plaintiff's Motion.

**IT IS SO ORDERED.**