STEPTOE & JOHNSON LLP
STEPHANIE SHERIDAN, State Bar No. 135910
ssheridan@steptoe.com
ANTHONY ANSCOMBE, State Bar No. 135883
aanscombe@steptoe.com
MEEGAN B. BROOKS, State Bar No. 298570
mbrooks@steptoe.com
1 Market Street, Steuart Tower, Suite 1800
San Francisco, CA  94105
Telephone:  415.365.6700
Facsimile:   415.365.6699

Attorneys for Defendant
DSW INC.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMY EVANS, individually on behalf of all others similarly situated<br><br>Plaintiff,<br><br>        vs.<br><br>DSW  INC.,  an  Ohio  corporation,  and DOES 1 through 100 inclusive,<br><br>Defendant. | CASE NO. 2:16-cv-03791-JGB-SP<br><br>**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR RECONSIDERATION OF MOTION FOR DETERMINATION OF WHETHER PLAINTIFF IS A SUCCESSFUL PARTY UNDER A CATALYST THEORY**<br><br>Judge:      Jesus G. Bernal<br>Date:        January 7, 2019<br>Time:       9:00 a.m.<br>Ctrm:       1 - Riverside |

# Table of Contents

**Page**

I.    INTRODUCTION AND SUMMARY OF ARGUMENT ............................... 1

II.   BACKGROUND ........................................................................................ 2

    A.   Procedural History and Plaintiff's Original Motion ............................... 2

    B.   Plaintiff's Motion for Reconsideration ...................................................... 3

        1.   Plaintiff's Motion for Reconsideration Relies on the Same Arguments as Her Original Motion ............................................... 3

        2.   Plaintiff's "Renewed" Motion and Her Counsel's Alleged $1 Million Lodestar ........................................................................ 3

    C.   DSW's Increased Sales of Private Label Shoes in 2018 Demonstrate that "Compare At" Did not Hoodwink Customers............ 5

III.  LEGAL STANDARD ........................................................................................ 7

    A.   Motions for Reconsideration.................................................................. 7

    B.   California Civil Code § 1021.5 ............................................................ 9

IV.   ARGUMENT ................................................................................................. 10

    A.   The Court's Order Shows it Considered all Facts Before It ................. 10

    B.   The "Merits" Requirement..................................................................... 10

        1.   Plaintiff's Motion Violates L.R. 7-18 in Every Respect ............ 10

        2.   The Court Reached the Right Decision in its Original Order, and Plaintiff's Belated, Flawed Arguments Change Nothing ..................................................................................... 12

    C.   The "Financial Burden" Requirement .................................................. 14

        1.   Plaintiff's Motion Violates L.R. 7-18........................................ 14

        2.   Plaintiff Has Failed to Establish "Financial Burden," Given her Counsel's Patent Motivation for a Huge Financial Award.................................................................. 16

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR RECONSIDERATION**

a) The Value of the Case, Assessed *Ex Ante*, Substantially Exceeded Plaintiff's Litigation Costs ......... 16

b) DSW's Change to "Comparable Value" Does Not Support Plaintiff's Financial Burden Argument ............. 21

c) In Assessing Financial Burden, the Court Should Consider the Value of the Class Action as a Whole, Not Plaintiff's Individual Stake ........................................ 23

D. Plaintiff's "Renewed Motion" Should Fool No-One: It is an Unauthorized Motion for Reconsideration ........................................... 24

V. CONCLUSION ........................................................................... 25

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR RECONSIDERATION**

Doc. # DC-12725029 v.4

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*389 Orange St. Partners v. Arnold*,
    179 F.3d 656 (9th Cir. 1999) ..................................................................... 7

*In re 5-Hour Energy Mktg. and Sales Practices Litig.*,
    ML132438PSG, 2017 WL 4772567 (C.D. Cal. Aug. 11, 2017) ........................... 9

*Aarons v. BMW of N. Am., LLC*,
    2014 WL 4090564 (C.D. Cal. Apr. 29, 2014) ...................................................23

*Aventis Pharms S A v. Amphastar Pharm., Inc.*,
    CV 03-887 RT SGLX, 2005 WL 5957795, at *2 (C.D. Cal. Mar. 25,
    2005) ....................................................................................................... 8

*Barber v. DSW*,
    8:15-cv-02024 (C.D. Cal) ........................................................................... 5

*Beasley v. Wells Fargo Bank*,
    235 Cal. App. 3d 1407 (Cal. App. 1st Dist. 1991) ......................................*passim*

*In re Benham*,
    2013 WL 3872185 (C.D. Cal. May 29, 2013).................................................. 8

*Branca v. Nordstrom*,
    14-cv-02062 (S.D. Cal) .............................................................................. 5

*Branca v. Ralph Lauren Corp.*,
    14-cv-7097 (S.D.N.Y.) .............................................................................. 5

*Brown v. U.S.*,
    CR 03-847 ABC, 2011 WL 333380 (C.D. Cal. Jan. 31, 2011)............................ 7

*Bui v. Nguyen*,
    230 Cal. App. 4th 1357 (2014) .................................................................... 9

*Cabrera v. Kenneth Cole Productions*,
    15-cv-09197 (C.D. Cal) ............................................................................. 5

*Caroll v. Nakatani*,
    342 F.3d 934 (9th Cir. 2003) ............................................................. 7, 9, 15

*Chagby v. Target Corp.*,
    2009 WL 398972 (C.D. Cal. 2009) ............................................................... 10, 11

*Chen v. Allstate Ins. Co.*,
    819 F.3d 1136 (9th Cir. 2016) ............................................................................ 24

*Chloe SAS v. Sawabeh Info. Services Co*,
    CV 11-04147 GAF, 2013 WL 901986 (C.D. Cal. Jan. 31, 2013) ....................... 10

*Chowning v. Kohl's*,
    733 Fed. Appx. 404 (9th Cir. 2018) .........................................................2, 12, 15

*Christianson v. Colt Industries Operating Corp.*,
    486 U.S. 800 (1988) ........................................................................................... 7

*Collins v. City of Los Angeles*,
    205 Cal. App. 4th 140 (Cal. App. 2d Dist. 2012) .......................................... 16, 17

*In re Countrywide Fin. Corp.*,
    966 F. Supp. 2d 1031 (C.D. Cal. 2013) ............................................................... 7

*Covenant Media of CA, L.L.C. v. City of Huntington Park, CA*,
    434 F. Supp. 2d 785 (C.D. Cal. 2006) .......................................................... 19, 23

*Dairy Employees Union Local No. 17 Christian Labor Ass'n of the U.S.*
    *Pension Tr. v. Ferreira Dairy*,
    No. 5:14–CV–01295, 2015 WL 1952308 (C.D. Cal. Apr. 28, 2015) ................... 7

*Davis v. Farmers Ins. Exch.*,
    245 Cal. App. 4th 1302 (Cal. App. 2d Dist. 2016), *as modified on*
    *denial of reh'g* (Apr. 21, 2016), *review denied* (June 29, 2016) ................... 17, 21

*Duarte v. J.P. Morgan Chase Bank*,
    CV131105GHK, 2014 WL 12567787 (C.D. Cal. May 19, 2014) ...................... 14

*Enunwaonye v. Aurora Loan Servs., LLC*,
    2012 WL 952377 (C.D. Cal. Mar. 21, 2012) ........................................................ 8

*Espejo v. The Copley Press, Inc.*,
    13 Cal. App. 5th 329, 380 (Cal. App. 4th Dist. 2017) ................................... 15, 24

*Figueroa v. Gates*,
    CV00-4158ABC, 2002 WL 31572968 (C.D. Cal. Nov. 15, 2002) ............... 24, 25

Case No. 2:16-cv-03791-JGB-SP

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR RECONSIDERATION**

Doc. # DC-12725029 v.4

*Frietsch v. Refco, Inc.*,
   56 F.3d 825 (7th Cir. 1995) (Posner, J.) .............................................................. 25

*Gattinella v. Michael Ko*rs,
   14-cv-5731 (S.D.N.Y.) ................................................................................................ 5

*Gattinella v. Michael Kors*,
   14CV5731, 2016 WL 690877 (S.D.N.Y. Feb. 9, 2016) .................................. 24

*Graham v. DaimlerChrystler Corp.*,
   34 Cal. 4th 553 (2004) ........................................................................................ 3, 13

*Grandinetti v. Hyun*,
   CV 16-00470 DKW, 2017 WL 239741 (D. Haw. Jan. 19, 2017) ...................... 24

*Hall v. Dept. of Motor Vehicles*,
   26 Cal. App. 5th 182, 191-92 (Cal. App. 4th Dist. 2018), *review
   denied* (Oct. 31, 2018) ...................................................................................... 9, 21

*Health Facilities of California Mut. Ins. Co., Inc. v. British Am. Ins.
   Group*,
   10CV3736 PSG, 2011 WL 1296488 (C.D. Cal. Apr. 5, 2011) .......................... 10

*Henderson v. J.M. Smucker Co.*,
   CV104524GHK, 2013 WL 12113446 (C.D. Cal. Nov. 20, 2013) .................. 3, 15

*Hinojos v. Kohl's Corp.*,
   718 F.3d 1098 (9th Cir. 2013) .................................................................................. 4

*Horosny v. Burlington Coat Factory of California, LLC*,
   CV1505005SJOMRWX, 2016 WL 10586285 (C.D. Cal. Oct. 27,
   2016) .............................................................................................................................. 4

*Los Angeles Police Protective League v. City of Los Angeles*,
   188 Cal. App. 3d 1 (Cal. App. 2d Dist. 1986) .................................. 17, 18, 21, 24

*Lucas v. Jos. A. Bank Clothiers, Inc.*,
   3:14-cv-01631-LAB-JLB (S.D. Cal) ........................................................................ 5

*Luck v. Southern Pac. Transportation Co.*,
   218 Cal.App.3d 1 (1990) .......................................................................................... 17

*Lyons v. Chinese Hosp. Assn.*,
   136 Cal. App. 4th 1331 (Cal. App. 1st Dist. 2006) ................................... *passim*

*Maraziti v. Thorpe*,
  52 F.3d 252 (9th Cir. 1995) ................................................................. 8

*Marino v. Coach*,
  1:16-cv-1122 (S.D.N.Y.) ....................................................................... 5

*McDaniel v. Reinalt-Thomas Corp.*,
  CV1201466TJH, 2014 WL 12639092 (C.D. Cal. Oct. 8, 2014)........................ 25

*Millview Cty. Water Dist. v. State Water Res. Control Bd.*,
  4 Cal. App. 5th 759, 768-69 (2016) ............................................... 16, 19

*Negrete v. Allianz Life Ins. Co. of N. Am.*,
  CV 05-6838, 2010 WL 4536779 (C.D. Cal. Nov. 1, 2010) ............................ 10

*NEI Contracting and Engr., Inc. v. Hanson Aggregates, Inc.*,
  12-CV-01685-BAS(JLB), 2017 WL 2363163 (S.D. Cal. May 31,
  2017) ............................................................................... 17, 20, 23

*Opus Bank v. Axis Ins. Co.*,
  SACV1501058CJC, 2015 WL 12670418 (C.D. Cal. Dec. 21, 2015).................. 25

*Parkinson v. Hyundai Motor Am.*,
  796 F. Supp. 2d 1160 (C.D. Cal. 2010)................................................ 23

*Pegasus Satellite Television, Inc. v. DirecTV, Inc.*,
  318 F. Supp. 2d 968 (C.D. Cal. 2004) ................................................. 8

*Pickett v. Schwarzenegger*,
  CV 08-03955 DDP (EX), 2010 WL 140386 (C.D. Cal. Jan. 11,
  2010) ........................................................................................ 8

*Pitre v. Yamaha Motor Co., Ltd*,
  CV1408238BRO, 2015 WL 12746227 (C.D. Cal. Sept. 14, 2015)...................... 8

*Planned Parenthood v. Aakhus*,
  14 Cal. App. 4th 162 (Cal. App. 2d Dist. 1993)..................................... 22

*Press v. Lucky Stores, Inc.*,
  34 Cal. 3d 311 (1983) .................................................................. 22

*Prof. Programs Group v. Dept. of Com.*,
  29 F.3d 1349 (9th Cir. 1994) .......................................................... 8

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR RECONSIDERATION**

Doc. # DC-12725029 v.4

*Reese v. Verizon California, Inc.*,
    CV1101934SJOJEMX, 2011 WL 13193419 (C.D. Cal. Sept. 21,
    2011), *aff'd*, 498 Fed. Appx. 980 (Fed. Cir. 2012) ................................. 8

*Rougvie v. Ascena Retail Group, Inc.*,
    CV 15-724, 2016 WL 4111320 (E.D. Pa. June 29, 2016) ...................... 4

*Ryan v. California Interscholastic Fedn.*,
    94 Cal. App. 4th 1033 (Cal. App. 4th Dist. 2001) ................................ 17

*Salinas v. City of San Jose*,
    5:09-CV-04410 EJD, 2011 WL 3739555 (N.D. Cal. Aug. 23, 2011) ............... 11

*Satrap v. P. Gas & Electric Co.*,
    42 Cal. App. 4th 72 (Cal. App. 1st Dist. 1996) ............................. *passim*

*Selectron Indus. Co. v. Selectron Int'l*,
    2007 WL 5193735 (C.D. Cal. Sept. 25, 2007) ...................................... 8

*Spann v. J.C. Penney Corp.*,
    314 F.R.D. 312 (C.D. Cal. 2016) ............................................. 4, 24

*Spann v. J.C. Penney Corp.*,
    SA CV 12-0215 FMO, 2015 WL 1526559 (C.D. Cal. Mar. 23,
    2015) ...................................................................... 4

*Stathakos v. Columbia*,
    15-cv-04543 (N.D. Cal) ...................................................... 5

*Stathakos v. Columbia Sportswear Co.*,
    2018 WL 1710075 (N.D. Cal. Apr. 9, 2018) .................................... 24

*Summit Media LLC v. City of Los Angeles*,
    240 Cal. App. 4th 171 (2015) ............................................... 19

*Target Tech. Co., LLC v. Williams Adv. Materials, Inc.*,
    2008 WL 5002935 (C.D. Cal. Nov. 21, 2008) ................................. 12

*Taylor v. Nike*,
    16-cv-00661 (D. Oregon) ..................................................... 5

*Tipton-Whittingham v. City of Los Angeles*,
    34 Cal. 4th 604 (2004) .................................................. 9, 13

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR RECONSIDERATION**
Doc. # DC-12725029 v.4

*Union Pac. R.R. Co. v. Coast Packing Co.*,
   236 F. Supp. 2d 1130 (C.D. Cal. 2002) ................................................................. 9

*Watanabe v. Home Depot USA, Inc.*,
   CV025088RGKMCX, 2003 WL 24272634 (C.D. Cal. Aug. 26,
   2003) ........................................................................................................................ 8

*Yang Ming Marine Transport*, 48 F. Supp. 2d 1049, 1057 (C.D. Cal.
   1999) ................................................................................................................... 9, 12

*Young v. Levi Strauss & Co.*,
   Case No. CGC-14-541316, 29:3–11 (June 28, 2016) ........................................... 6

*Young v. PVH*,
   16-cv-1517 (C.D. Cal) ........................................................................................... 5

**Statutes**

California Civ. Code § 1021.5 ........................................................................... *passim*

Class Action Fairness Act of 2005 .......................................................................... 20

**Other Authorities**

Local Rule 7-18 ................................................................................................. *passim*

3 Witkin, Cal. Procedure, Pleading, § 93 (2d ed. 1971) ......................................... 22

60 C.J.S. Motions and Orders § 47 ......................................................................... 25

# I.   INTRODUCTION AND SUMMARY OF ARGUMENT

This District's Local Rules could not be clearer: "**No motion for reconsideration shall in any manner repeat any oral or written argument made in support of or in opposition to the original motion**." L.R. 7-18 (emphasis added). Instead, Plaintiff must either bring forth new law or evidence not available at the time of its original motion, L.R.7-18(a)-(b), or make "a manifest showing of a failure to consider material facts presented to the Court before such decision," L.R. 7-18 (c). Plaintiff's Motion for Reconsideration ("MFR") violates every one of these strictures. This Court rightly denied Plaintiff's application for a designation as the "prevailing party" (the "Original Motion"), and should deny this motion in its entirety.

In briefing Plaintiff's Original Motion, the Parties filed well over 650 pages of arguments, declarations, and exhibits. *See* Declaration of Meegan Brooks ("Brooks Decl."), Exhibit A. On August 17, 2018, "[a]fter considering all papers filed in support of, and in opposition to, the [Original] Motion," the Court denied the motion, finding that Plaintiff had failed to establish either (a) that the case had merit, or (b) that she took on a financial burden by bringing her case. Dkt. 111 (the "Order").

In direct violation of L.R. 7-18, Plaintiff's MFR rehashes arguments raised in her Original Motion; attacks factual findings and conclusions made by the Court; and introduces new case law, arguments, and evidence that that she could have raised in her Original Motion, but failed to do so. Plaintiff does not identify a single "material fact" "presented to the Court" that the Court "failed to consider," as required by L.R. 7-18 (c). She has not identified any new evidence or argument that she could not have presented with her original motion. And to the extent that new evidence exists, it favors DSW. DSW now has nearly a full year of sales experience following its change from "Compare At" to "Comparable Value". Contrary to Plaintiff's theory of the case, sales of private label shoes have gone up, not down, confirming that DSW's old signage never duped its customers. Plaintiff has neither conferred a substantial public benefit nor vindicated an important public right.

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR RECONSIDERATION**
Doc. # DC-12725029 v.4

1  This Court's ruling—although DSW respectfully disagrees with much of it—
2  reached the correct result.  Plaintiff's MFR does not justify a different outcome.
3  Instead, it asks the Court to reward piecemeal litigation and gamesmanship.  DSW
4  respectfully requests that the Court deny Plaintiff's MFR.

## II.    BACKGROUND

### A.    Procedural History and Plaintiff's Original Motion

7  DSW's change in pricing signage has mooted Plaintiff's claim for injunctive
8  relief, and *Chowning v. Kohl's*, 733 Fed. Appx. 404 (9th Cir. 2018) put a definitive nail
9  in the coffin of her baseless claim for monetary relief.[1]  DSW's alleged misconduct
10 caused exactly $0 of economic harm to consumers, and had exactly zero (0) impact on
11 consumer behavior.  Plaintiff should either have not filed this meritless case, or should
12 have walked away long ago.  Instead, she has doubled down on her quest for fees.

13 Plaintiff filed this case 29 months ago, in June 2016, contending that DSW
14 deceives customers by listing "Compare At" prices for private label items: other
15 retailers do not sell these exact items, so DSW cannot claim that they have a "Compare
16 At" price.  In 2017, DSW reached an internal decision to change its pricing displays to
17 say "Comparable Value" instead of "Compare At," effecting this change in California
18 stores in January 2018.  In November, 2017, Plaintiff's counsel initiated discovery in
19 support of a catalyst theory.  *See* Stipulation, Dkt. 81 at 1.  Plaintiff has now spent
20 nearly a year litigating this case **after** learning that DSW would implement a change
21 that has mooted her claim.

---

25 [1] *See* MFR at 6 (arguing that she "obtained the precise factual/legal condition that she
26 was [sic] sought to change."); *id.* at 5 n.3 ("Following the Court's decision in *Chowning*
27 ... Ms. Evans injunctive relief claims are the only viable remaining claims.");
   Stipulation, Dkt. 81 at 1 ("the primary contested issue remaining between the parties is
28 whether Plaintiff is entitled to attorney's fees, and if so, in what amount.").

### B.    Plaintiff's Motion for Reconsideration

#### 1.    Plaintiff's Motion for Reconsideration Relies on the Same Arguments as Her Original Motion

Plaintiff's Motion for Reconsideration repeats the same arguments made in her Original Motion.  Namely, Plaintiff argues that she has satisfied California Civ. Code § 1021.5's "merits" prong by showing that her lawsuit is not frivolous, and has satisfied the "financial burden" prong by alleging that her litigation costs exceed the amount the she stood to gain from the case.  Attached as Exhibit B to the Declaration of Meegan Brooks is a non-exclusive catalogue of Plaintiff's repeated arguments.

While Plaintiff's arguments are not new, she supports each argument with cases not cited previously.  Of the 29 cases cited in the MFR, only 6 are in the Original Motion: *Cates, Colgan, Graham, Henderson, Lyons,* and *MacDonald.*  Every single one of the newly cited decisions existed at the time of Plaintiff's Original Motion.

#### 2.    Plaintiff's "Renewed" Motion and Her Counsel's Alleged $1 Million Lodestar

The caption of Plaintiff's MFR describes the motion as being a "Motion for Reconsideration … or in the Alternative Plaintiff's Renewed Motion."  Plaintiff does not explain how a "renewed" motion differs from a motion for reconsideration. Nothing new has happened in this case since the Court denied her Original Motion. Plaintiff did not seek leave to file a renewed motion.  Instead, she states that "language used in the Court's interlocutory Order indicates that the Court would be receptive to receiving additional information to effectively evaluate the financial burden prong of the catalyst test."  MFR at 2.

Plaintiff's "renewed motion" appears to raise only a single issue: that the Court should consider her counsel's $1,040,290.80 lodestar in deciding whether she has satisfied Section 1021.5's financial burden prong.  *See* MFR at 2 ("Ms. Evans requests that this Motion be treated as a renewed catalyst motion … [based on] additional information [concerning] the financial burden prong of the catalyst test."); *see also id.*

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR RECONSIDERATION**

Doc. # DC-12725029 v.4

15 fn.7 (requesting leave to supplement record as to cost of litigation).  Plaintiff has not explained why she could not have advised the Court of her lodestar at the time of her Original Motion, or in her reply.   A lodestar of this magnitude does not happen overnight (although about half of it arose *after* DSW changed its pricing displays).

Plaintiff's motion glosses over the big financial incentives she had to bring this action.  At the time Plaintiff filed this case, nearly 100 lawsuits had been filed across the country against retailers for their price advertising practices. Brooks Decl. ¶ 4.  In the months before and after Plaintiff filed this action, several retailers paid huge settlements and big fee awards.  *See, e.g. Spann v. J.C. Penney Corp.*, 314 F.R.D. 312, 317 (C.D. Cal. 2016) ($50 million California-only settlement, including $13,500,000 in attorneys' fees and a $10,000 incentive award to the plaintiff); *Rougvie v. Ascena Retail Group, Inc.*, CV 15-724, 2016 WL 4111320 at *2 (E.D. Pa. June 29, 2016) ($50.8 million nationwide settlement, including $14.1 million in attorneys' fees and a $6,000 incentive fee for each of the eight plaintiffs); *Horosny v. Burlington Coat Factory of California, LLC*, CV1505005SJOMRWX, 2016 WL 10586285, at *6 (C.D. Cal. Oct. 27, 2016) (parties reached  $29,667,500 million settlement but court denied preliminary approval); *see also* Dkt. 92 at 17 ("Evans' lawsuit is meritorious, and is nearly identical to numerous other similar pricing lawsuits that successfully secured millions in damages and comparable practice changes to those obtained here.").  Indeed, in the months following the *Spann* and *Rougvie* settlements—when Plaintiff's counsel first sued DSW using sham plaintiffs—the number of pricing suits, and the number of plaintiff's firms bringing these cases, each more than doubled.  Brooks Decl. ¶ 4.

Decisions like and *Hinojos v. Kohl's Corp.*, 718 F.3d 1098 (9th Cir. 2013) and *Spann v. J.C. Penney Corp.*, SA CV 12-0215 FMO, 2015 WL 1526559 (C.D. Cal. Mar. 23, 2015) emboldened the plaintiff class action bar to believe that that such class actions could easily survive the pleadings stage, and could obtain full or substantial refunds for all goods sold to the public using allegedly deceptive reference pricing.

Plaintiff's counsel brought numerous similar lawsuits against other retailers.[2]

Plaintiff's purported lodestar is a farce.  Her professed $1,040,290.80 of uncompensated fees is a testament to bloated rates, inefficiency, and lack of counsel's accountability to any client who actually directs their work or pays their fees.  Plaintiff does not claim that she has incurred any of the costs or expenses her counsel has allegedly incurred.  More importantly, even if her counsel's lodestar were rock solid, it does nothing to bolster their request to be designated as the "prevailing party."  This action has not been an altruistic endeavor by an underfunded public interest group, or the David and Goliath story of one consumer bringing a "righteous case" (MFR at 16, 14 – "Ms. Evans had limited litigation resources, DSW does not"), but a quest for money by sophisticated, well-funded plaintiff class action counsel who invested in a portfolio of pricing lawsuits, with the hopes that some of them would lead to $50 million payouts.  They saw a huge financial upside to pursue this case.

## C.    DSW's Increased Sales of Private Label Shoes in 2018 Demonstrate that "Compare At" Did not Hoodwink Customers

Although Plaintiff has not come forward with any new evidence, the passage of time has allowed consumers to cast their votes as to what they think of the purported benefit that Plaintiff has bestowed on them.  Sales data collected over the course of 2018 proves what DSW has consistently maintained: "Compare At" pricing does not deceive customers.  DSW customers have bought more private label shoes, not fewer, as Plaintiff's theory of the case would hold.

---

[2] Prior to filing the present suit, Plaintiff's had counsel filed *Barber v. DSW,* 8:15-cv-02024 (C.D. Cal); *Branca v. Nordstrom,* 14-cv-02062 (S.D. Cal); *Young v. PVH,* 16-cv-1517 (C.D. Cal); *Cabrera v. Kenneth Cole Productions*, 15-cv-09197 (C.D. Cal); *Marino v. Coach*, 1:16-cv-1122 (S.D.N.Y.); *Taylor v. Nike,* 16-cv-00661 (D. Oregon); *Adame v. Guess*, BC579128 (Los Angeles); *Stathakos v. Columbia*, 15-cv-04543 (N.D. Cal); *Farwell v. Levi Strauss,* CGC14541316 (San Francisco); *Gattinella v. Michael Kor*s, 14-cv-5731 (S.D.N.Y.); *Lucas v. Jos. A. Bank Clothiers, Inc.,* 3:14-cv-01631-LAB-JLB (S.D. Cal); and *Branca v. Ralph Lauren Corp.*, 14-cv-7097 (S.D.N.Y.).

Plaintiff has claimed that replacing "Compare At" with "Comparable Value" allows customers to avoid purchases based on a misbelief that DSW's private brand shoes are sold elsewhere for higher prices.  But the opposite is true.  Sales have gone up.  This creates a strong inference that customers either have not regarded these in-store price comparisons as "material," have never believed them in the first place, or have always regarded "Compare At" and "Comparable Value" as synonymous ways to make comparisons to similar but non-identical merchandise sold elsewhere.  Plaintiff's own lawyer shared this latter view: "'[C]ompare at' … in my mind and according to the guidelines, is a comparable price value. That is where, I think, it's more reasonable for a plaintiff to interpret that similar products might be out there at the same price." *See* Dkt. 15-2, Transcript from Demurrer, *Young v. Levi Strauss & Co.*, Case No. CGC-14-541316, 29:3–11 (June 28, 2016).

When DSW opposed Plaintiff's Original Motion on May 8, 2018, it had only a few months of experience with the new price label language.  At that time, Julie Roy, DSW's Vice President – Customer Relationship Management, Digital and Analytics, stated:

> As of the date of this declaration, I do not believe that the switch in terminology for DSW's reference prices has had any discernible impact on DSW's sales. … [I]t is my belief that our sales since the beginning of the year do not appear to have experienced any changes that would be inconsistent with historical observations… I have heard no-one within DSW suggest that the change to "Comp. Value" has impacted sales or customer experience in any way.

Dkt. 92-2, ¶ 3.  Ms. Roy has updated her declaration to include information about sales from the rest of 2018.  *See* Declaration of Julie Roy ("Roy Decl.").   As her updated declaration explains, DSW sold more private label shoes in 2018 than ever before, both in terms of units and dollars.  Roy Decl. ¶ 3.  These sales records thus confirm the opinions of Roy and other members of DSW's Marketing team—that "Compare At" did not trick customers into making purchases.

DSW respectfully submits that this new sales information supports the Court's

-6-

1    denial of Plaintiff's motion.  *See also* L.R. 7-18(b).  The change to "Comparable Value"

2    did not result "in an enforcement of an important right affecting the public interest,"

3    and most certainly did not confer a significant benefit on the general public or a large

4    class.  Order at 111, 115.  Instead, consumers apparently could not have cared less.

5    **III.    LEGAL STANDARD**

6        **A.    Motions for Reconsideration**

7          A motion for reconsideration is an "extraordinary remedy, to be used sparingly in

8    the interest of finality and conservation of judicial resources," and thus "should not be

9    granted, absent highly unusual circumstances, unless the district court is presented with

10   newly discovered evidence, committed clear error, or if there is an intervening change

11   in controlling law." *Caroll v. Nakatani*, 342 F.3d 934, 945 (9th Cir. 2003) (quoting

12   *Kona Enterprises, Inc. v. Est. of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000)).[3]

13         This district permits motions for reconsideration in only three circumstances:

14       (a) a material difference in fact or law from that presented to the Court

15       before such decision that in the exercise of reasonable diligence could not

    have been known to the party moving for reconsideration at the time of

16       such decision, or (b) the emergence of new material facts or a change of

17       law occurring after the time of such decision, or (c) a manifest showing of

    a failure to consider material facts presented to the Court before such

18       decision.

19   L.R. 7-18; *see also In re Countrywide Fin. Corp.,* 966 F. Supp. 2d 1031, 1036 (C.D.

20   Cal. 2013) ("Motions for reconsideration are governed by … Local Rule 7-18").  Local

21   

22       [3] *See also Christianson v. Colt Industries Operating Corp.*, 486 U.S. 800, 817 (1988)

23   ("[C]ourts should be loathe to [revisit prior decisions] in the absence of extraordinary

    circumstances such as where the initial decision was 'clearly erroneous and would work

24   a manifest injustice.' ") (citation omitted); *389 Orange St. Partners v. Arnold*, 179 F.3d

    656, 665 (9th Cir. 1999) ("a motion for reconsideration should not be granted, absent

25   highly unusual circumstances"); *Dairy Employees Union Local No. 17 Christian Labor

26   Ass'n of the U.S. Pension Tr. v. Ferreira Dairy*, No. 5:14–CV–01295, 2015 WL

    1952308, at *1 (C.D. Cal. Apr. 28, 2015) (same); *Brown v. U.S.*, CR 03-847 ABC,

27   2011 WL 333380, at *2 (C.D. Cal. Jan. 31, 2011) (motions for reconsideration are

28   "disfavored[,] rarely granted," and "subject to stringent standards.").

1  Rules such as L.R.-18 have the "force of law" and are binding upon the parties and upon

2  the Court, and a departure from local rules that affects "substantial rights" requires

3  reversal.  *Prof. Programs Group v. Dept. of Com.*, 29 F.3d 1349, 1353 (9th Cir. 1994)

4  (citation omitted).  The Court must deny a motion not made on any of the grounds

5  enumerated in L.R. 7-18 as "procedurally improper."  *Selectron Indus. Co. v. Selectron*

6  *Int'l*, 2007 WL 5193735, at *4 (C.D. Cal. Sept. 25, 2007); *see also Pitre v. Yamaha*

7  *Motor Co., Ltd*, CV1408238BRO, 2015 WL 12746227, at *4-5 (C.D. Cal. Sept. 14,

8  2015) (L.R 7-18 restricts the inherent power to modify an interlocutory order).

9  Additionally, L.R. 7-18 expressly bars motions that "in any manner repeat"

10  arguments made in support of the original motion.  *Reese v. Verizon California, Inc.*,

11  CV1101934SJOJEMX, 2011 WL 13193419, at *2 (C.D. Cal. Sept. 21,

12  2011), *aff'd*, 498 Fed. Appx. 980 (Fed. Cir. 2012) (quoting L.R. 7-18); *see also Pickett*

13  *v. Schwarzenegger*, CV 08-03955 DDP (EX), 2010 WL 140386, at *3 (C.D. Cal. Jan.

14  11, 2010) (denying reconsideration where movant "ignore[d] Local Rule 7-18's

15  injunction against repeating arguments"); *Watanabe v. Home Depot USA, Inc.*,

16  CV025088RGKMCX, 2003 WL 24272634, at *2 (C.D. Cal. Aug. 26, 2003) (same).[4]

17  The fact that a party may disagree with the Court's application of legal precedent is

18  irrelevant.  *Pegasus Satellite Television, Inc. v. DirecTV, Inc*., 318 F. Supp. 2d 968, 981

19  (C.D. Cal. 2004); *In re Benham*, 2013 WL 3872185, at *9 (C.D. Cal. May 29, 2013).

20  Parties also cannot make "a manifest showing of a failure to consider material

21  facts" by merely claiming that the Court failed to consider certain legal arguments.  *See*

22  *Aventis Pharms S A v. Amphastar Pharm., Inc.*, CV 03-887 RT SGLX, 2005 WL

23  5957795, at *2 (C.D. Cal. Mar. 25, 2005) (although a plaintiff "may disagree with [the

24  court's] application of the facts to the law, [that] is not 'a manifest showing of a failure

25  to consider material facts.' "); *Enunwaonye v. Aurora Loan Servs., LLC,* 2012 WL

---

26
27  [4] Local Rule 7-18 aside, repeating arguments does not demonstrate the kind of "extraordinary circumstance" required to warrant reconsideration.  *Maraziti v. Thorpe*, 52 F.3d 252, 255 (9th Cir. 1995).

28

-8-

1    952377, *2 (C.D. Cal. Mar. 21, 2012) (same).

2         Nor can Plaintiff use a motion for reconsideration "to raise arguments or present

3    evidence for the first time when they reasonably could have been raised earlier."

4    *Carroll*, 342 F.3d at 945 (9th Cir. 2003) (citing *Kona,* 229 F.3d at 890); *see also  Union*

5    *Pac. R.R. Co. v. Coast Packing Co.*, 236 F. Supp. 2d 1130, 1137 (C.D. Cal. 2002)

6    (citing *Yang Ming Marine Transport*, 48 F. Supp. 2d 1049, 1057 (C.D. Cal. 1999))

7    (same);  *In re 5-Hour Energy Mktg. and Sales Practices Litig.*, ML132438PSG, 2017

8    WL 4772567, at *4 (C.D. Cal. Aug. 11, 2017) ("***[m]otions for reconsideration are not***

9    ***intended to afford the movant an opportunity for a do-over***.") (emphasis added)

10   (citing *Frietsch v. Refco, Inc.*, 56 F.3d 825, 828 (7th Cir. 1995) (Posner, J.) ("Were

11   such a procedure to be countenanced, some lawsuits really might never end…")).

12   **B.    California Civil Code § 1021.5**

13        A party seeking attorney fees under California Civ. Code § 1021.5 bears the

14   burden of proving that: (1) the action has resulted in the enforcement of an important

15   right affecting the public interest; (2) a significant benefit has been conferred on the

16   general public; (3) the financial burden of private enforcement warrants subsidizing the

17   successful party's attorneys; and (4) private enforcement was necessary.  *Bui v.*

18   *Nguyen*, 230 Cal. App. 4th 1357, 1368 (2014) (citations omitted).

19        Additionally, where, as here, the case has not resulted in a judgment, a plaintiff

20   must also establish: (5) the plaintiffs reasonably attempted to settle the litigation prior

21   to filing the lawsuit; (6) the lawsuit had merit and "achieved its catalytic effect by threat

22   of victory, not by dint of nuisance and threat of expense"; and (7) the lawsuit was a

23   catalyst motivating the defendants to provide the "primary relief" sought. *Tipton-*

24   *Whittingham v. City of Los Angeles*, 34 Cal. 4th 604, 608 (2004).

25        The moving party bears "[t]he burden [of] establish[ing] each prerequisite to an

26   award of attorney fees under section 1021.5." *Bui,* 230 Cal. App. 4th at 1365 (citation

27   omitted).   Thus, even if the plaintiff satisfies all but one of Section 1021.5's

28   requirements, a catalyst motion should be denied.  *See, e.g. Hall v. Dept. of Motor*

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR RECONSIDERATION**

*Vehicles*, 26 Cal. App. 5th 182, 191-92 (Cal. App. 4th Dist. 2018), *review denied* (Oct. 31, 2018) (plaintiff was not entitled to sees under Section 1021.5 because he failed to satisfy the "financial burden" requirement); *see also Satrap v. P. Gas & Electric Co.*, 42 Cal. App. 4th 72, 81 (Cal. App. 1st Dist. 1996) ("[W]here the court finds that the one of the statutory criteria [under 1021.5] is *not* met, it is unnecessary to make findings concerning the remaining criteria.").

## IV.   ARGUMENT

### A.    The Court's Order Shows it Considered all Facts Before It

The Court "need not, and [is] not required to, address every single . . . argument in [a party's brief], in the Order," to avoid committing error on which a reconsideration motion might properly be based.  *Chagby v. Target Corp.*, 2009 WL 398972, at *1 (C.D. Cal. 2009); *see also Negrete v. Allianz Life Ins. Co. of N. Am.*, CV 05-6838, 2010 WL 4536779, at *5 (C.D. Cal. Nov. 1, 2010) ("Local Rule 7-18(c) does not require the Court to address in its Order every single piece of evidence [a party] submits, or argument in [a party's] briefs.") (citation omitted).

Even so, the Court here <u>did</u> make clear that it considered all of the facts submitted by the Parties when deciding that Plaintiff had not met her burdens under Section 1021.5.  *See* Order at 1 "(After considering all papers filed in support of, and in opposition to, the Motion"); *id.* at 2-4 (listing by name every declaration and exhibit the Court considered); *see also Chloe SAS v. Sawabeh Info. Services Co*, CV 11-04147 GAF, 2013 WL 901986, at *5 (C.D. Cal. Jan. 31, 2013) ("The Court read and considered all of . . . [the] arguments and issued a comprehensive order which addressed every material argument that bore on the proper resolution of the motion. More is not required."); *Health Facilities of California Mut. Ins. Co., Inc. v. British Am. Ins. Group,* 10CV3736 PSG, 2011 WL 1296488, at *4 (C.D. Cal. Apr. 5, 2011) (same).

### B.    The "Merits" Requirement

#### 1.    Plaintiff's Motion Violates L.R. 7-18 in Every Respect

Plaintiff argues that the Court's findings that the case is not frivolous, and that

-10-

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR RECONSIDERATION**

DSW had made a change that Plaintiff sought by bringing this case, compel a finding that the case had merit.  These arguments violate L.R. 7-18 in every respect.

**First**, Plaintiff has already made these arguments.  L.R. 7-18; *see also* Original Motion at 22, Corrected Reply in Support of Original Motion  (Dkt. 99, "Original Reply") at 7-8.

**Second**, the Court already considered these arguments. Order at 10-11 (analyzing whether suit is frivolous and the "prerequisite" that plaintiff establish that the plaintiff sought the particular change that was made).  Indeed, Plaintiff bases her argument for reconsideration on the court's analysis of these issues.  MFR at 5-9 (quoting Order repeatedly); *see also Salinas v. City of San Jose*, 5:09-CV-04410 EJD, 2011 WL 3739555, at *2-3 (N.D. Cal. Aug. 23, 2011) ("the court must have read and considered the defendant's [argument] because it commented on one of the cases" cited).

**Third**, Plaintiff's argument does not identify a single "material fact;" instead, it relies on purely legal arguments concerning how the court should weigh various factors in determining whether a suit has merit.  *Chagby v. Target Corp.*, 2009 WL 398972, at *1 (C.D. Cal. 2009) ("Plaintiff's arguments in this Motion are legal ones and Plaintiff's argument that we failed to consider material facts is misplaced").

**Fourth**, Plaintiff has not brought forward anything she could not have brought forward previously.  She criticizes the Court for "Overlook[ing] Evidence Showing that Consumers Were Deceived by DSW's 'Compare At' Pricing."  MFR at 9.  Plaintiff's Original Motion did not rely on any such evidence to support her "merits" argument. Instead, the one paragraph in Plaintiff's original motion concerning "merits" focused primarily on the fact that Plaintiff had survived a motion to dismiss and a motion for judgment on the pleadings. Original Motion at 22; *see also* Original Reply at 7-8 (arguing that "Groundless suits do not survive both a motion to dismiss and a motion for judgment on the pleadings," but not referencing any evidence to support merits determination).  It therefore makes sense that the Court's Order addressed that argument.  Order at 12-13.  Plaintiff cannot use her MFR for "a second bite at the

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR RECONSIDERATION**

Doc. # DC-12725029 v.4

1   apple," in order to raise new arguments after the Court rejected her previous arguments.

2   *Target Tech. Co., LLC v. Williams Adv. Materials, Inc.*, 2008 WL 5002935, at *21

3   (C.D. Cal. Nov. 21, 2008); *see also Yang Ming*, 48 F. Supp. 2d at 1057.

4         Despite Plaintiff's failure to cite DSW's internal documents in support of her

5   merits argument, the Court clearly did consider Plaintiff's alleged "evidence" when

6   ruling on Plaintiff's Original Motion.  *See* Order at 1-3, 6-7 (discussing the documents

7   and noting that "Plaintiff's Motion is only tangentially related to the merits of

8   Plaintiff's claims"), 10.  If the evidence actually supported an argument that "Compare

9   At" was deceptive—which is does not—the Court likely would have mentioned such

10  evidence.  In any event, DSW's increased sales volumes over the last year utterly refute

11  Plaintiff's claim that "Compare At" prices deceived customers, or that the new

12  language, "Comparable Value," has substantially benefited consumers.[5]

13        **2.**      **The Court Reached the Right Decision in its Original Order,**

14                  **and Plaintiff's Belated, Flawed Arguments Change Nothing**

15        Despite the Court's correct conclusion that Plaintiff failed to offer support for her

16  claim that her suit had merit, Plaintiff again fails to offer any such evidence.  Order at

17  12-13 (citing *Merced v. Cent. Presbyterian Church of Merced*, 2011 WL 6796431, at

18  *11 (Cal. Ct. App. Dec. 28, 2011); *Board v. Grossmont Union High Sch. Dist.*, 2011

19  WL 982889, at *1-2, 4-5, 8-10 (Cal. Ct. App. Mar. 22, 2011)).

20        Plaintiff had the burden to show that her case had merit, but her Original Motion

21  offered only two conclusory sentences stating that Plaintiff had survived a motion to

22  dismiss and motion for judgment on the pleadings, and that DSW had made the change

23  Plaintiff sought.  *See* Original Motion at 22; Original Reply at 8 ("Groundless suits do

---

[5] One aspect of the Court's August 17, 2018 order with which DSW disagrees is the Court's comment (Dkt. 111 at 8 n.2) that expert disclosure deadlines may have passed. On February 7, 2018, this Court stayed all pretrial deadlines pending the Ninth Circuit's decision in *Chowning*.  Dkt. 81; *see also* Dkt. 74 and 78 (granting previous stipulations to extend the expert disclosure deadline).  Should this case proceed forward, DSW will request that expert disclosure deadlines be reset.

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR RECONSIDERATION**
Doc. # DC-12725029 v.4

1   not survive both a motion to dismiss and motion for judgment on the pleadings"). In

2   her MFR, Plaintiff no longer argues that surviving a motion to dismiss proves her case

3   has merit. This is likely because the California Supreme Court has rejected that

4   argument: "Attorney fees should not be awarded for a lawsuit that lacks merit, even if

5   its pleadings . . . survive a demurrer." *Graham v. DaimlerChrystler Corp.*, 34 Cal. 4th

6   553, 576 (2004); *see also* Opp. to Original Motion at 20; Order at 12.

7      Plaintiff correctly notes that in order to satisfy Section 1021.5, she must establish

8   "the precise factual/legal condition that [she] sought to change or affect as a

9   prerequisite for establishing the catalytic effect of the lawsuit." MFR at 2-3 (quoting

10  *Graham*, 34 Cal. 4th at 576); *see also* Original Motion at 22 (quoting same language).

11  But that showing does not prove "merit," and in any event, the Court considered this

12  argument, twice quoting this language from *Graham*. Order at 10-11, 12. What the

13  Court recognized, but Plaintiff does not, is that *Graham* states the movant must make

14  this showing "at the very least" and "as a prerequisite." *Graham*, 34 Cal. 4th at 576.

15  The fact that a plaintiff must show that a change was made, "as a prerequisite" to

16  satisfying Section 1021.5 as a whole, does not mean such a showing in itself suffices to

17  establish merit. Rather, under Section 1021.5, Plaintiff has separate burdens to

18  establish that "(1) the lawsuit was a catalyst motivating the defendants to provide the

19  primary relief sought;" <u>and</u> "(2) that the lawsuit had merit <u>and</u> [3] achieved its catalytic

20  effect by threat of victory, not by dint of nuisance and threat of expense." *Tipton–*

21  *Whittingham*, 34 Cal.4th at 608 (emphasis added) (citing *Graham*). Plaintiff's reliance

22  on the "primary relief" evidence to prove "merit" and "catalytic effect by threat of

23  victory" collapses these three separate requirements into one.

24     DSW's internal documents do not help Plaintiff. As DSW explained in

25  Opposition to Plaintiff's Motion, these documents do not show that "Compare At"

26  pricing is deceptive or material to consumers. *See* Opp. to Original Motion at 2-3, 6-7.

27  To the contrary, they show that customers care more about the out-the-door price than

28  any reference price, a sentiment echoed by DSW's corporate representatives familiar

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR RECONSIDERATION**

with DSW's customers.  *Id*.  And in any event, record breaking sales of private label shoes in 2018 offers powerful evidence that "Compare At" pricing did not dupe people into buying shoes.  Roy Decl. ¶ 3.

Lastly, Plaintiff now argues in support of her "financial burden" showing that this case has had a "remote," "extremely difficult," and "low[] probability of success" from the start.  MFR  at 14, 12; *see also* id. at 3 ("at that time, there was a very real risk the lawsuit would be entirely unsuccessful").  She argues that "it is safe to say that Ms. Evans' 'likelihood of success was no greater than 50 percent, and probably much less'" at the time of filing, estimating "a one-third chance of ultimate victory." *Id*. at 14. DSW agrees that this case had a very low chance of success (because DSW's "Compare At" pricing deceived no one and caused no harm), but arguing lack of merit is a strange way for Plaintiff to prove that her case had merit.

### C. The "Financial Burden" Requirement

#### 1. Plaintiff's Motion Violates L.R. 7-18

As in her Original Motion, Plaintiff argues that she has satisfied the "financial burden" prong because her litigation expenses outweigh her personal stake in the lawsuit. Original Motion at 25; MFR at 11.  The Court's Order held that Plaintiff failed to meet her burden to make such a showing.  Order at 16-17.

Plaintiff's MFR asks for a do-over.  Her Original Motion dedicated a mere four sentences to the "financial burden" prong, while Plaintiff's MFR dedicates ten pages to it.  MFR at 11-20.  This Court should reject Plaintiff's new arguments and case citations out-of-hand.  They offer nothing that Plaintiffs could not have provided earlier, and violate L.R. 7-18.  *See Duarte v. J.P. Morgan Chase Bank*, CV131105GHK, 2014 WL 12567787, at *1 (C.D. Cal. May 19, 2014) ("[A] mere attempt by [the moving party] to reargue its position by directing this Court to additional case law and ... argument[s] which [it] clearly could have made earlier, but did not ... is not the purpose of motions for reconsideration under ... Local Rule [7-18].") (quoting *Yang Ming*, 48 F. Supp. 2d at 1057).

1    Plaintiff's MFR argues that the Court should have considered Plaintiff's low
2  likelihood of success when determining Plaintiff's stake in the lawsuit. MFR at 12-15.
3  Leaving aside the absurdity of rewarding counsel for bringing a bad case, Plaintiff
4  knew all the facts essential to her argument when she filed her Original Motion.  She
5  simply did not raise them.  For example, the Original Motion does not cite *L.A. Police
6  Protective League*, *Espejo*, or *Beasley*—three of the cases on which Plaintiff now most
7  heavily relies—or *Chowning* or *Davidson*, which now form the basis for Plaintiff's
8  argument now that she only had a one-in-three chance of succeeding on the merits. *Id.*
9  at 12-13.  All of these cases existed at or before the time she filed her motion, and
10  cannot provide a basis for reconsideration.  *Carroll*, 342 F.3d at 945.

11    Plaintiff also argues that a finding of "financial burden" is supported because the
12  primary relief she sought was injunctive, and because DSW's change to "Comparable
13  Value" conferred a substantial public benefit.  MFR at 4.  But these are not "material
14  facts" "presented to the Court" that the Court "fail[ed] to consider."  L.R. 7-18(c).

15    *First*, they are not "material facts"—they are legal arguments as to how the Court
16  should have weighed certain factors regarding "financial burden."  Plaintiff's "attempt
17  to surreptitiously reframe these legal arguments as a failure to consider material facts
18  does not transform them into a proper basis for reconsideration." *Henderson v. J.M.*
19  *Smucker Co.*, CV104524GHK, 2013 WL 12113446, at *3 (C.D. Cal. Nov. 20, 2013).

20    *Second*, Plaintiff's Original Motion did not "present[] [these arguments] to the
21  Court" with respect to the financial burden prong.  L.R. 7-18(c); Original Motion at 25.

22    *Third*, the Court <u>did</u> consider these factors, but still denied Plaintiff's Original
23  Motion.  As with the "merits" prong, Plaintiff bases her argument on the Court's
24  opinion.  *See* MFR at 11, 13, 15, 17, 18, 19 (quoting the Order).

25    In her "renewed" motion, Plaintiff claims that her counsel's lodestar was over $1
26  million.  But they knew their own lodestar when they filed their Original Motion and
27  Reply.  Plaintiff could have provided it then if she thought it helped her argument.
28  The amount of Counsel's lodestar, moreover, does nothing to support Plaintiff's

Case No. 2:16-cv-03791-JGB-SP

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR RECONSIDERATION**

Doc. # DC-12725029 v.4

arguments.  Plaintiff's Original Motion argued that "Plaintiff's counsel has spent thousands of dollars in out-of-pocket costs, and hundreds of currently uncompensated hours prosecuting this litigation." Original Motion at 25; *see also* Original Reply at 18 ("Her counsel has expended hundreds of hours of time, and spent thousands of dollars despite the risk they may not recover.").  Putting an exact figure on their lodestar does not change the analytical calculus.

Finally, Plaintiff argues that the Court should have focused on her individual stake in the case, rather than her and her counsel's interest in the total value of the case. Plaintiff made this exact argument in her Original Motion, which did not cite any class action cases on this point.  *See* Original Motion at 25; Original Reply at 19.

### 2.   Plaintiff Has Failed to Establish "Financial Burden," Given her Counsel's Patent Motivation for a Huge Financial Award

The California Court of Appeal has repeatedly made clear that an award under Section 1021.5 is not warranted where "the plaintiff had a 'personal financial stake' in the litigation 'sufficient to warrant [the] decision to incur significant attorney fees and costs in the vigorous prosecution' of the lawsuit." *Millview Cty. Water Dist. v. State Water Res. Control Bd.*, 4 Cal. App. 5th 759, 768-69 (2016) (alteration in original) (quoting *Summit Media LLC v. City of Los Angeles*, 240 Cal. App. 4th 171, 193-94 (2015)).  Instead, the purpose of the statute is "to provide an incentive for private plaintiffs to bring public interest suits when their personal stake in the outcome is insufficient to warrant incurring the costs of litigation." *Satrap*, 42 Cal. App. 4th at 79; *see also Collins v. City of Los Angeles*, 205 Cal. App. 4th 140, 154 (Cal. App. 2d Dist. 2012) ("The focus … is on the plaintiff's incentive to litigate absent a statutory attorney fee award.").

### a)   The Value of the Case, Assessed *Ex Ante*, Substantially Exceeded Plaintiff's Litigation Costs

Plaintiff argues that she satisfies the financial burden prong because this was not a case with a big financial upside, in which "the plaintiff's reasonably expected

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR RECONSIDERATION**

financial benefits exceed by a substantial margin the plaintiff's actual litigation costs." MFR at 11 (citation omitted). She performs logical acrobatics to justify this position: that the actual value of the case (which Plaintiff claims is $5 million), when reduced by her low likelihood of success (which she claims is 33%, meaning a 67% reduction) is not significantly higher that her purported $1 million lodestar. None of this rings true. Her counsel brought the case because they thought it could result in an enormous financial windfall for the class, and lucrative lodestar multiplier for themselves.

### *(1)    Plaintiff's Clear Financial Incentive Should End the Financial Burden Analysis*

Plaintiff obfuscates the relevant question, which is whether Plaintiff had a financial incentive to bring this action. *Satrap*, 42 Cal. App. 4th at 79; *Collins*, 205 Cal. App. 4th at 154. Even *Los Angeles Police Protective League v. City of Los Angeles*, 188 Cal. App. 3d 1 (Cal. App. 2d Dist. 1986) ("*LAPPL*"), the case on which Plaintiff most heavily relies, explained that the reason to discount for likelihood of success is "to encourage the filing and prosecution and, if necessary, appeal of cases which advance 'the public interest.'" *Id.* at 8.

Here, Plaintiff and her counsel plainly had a rich financial incentive to bring this action. They filed a lawsuit seeking from DSW tens of millions of dollars in monetary relief. With 50,000,000.00 reasons to pursue this case, Plaintiff's Rube Goldberg-like calculations to concoct penury are a work of pure fiction. No further inquiry is necessary. *See, e.g. Davis v. Farmers Ins. Exch.*, 245 Cal. App. 4th 1302, 1330 (Cal. App. 2d Dist. 2016), *as modified on denial of reh'g* (Apr. 21, 2016), *review denied* (June 29, 2016) (given that Plaintiff sought $10 million, "it was reasonable for the court to find that at every critical juncture appellant expected a substantial financial recovery, and that this was sufficient motivation to pursue the case."); *NEI Contracting and Engr., Inc. v. Hanson Aggregates, Inc.*, 12-CV-01685-BAS(JLB), 2017 WL 2363163, at *10-11 (S.D. Cal. May 31, 2017) (same); *Luck v. Southern Pac. Transportation Co.*, 218 Cal.App.3d 1, 30 (1990) (same); *Ryan v. California*

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR RECONSIDERATION**

1    *Interscholastic Fedn.*, 94 Cal. App. 4th 1033, 1047 (Cal. App. 4th Dist. 2001) (same).

2         Plaintiff argues that the fact that Plaintiff sought damages is not dispositive

3    (MFR at 18-19), based on a public policy basis that such an approach would deter cases

4    motivated primarily by injunctive relief.   But this is not such a case.   Plaintiff's

5    argument is irrelevant.

6              *(2)    Plaintiff's Low Likelihood of Success Should Not*

7                        *Work in Her Favor*

8         Plaintiff's MFR argues that she should be rewarded for bringing a case that she

9    believed from the beginning had a low chance of success—that is, that in weighing her

10   legal expenses against the value of the case, the latter should be decreased by 67%

11   because at the time she filed the suit she only had a one in three chance of winning.

12   Plaintiff relies on *LAPPL*, *Beasley v. Wells Fargo Bank*, 235 Cal. App. 3d 1407 (Cal.

13   App. 1st Dist. 1991), and *Lyons v. Chinese Hosp. Assn.*, 136 Cal. App. 4th 1331 (Cal.

14   App. 1st Dist. 2006), but these cases are readily distinguishable.   In *LAPPL* and

15   *Beasley*, judgment had already been entered, and the court discounted the <u>actual</u>

16   recovery by the likelihood of success in order to avoid over-valuing the case.   *LAPPL*,

17   188 Cal. App. 3d 1, 9 ("The trial court must first fix—or at least estimate—the

18   monetary value of the benefits obtained by the successful litigants…Once the court is

19   able to put some kind of number on the gains actually attained…"); *Beasley*, 235 Cal.

20   App. 3d at 1414 ("if the plaintiffs had only a one-third probability of ultimate victory,

21   the estimated value of the case was only one-third the actual recovery").   These

22   circumstances simply do not apply here—no judgment has been entered, and nothing

23   has been or will be recovered.

24         In *Lyons*, the court explained that although plaintiff sought damages, and such

25   damages were denied, that did not appear to be a primary motivator of the case.   *Lyons*,

26   136 Cal. App. 4th at 1354-55 (noting that the plaintiff continued to seek injunctive

27   relief after the denial of damages).   Instead, the plaintiff focused on getting a hospital to

28   stop violating asbestos laws.   "Had the trial court compared the estimated value of

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR RECONSIDERATION**

1   Lyons's personal stake in the matter to the actual litigation costs to determine whether
2   Lyons had sufficient personal incentive to bring the litigation notwithstanding the costs,
3   it could not reasonably have concluded other than that the litigation costs far exceeded
4   the estimated value of the case." *Id.*

5       Where the plaintiff in *Lyons* took on a financial burden in order to protect public
6   health, Plaintiff here sought money, and has not conferred a public benefit of any
7   variety, much less commensurate with the public health interest advocated by *Lyons*.
8   Given Plaintiff's huge financial upside for bringing this case, the fact that she now
9   claims that she always thought she would probably lose does not support a finding that
10  she should receive catalyst fees.  An award under Section 1021.5 is not warranted
11  where "the plaintiff had a 'personal financial stake' in the litigation 'sufficient to
12  warrant [the] decision to incur significant attorney fees and costs in the vigorous
13  prosecution' of the lawsuit." *Millview*, 4 Cal. App. 5th at 768-69 (alteration in original)
14  (quoting *Summit Media LLC v. City of Los Angeles*, 240 Cal. App. 4th 171, 193-94)
15  (2015)); *Summit Media*, 240 Cal. App. 4th at 192 (calling "dubious" and rejecting
16  "plaintiff's analysis, which depends on the proposition that the [*LAPPL* test] for
17  weighing costs and benefits must be applied literally in every case.")

18          *(3)    Plaintiff Has Failed to Show "Financial Burden"*

19      Even under the *LAPPL* analysis, Plaintiff still fails to establish a financial
20  burden.  "[P]laintiff has not presented any evidence as to what economic benefit [she]
21  would have received if [she] had prevailed on its claims, and the Court had awarded the
22  requested relief." *Covenant Media of CA, L.L.C. v. City of Huntington Park, CA*, 434
23  F. Supp. 2d 785, 787 (C.D. Cal. 2006).  Accordingly, she has failed to meet her burden
24  to show that her litigation costs outweigh her stake in the case. *Id.*

25      Plaintiff suggests that such evidence is unnecessary because the Court has
26  already "estimate[d]" that the case is worth $5 million—which is the lowest possible
27  amount that can be in controversy for this Court to have jurisdiction.  MFR at 12.
28  Plaintiff has twisted the Court's words.  Without "estimating" the value of the case, the

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR RECONSIDERATION**

Court merely recognized the jurisdictional allegation of Plaintiff's Complaint: it "exceeds $5 million, as Plaintiff asserts jurisdiction pursuant to the Class Action Fairness Act of 2005." Order at 17 (quoting SAC ¶ 39). The Court found the record "insufficient" to determine the value of the case. *Id*. at 16. Plaintiff's MFR does nothing to remedy that deficiency.

While it is not DSW's burden to prove the value of this case, the Prayer for Relief in the SAC makes clear that Plaintiff sought vastly more than $5 million, including rescission (a full refund to everyone in the class), profit disgorgement, unjust enrichment, **and** actual and punitive damages. *Id*.[6] Moreover, in cases where, as here, no judgment has been entered, some courts have considered "the amount parties were settling similar class action claims for at or around the time key litigation decisions were being." *NEI*, 2017 WL 2363163, at *10. As discussed above, the rabid litigation environment for false reference pricing class actions exposes Plaintiff's professed low expectations for this case as complete bunk.

As to her litigation expenses, Plaintiff does not claim to be on the hook for any of her counsel's million-dollar fees or their costs; she thus did not take on any financial burden in attaching her name to this suit.

Finally, even using Plaintiff's distorted numbers, Plaintiff reaches the wrong conclusion. If the Court values this case at $1,666,666.67 (one-third of $5 million, which is what she says is the value of the case), that sum still exceeds her litigation costs ($1,091,481.87) by over $500,000 (52%). Thus, "the estimated value of the case was [more than] sufficient to absorb actual litigation costs and still provide an incentive to litigate." *Lyons*, 136 Cal. App. 4th at 1353.

---

[6] Rescission alone would result in monetary relief of far more than $5 million. For example, if the average pair of shoes cost $50, then the $5 million minimum would be satisfied by selling just 100,000 pairs of private label shoes during the class period—or just over 2,000 pairs of shoes a month (100,000 shoes / 4 years / 12 months = 2083.3). That would mean that each of DSW's 49 California stores sold an average of only 41 pairs of shoes a month during the class period, or 1.3 pairs of shoes a day.

b)      DSW's Change to "Comparable Value" Does Not Support Plaintiff's Financial Burden Argument

Plaintiff argues that DSW's change from "Compare At" to "Comparable Value" is so significant that the "financial burden" prong should be satisfied even if the Court were to find that Plaintiff did not take on any financial burden.  MFR at 16-18.  Again, this is nonsense.

As the Court of Appeal very recently stated, "Section 1021.5 was not designed to reward litigants motivated by their own personal interests who only coincidentally protect the public interest." *Hall v. Dept. of Motor Vehicles*, 26 Cal. App. 5th 182, 191-92 (Cal. App. 4th Dist. 2018), *review denied* (Oct. 31, 2018); *see also Davis v. Farmers Ins. Exch.*, 245 Cal. App. 4th 1302, 1329 (2016) (citation omitted).   Instead, the statute's "purpose is to provide some incentive for the plaintiff who acts as a true private attorney general, prosecuting a lawsuit that enforces an important public right and confers a significant benefit, despite the fact that his or her own financial stake in the outcome would not by itself constitute an adequate incentive to litigate." *Satrap*, 42 Cal. App. 4th at 80.  Those circumstances do not apply here.

Plaintiff again relies on *LAPPL*, *Beasley*, and *Lyons*, where the courts applied the following reasoning:

> If public benefits are very significant, it is more important to encourage litigation, and thus it may be appropriate to award fees under section 1021.5 'even in situations where the litigant's own expected benefits exceed its actual costs by a substantial margin.' In contrast, if public benefits are modest, 'the courts should award fees only where the litigant's own expected benefits do not exceed its costs by very much (or possibly are even less than the costs of the litigation).'

*Lyons*, 136 Cal. App. 4th at 1353 (quoting *LAPPL*).  Notably, each of these cases, unlike the present case, sought, and resulted in, benefits of consequence.  *LAPPL*, 188 Cal. App. 3d at 13 (stopped $5/month parking fees in certain public buildings); *Beasley*, 235 Cal. App. 3d 1407 (stopped unlawful bank fees against credit card customers, and resulted in refunds); *Lyons*, 136 Cal. App. 4th 1331 (stopped hospital from violating

-21-

1   laws designed to protect the public from potentially deadly asbestos exposure).

2      Here, Plaintiff does not provide any evidence to support her claim that DSW's

3   slight change in verbiage was at all significant, let alone "very significant," as specified

4   by *Lyons.*  39 Cal. Rptr. 3d at 568.  Rather, the change to "Comparable Value" is a

5   trivial change that should not be rewarded.  DSW's use of "Compare At" pricing

6   caused damages of $0, and had zero impact on customer behavior.  DSW's record sales

7   of private label shoes in 2018 utterly refutes Plaintiff's claim that the change from

8   "Compare At" to "Comparable Value" was significant.  Roy Decl. ¶ 3.  This Court's

9   Order did not hold otherwise. The Order merely stated—before having the benefit of

10  DSW's sales information—that the change in advertising was not "miniscule," and it

11  would confer a public benefit.  Order at 15.

12     *Beasley*, which Plaintiff claims "illustrates why Ms. Evans is entitled to fees,"

13  (MFR at 17), does not help  her case.  That action caused Wells Fargo to refund

14  millions of dollars in fees to hundreds of thousands of customers.  Here, by contrast, the

15  change has provided no monetary benefit to the putative class, and has not even

16  impacted the purchasing behavior of DSW customers.  Moreover, the *Beasley* court

17  justified enhancement of the lodestar there because it agreed with the trial judge "**that**

18  **this kind of consumer class action litigation would not be pursued by counsel but**

19  **for the expectation of receiving enhanced fee awards in successful cases.**"  235 Cal.

20  App. 3d at 1419.[7]

21     This case is instead like the numerous other cases where courts have found that

22

23     [7] *Planned Parenthood v. Aakhus*, 14 Cal. App. 4th 162, 175 n.5 (Cal. App. 2d Dist.

24  1993) is also distinguishable because there, "the thrust of its suit was to stop appellant's

25  documented activities," rather than to receive monetary relief.  As the statute makes
    clear, Section 1021.5(b) "focuses not on plaintiffs' abstract personal stake, but on the

26  financial incentives and burdens related to bringing suit." *Press v. Lucky Stores, Inc.*,

27  34 Cal. 3d 311, 321  n.11 (1983).  Indeed, in the absence of some concrete personal
    interest in the issue being litigated, the putative plaintiff would lack standing to bring an

28  action.  *See* 3 Witkin, Cal. Procedure, Pleading, § 93, pp. 1768-1770 (2d ed. 1971).

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR RECONSIDERATION**

litigation enforced a public right and conferred a significant benefit, but still failed to satisfy the financial burden prong. *See, e.g. Satrap*, 42 Cal. App. 4th 72 at 78 (citing many cases); *Covenant Media*, 434 F. Supp. 2d at 788. Plaintiff's "personal financial stake in the outcome was not so disproportionate to the cost of litigation that the lawsuit would not have been brought without the additional incentive of an award of attorneys' fees." *Satrap,* 42 Cal. App. 4th at 78.

### c)   In Assessing Financial Burden, the Court Should Consider the Value of the Class Action as a Whole, Not Plaintiff's Individual Stake

Plaintiff is wrong as a matter of law that the "financial burden" prong looks to the amount that she as an individual stands to recover. *See, e.g. NEI*, 2017 WL 2363163, at *10-11 ("the prospect of a sizable class action recovery provided sufficient financial incentives to justify this litigation in economic terms."). Plaintiff's Original Motion cited no cases to the contrary, and the cases cited in her MFR—*Aarons v. BMW of N. Am., LLC*, 2014 WL 4090564, at *14 (C.D. Cal. Apr. 29, 2014) and *Parkinson v. Hyundai Motor Am.*, 796 F. Supp. 2d 1160, 1171 (C.D. Cal. 2010)—are readily distinguishable, as they involved class settlements. *Woodfin Suites* and *Covenant Media*, also cited by Plaintiff (MFR at 19 fn. 8), were not even class actions.

Although some cases have used the term "individual stake" as shorthand for considering a plaintiff's incentives to file suit, this does not mean that in class actions, the court should look at the individual plaintiff's potential recovery instead of the total value of the case. The Court in *Beasley,* 235 Cal.App.3d at 1413-16 considered this precise issue. There, the Court explained that rather than comparing litigation costs "to each plaintiff's individual stake," the proper test involved weighing "the estimated value of a class action common fund recovery, determined as of the time the vital litigation decisions were being made." *Id.* at 1414-15; *see also id.* at 1416 ("We view the amount of the actual recovery as being the full $5,227,617 in the common fund— not merely each plaintiff's individual stake"). Other cases cited by Plaintiff similarly

-23-

make clear that the relevant consideration is "the estimated value of **a class action common fund recovery**." *Lyons*, 136 Cal. App. 4th at 1353 (quoting *Beasley*; emphasis added); *see also LAPPL*, 188 Cal. App. 3d at 9 (considering the "aggregate" amount the "litigant group" as a whole stood to win); *Espejo v. The Copley Press, Inc.*, 13 Cal. App. 5th 329, 380 (Cal. App. 4th Dist. 2017) (looking to the amounts plaintiff's counsel stood to receive).

The class device, by definition, incentivizes attorneys to take representations involving small value claims which, in the aggregate, involve large sums. *See, e.g. Chen v. Allstate Ins. Co.*, 819 F.3d 1136, 1147 (9th Cir. 2016) (citing *Deposit Guar. Nat. Bank, Jackson, Miss. v. Roper*, 445 U.S. 326, 339 (1980)). Sometimes they win, sometimes they lose, but an attorney's incentive to take the case does not derive from the small individual claim of the class representative.

Plaintiff argues that her "only financial incentive [to bring this suit] was recovery of damages for the false discount," which she suggests is $114.25 or less. MFR at 20. Again, pure nonsense. Most class action cases settle, and most class representatives receive incentive awards that greatly exceed the value of their individual claim. Incentive fees provide ample reason for individuals to serve as class representatives. For example, in *Spann v. J.C. Penney Corp.*, 314 F.R.D. 312, 317 (C.D. Cal. 2016), the named plaintiff received a $10,000 incentive award. In one of Plaintiff's counsel's cases, *Stathakos v. Columbia Sportswear Co.*, 2018 WL 1710075, at *2 (N.D. Cal. Apr. 9, 2018), the court awarded $5,000 to each named plaintiff. In another, *Gattinella v. Michael Kors*, 14CV5731, 2016 WL 690877, at *2 (S.D.N.Y. Feb. 9, 2016), the named plaintiffs received $2,500 each even though the case settled immediately after filing.

### D. Plaintiff's "Renewed Motion" Should Fool No-One: It is an Unauthorized Motion for Reconsideration

Plaintiff's "self-styled 'renewed' motion is clearly a motion for reconsideration," subject to L.R. 7-18, which it violates in every respect. *Figueroa v. Gates*, CV00-4158ABC, 2002 WL 31572968, at *3 (C.D. Cal. Nov. 15, 2002); *see also Grandinetti*

*v. Hyun*, CV 16-00470 DKW, 2017 WL 239741, at *1 (D. Haw. Jan. 19, 2017) (construing motion to "renew, continue, re-open, or supplement the facts" as a motion for reconsideration).

Even if this motion were characterized as a "renewed" motion, it is still improper. "The proper practice is to ask leave to renew a motion which has been denied even where the motion was denied without prejudice." 60 C.J.S. Motions and Orders § 47. The Court's Order did not grant Plaintiff leave to renew her motion, and Plaintiff has not sought such leave. Compare *McDaniel v. Reinalt-Thomas Corp.*, CV1201466TJH, 2014 WL 12639092, at *1 (C.D. Cal. Oct. 8, 2014) ("the motion will be denied with leave to renew"); *Opus Bank v. Axis Ins. Co.*, SACV1501058CJC, 2015 WL 12670418, at *1 (C.D. Cal. Dec. 21, 2015) (same); *Figueroa v. Gates*, CV00-4158ABC, 2002 WL 31572968, at *3 (C.D. Cal. Nov. 15, 2002) (denying renewed motion for summary judgement where Plaintiff failed to seek leave).

## V.    CONCLUSION

Judge Posner once said that if the "purpose of allowing motions for reconsideration [was] to enable a party to complete presenting his case after the court has ruled against him. . . some lawsuits might really never end, rather than just seeming endless." *Frietsch v. Refco, Inc.*, 56 F.3d 825, 828 (7th Cir. 1995) (Posner, J.). This motion is litigation abuse personified, and should be denied.

Dated: December 17, 2018            STEPTOE & JOHNSON LLP


By:      /s/ *Stephanie Sheridan*
        STEPHANIE A. SHERIDAN
        Attorneys for Defendant
        DSW INC.

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR RECONSIDERATION**